LAEL D. ANDARA (SBN 217909)
BROCK R. LYLE (SBN 242690)
MARIE E SOBIESKI (SBN 278008)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone:      (650) 364-8200
Facsimile:      (650) 780-1701
Email:          lael.andara@rmkb.com
                brock.lyle@rmkb.com
                marie.sobieski@rmkb.com

Attorneys for Defendants
ZWCAD SOFTWARE CO., LTD and
ZWCAD DESIGN CO., LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTODESK, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>ZWCAD SOFTARE CO. LTD., ZWCAD DESIGN CO., LTD., and GLOBAL FORCE DIRECT, LLC. (doing business as ZWCADUSA),<br><br>                    Defendants. | CASE NO. 3:14-cv-01409-EJD<br><br>**NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS CLAIMS**<br><br>Date: April 30, 2015<br>Time: 9:00 a.m.<br>Judge: Hon. Edward J. Davila<br>Courtroom: 4 |

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Redwood City*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................2

II.     FACTS ALLEGED IN THE COMPLAINT ...........................................................3

III.    ARGUMENT ........................................................................................................5

        A.      Standard of Review for a Motion to Dismiss ...........................................5

                1.      Autodesk's Infringement Allegations Do Not Satisfy the
                        Particularity Requirements ...........................................................6

        B.      Standard of Pleading for Copyright Infringement ...................................8

                1.      Autodesk Failed to Assert it Possesses Registered Copyrights to the
                        Allegedly Infringing Material ........................................................8

        C.      Copying Is Not Inherently Infringement ..................................................9

                1.      Autodesk Utilized Third-Party Copyrights It Cannot Enforce .................10

        D.      Standard of Pleading for Trade Secret Misappropriation .....................11

                1.      Autodesk Failed to Assert it Possesses Valid Trade Secrets ....................13

                2.      Permissibility of Reverse Engineering ...........................................15

        E.      Narrowly Tailoring Access to Source Code ...........................................15

                1.      Source Code Claims Must Be Claimed with Particularity .......................16

                2.      Autodesk Cannot Be Allowed Broad Discovery of Source Code ............18

IV.     CONCLUSION..................................................................................................19

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

<div style="text-align:center; vertical-align: middle;">Ropers Majeski Kohn & Bentley<br>A Professional Corporation<br>Redwood City</div>

1

<div style="text-align:center">**TABLE OF AUTHORITIES**</div>

2

<div style="text-align:right">**Page**</div>

3  **CASES**

4  *Abarca Health, LLC v. PharmaPix Corp.,*
5     806 F.Supp.2d 483 (D. Puerto Rico 2011) ............................................................9, 13, 16, 18

6  *Abba Rubber Co. v. Seaquist,*
      235 Cal.App.3d. 1 (1991) ...........................................................................................................11
7
   *Adobe Sys. Inc. v. Macromedia, Inc.,*
8     2001 WL 1414843 (D. Del. Nov. 5, 2001) ..........................................................................16, 15

9  *American Petroleum Inst. v. Technomedia Int'l.,*
10    2010 WL 1233496 (D.D.C. 2010) ...............................................................................................12

11 *Analog Devices, Inc. v. Michalski,*
      157 N.C.App. 462 (2003) ...........................................................................................................12
12
   *Apple Computer, Inc. v. Microsoft Corp.,*
13    35 F.3d 1435, 1443 (9th Cir. 1994) .............................................................................................16

14 *Ashcroft v. Iqbal,*
15    556 U.S. 662 (2009)........................................................................................................1, 4, 5, 6

16 *Bell Atlantic Corp. v. Twombly,*
      550 U.S. 544 (2007).......................................................................................................... passim
17
   *Brocade Communications Systems, Inc. v. A10 Networks, Inc.,*
18    873 F.Supp.2d 1192 (2012) .........................................................................................................11

19 *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.,*
20    97 F.3d 1504, 1513 (1st Cir. 1996)...............................................................................................7

21 *Diodes, Inc. v. Franzen,*
      260 Cal.App.2d 244 (1968) .........................................................................................................11
22
   *Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
23    499 U.S. 340, 361 (1991)...........................................................................................................7, 8

24 *Hartley Pen. Co. v. United States District Court for S.D. Cal.,*
25    287 F.3d 324, 330-31 (9th Cir. 1961) .........................................................................................15

26 *Imax Corp. v. Cinema Techs., Inc.,*
      152 F.3d 1161, 1164–65 (9th Cir. 1998) ................................................................................10, 11
27
   *Jobscience, Inc. v. CVPartners, Inc.,*
28    2014 WL 1724763, *2 (N.D. Cal. 2014) .................................................................................15, 16

**TABLE OF AUTHORITIES**
(continued)

Page

*Johnson v. Gordon*,
409 F.3d 12, 17-18 (1st Cir. 2005) ................................................................8, 9, 10

*Kewanee Oil Co. v. Bicron Corp.*,
416 U.S. 470 (1974).................................................................................................14

*Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*,
315 F. Supp. 2d 1053, 1056 (C.D. Cal. 2004) ........................................................7

*Lotus Development Corp. v. Borland Intern., Inc.*,
49 F.3d 807 (1st Cir. 1995)......................................................................................9

*Maddog Software, Inc. v. Sklader*,
382 F.Supp.2d 268, 280 (D.N.H. 2005)..................................................................10

*MAI Sys. Corp. v. Peak Computer, Inc.*,
991 F.2d 511, 522 (9th Cir. 1993) .....................................................................11, 12

*Mazer v. Stein*,
347 U.S. 201, 217 (1954)..........................................................................................9

*Medafor, Inc. v. Starch Med., Inc.*,
2009 WL 2163580 (D. Minn. 2009)........................................................................12

*Nazomi Commons., Inc. v. Samsung Telcoms., Inc.*,
No. 10-05545, 2012 U.S. Dist. LEXIS 76468, *10-12 (N.D. Cal. Jun. 1, 2012) ...................16

*Rickelshaus v. Monsanto Co.*,
467 U.S. 986 (1984)................................................................................................13

*Sargent Fletcher, Inc. v. Able Corp.*,
110 Cal.App.4th 1658, 1665 (2003) ..................................................................11, 14

*Sony Computer Entertainment, Inc. v. Connectix Corp.*,
203 F.3d 596, 599 (9th Cir. 2000) ...........................................................................9

*Surfvivor Media, Inc. v. Survivor Prods.*,
406 F.3d. 625, 635 (9th Cir. 2005) .........................................................................17

*Synopsys, Inc. v. Nassda Corp.*,
2002 WL 32749138 at *1 (N.D. Cal. 2002) ............................................................16

*Viacom Int'l Inc. v. YouTube, Inc.*,
253 F.R.D. 256 (S.D.N.Y. 2008) ............................................................................15

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**TABLE OF AUTHORITIES**
(continued)

Page

**STATUTES**

17 U.S.C. §411(a) .................................................................................................. 7

17 U.S.C. §501 ...................................................................................................... 1

17 U.S.C. §501(b) ................................................................................................. 8

17 USC § 102(b) .................................................................................................... 9

Cal. Civ. Code §3426.1(a) .................................................................................... 12

Cal. Civ. Proc. Code §2019.210 .......................................................................... 12

Cal. Civil Code §3426, *et seq.* ........................................................................ 1, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 4, 15, 18

Fed. R. Civ. P. 84 ................................................................................................... 7

NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS CLAIMS  -  3:14-CV-01409 EJD

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

## NOTICE OF MOTION

Defendant ZWCAD Software Co., Ltd. and ZWCAD Design Co., Ltd. (collectively, "ZWSoft") hereby give notice that on April 30, 2015 at 9:00 a.m. before the Honorable Judge Edward J. Davila in Courtroom 4 of the above-referenced Court located at 280 South 1st Street, San Jose, California, ZWSoft will seek an Order dismissing the first and second causes of action brought by Plaintiff Autodesk. (Docket No. 1). This Motion to Dismiss is brought on the grounds that Autodesk fails to plead with requisite specificity or state a claim under Fed. R. Civ. P. 12(b)(6) upon which relief can be granted. ZWSoft submits the following Memorandum of Points and Authorities in Support of its Motion to Dismiss.

## I.
## INTRODUCTION

On March 26, 2014, Autodesk filed its Complaint alleging two causes of action, copyright infringement under 17 U.S.C. §501 and trade secret misappropriation under Cal. Civil Code §3426, *et seq.* However, the Complaint fails to identify: (a) what Autodesk copyrights ZWSoft allegedly infringed; (b) what Autodesk trade secrets ZWSoft allegedly infringed; and (c) how ZWSoft allegedly infringed the unspecified Autodesk copyrights and trade secrets. Instead, Autodesk merely alleges similarities between AutoCAD and ZWCAD+ software while making broad and conclusory statements that something must have been copied. That something remains unclear.

Autodesk must do more than merely state that the law has been violated. Under the Supreme Court holdings *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Autodesk must cite sufficient facts and information to identify which valid registered copyrights and what protected trade secrets ZWSoft has allegedly infringed. It must also specify how ZWSoft allegedly acquired this trade secret information. Absent this, Autodesk's Complaint is merely a laundry list of similarities between two products competing in the same market space.

Autodesk has failed to meet the pleading requirements of Rule 12(b)(6) and the Complaint lacks sufficient specificity to allow ZWSoft to prepare a defense. It should not be allowed to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

subsequently open the door to discovery without having presented even the most basic foundation on why it should be granted access to highly valuable trade secrets of a direct competitor. Therefore, the Court should dismiss Autodesk's Complaint.

## II.
## FACTS ALLEGED IN THE COMPLAINT

Autodesk asserts that it is "a pioneer and worldwide leader in digital design technologies," having originated "computer-aided design ('CAD') software to create digital models and workflows that allow visualization, simulation, and analysis of designs before implementation." Complaint at 1, lines 5-11. Its flagship product, AutoCAD, was launched in 1982. *Id.* at 2, line 23. AutoCAD became an industry favorite in the 1980s. *Id.* at 2, line 28. Since AutoCAD's initial release, "Autodesk has continually developed and enhanced the product" and expanded their product line. *Id.* at 3, lines 1-4.

In its Complaint, Autodesk asserts both copyright and trade secret protection for the AutoCAD software. It lists three U.S. copyright registration numbers as "examples" of its "well over a hundred registered U.S. copyrights relating to its AutoCAD products." *Id.* at 3, lines 26-27. It further asserts that the "AutoCAD source code is one of the company's most valuable and closely-guarded assets and trade secrets." *Id.* at 3, lines 20-21. It notes that "[a]ccess to the source code is allowed only on an as-needed basis, and Autodesk protects the source code by placing it in secured source code repositories." *Id.* at 3, lines 22-23. Further, Autodesk specifies that "employees must execute agreements that require them to maintain the confidentiality of Autodesk's trade secret information, including the AutoCAD source code." *Id.* at 3, lines 23-25.

Autodesk further alleges that ZWSoft released its first CAD software product, ZWCAD 1.0, in 2002, and subsequent products every year from 2003 to 2012. *Id.* at 4, lines 2-4. In 2012, ZWSoft began to sell ZWCAD+. *Id.* at 4-5, lines 22-7. The Complaint claims that "ZWSOFT's ZWCAD and ZWCAD+ products directly compete with Autodesk's AutoCAD software as CAD programs for the architectural, engineering, construction, manufacturing, geospatial mapping, and digital media industries." *Id.* at 4, lines 4-6. Autodesk does not allege that pre-2012 ZWCAD infringes any copyrights, copies any source code, or includes any trade secret information.

1   Instead, Autodesk alleges ZWSOFT's ZWCAD+ software has "close similarities to AutoCAD,"

2   specifically AutoCAD's 2007 and 2008 versions. *Id.* at 5, line 5, and 6, lines 1-14. On this basis,

3   Autodesk concludes that ZWSoft misappropriated "significant portions of Autodesk's proprietary

4   source code." *Id.* at 5, lines 10-11.

5        Autodesk cites several idiosyncrasies, including errors, bugs, and support of legacy

6   commands and system variables, to support its copyright and trade secret claims. Specifically,

7   Autodesk alleges the ZWCAD+ program copies certain idiosyncrasies from Autodesk 2007 or

8   Autodesk 2008 (*id.* at 5, lines 8-11), parts of file names (*id.* at 12, lines 3-25, and 13, lines 15-19),

9   esoteric commands (*id.* at 12-13, lines 26-6), unsupported versions (*id.* at 13, lines 20-22),

10  undocumented commands (*id.* at 13, lines 7-14), application programming interfaces (*id.* at 13,

11  lines 15-19), ANSI (*id.* at 13, lines 23-27), and certain specific errors (*id.* at 14, lines 1-11).

12  Autodesk does not assert ownership of the source code or copyrights for any of the

13  aforementioned idiosyncrasies or error messages. Autodesk neither alleges that the foregoing are

14  secret and that Autodesk takes measures to keep them secret, nor that Autodesk derives economic

15  value from any of these aspects of their software programs being secret. Autodesk does not allege

16  how it would be damaged by the "indiscriminate copying" of any of the foregoing idiosyncrasies,

17  bugs, errors, or support of esoteric legacy commands.

18       Further, Autodesk does not allege that either ZWCAD or ZWCAD+ is identical to

19  Autodesk 2007 or Autodesk 2008. Rather than asserting that ZWSoft copied source code from

20  either or both of the Autodesk programs, Autodesk asserts that "significant portions" of source

21  code were misappropriated, but does not specify which significant portions it claims are in

22  question. *Id.* at 5, lines 9-11. (See *id.* at 11, lines 4-28: "ZWCAD+ 2012 does not support" all the

23  same features as AutoCAD, specifically "the 'Plot in background' feature.") (*id.* at 12, lines 7-12:

24  Autodesk also acknowledges further differences between the software programs, including:

25  "changes in the ZWCAD.pat files for ZWCAD+ 2012") (*id.* at 12, lines 19-25: "differences

26  between AutoCAD's 2008 commands.atc file and ZWCAD+ 2012's commands.ztc file") (*id.* at

27  13, lines18-19: "[t]he prefix in the ZWCAD+ classes has been changed, however, from 'Acad' to

28  'Zcad.'"). While acknowledging differences between the programs , "the new ZWCAD+ displays

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

precise idiosyncrasies and even now-corrected 'bugs' that were once found in AutoCAD –

features that could not have been introduced without the wholesale copying of significant portions

of Autodesk's proprietary source code" (*id.* at 5, lines 23-26) and concludes without further basis

that "ZWCAD+ has clearly been built by someone with improper and illegal access to AutoCAD

source code." *Id.* at 5, lines 26-27.

On this basis, Autodesk alleges ZWSOFT's distribution of ZWCAD+ products and related

applications and services in the United States is both copyright infringement and a

misappropriation of Autodesk's trade secrets. *Id.* at 14, lines 12-14. Without specific identification

of the copyrights and trade secrets in question, as well as which "significant portions" of the

AutoCAD source code is allegedly copied by which piece of ZWCAD software, ZWSoft cannot

sufficiently identify the claims in order to respond thereto, and Autodesk should not be allowed to

propound discovery of valuable and sensitive material.

### III.
### ARGUMENT

**A.      Standard of Review for a Motion to Dismiss**

The Federal Rules of Civil Procedure allow the Court to dismiss a complaint that does not

"state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, to survive a

motion to dismiss brought under Rule 12(b)(6), a plaintiff must plead facts sufficient "to raise a

right to relief above the speculative level." *Twombly*, *supra*, 550 U.S. at 555.

In *Iqbal*, the Court held that the pleading standard laid out in *Twombly* applied not merely

to antitrust litigation, but to "all civil actions." *Iqbal*, *supra*, 566 U.S. at 684. A plaintiff must

"plead factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* at 1678. Further, "[a] pleading that offers 'labels and

conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*,

quoting *Twombly*.

While the Federal Rules do "not require 'detailed factual allegations,'" they nevertheless

"[demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 695,

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Redwood City*

quoting *Twombly*. Thus, when a plaintiff offers insufficient evidence that the claims are plausible, not merely possible, the court must grant a defendant's motion to dismiss.

### 1.  Autodesk's Infringement Allegations Do Not Satisfy the Particularity Requirements

Autodesk's Complaint provides slim factual content but numerous conclusions to support its allegations of theft. It boldly concludes: "ZWCAD+ is [b]uilt on [s]tolen AutoCAD [c]ode," and that "[ZWSOFT's] remarkable transformation [was accomplished] by misappropriating significant portions of Autodesk's proprietary source code." Complaint at 5, lines 8-11. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, *supra*, at 679. By failing to cite specific examples of protected code, or even identifying it further than "the AutoCAD source code," Autodesk's Complaint merely supplies the "naked assertions" rejected in *Twombly*.

Autodesk's complaint includes almost nine pages of comparisons. For example, Autodesk discusses that:

> ZWCAD+ 2012 and 2014 display an identical error to AutoCAD 2007 and 2008 when trimming certain shallow arcs, *i.e.*, deleting a portion of the arc falling on one side of an 'edge.' In AutoCAD 2007 and 2008, trimming a very shallow (*i.e.*, large-radiused) arc results in an unusual error: only the portion above the trim edge can be trimmed, but not that below. ZWCAD+ 2012 and 2014 display the identical errors as AutoCAD 2007 and 2008. (Complaint at 7, lines 23-27.

The level of detail here contrasts starkly with the lack of detail in the rest of the Complaint, and "without some further factual enhancement the claims stop short of the line between possibility and plausibility of entitlement to relief." *Twombly*, *supra*, at 557.

Autodesk alleges that "[a]ll software code has quirks, but no two independently developed pieces of code should have *identical* quirks." (Complaint at 5, lines 23; emphasis in original). This is at odds with its own discussion of ZWCAD+'s development, where it readily acknowledges that ZWSoft has "pursued its design objectives for ZWCAD through a license from the IntelliCAD Technology Consortium, which develops the IntelliCAD CAD platform." *Id.* at 4, lines 15-17. This platform "allows IntelliCAD's over twenty licensees, including ZWSOFT, to develop software that emulates AutoCAD's '.dwg' file format." *Id.* at 5, lines 18-19. Autodesk

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

notes that "IntelliCAD software itself was originally developed by Softdesk, Inc., formerly an AutoCAD third party developer." *Id.* at 4, lines 19-20. Autodesk thus establishes that at least some portions of both programs share a similar genesis, and that ZWSoft is not alone in following in AutoCAD's development footsteps.

Despite this, Autodesk attempts to distance ZWCAD+ from ZWCAD, as well as these programs' common origins with AutoCAD. It cites a July 16, 2012 press release that ZWCAD+ was "fundamentally different from ZWCAD 2012 because ZWSoft built the entire software from the ground up." *Id.* at 4-5, lines 28-1; internal edits omitted. As support for its argument of source code copying, Autodesk offers that "ZWCAD+ is described on ZWcadUSA's website as 'the alternative that offers the closest AutoCAD experience." *Id.* at 5, lines 6-7. It concludes that "this duplication, which is at the source code level, could not have been accomplished through coincidence or the application of similar programming logic." *Id.* at 5, lines 13-15. It appears these conclusions are built, not from comparisons of the functionality of the programs themselves, but from quirks, press releases, and a website description. This is certainly a round-about way of achieving what should be a straightforward comparison. These descriptions cannot be held to be direct evidence of copying, and are not proof of infringement. They are merely alleged symptoms of unsupported allegations.

*Iqbal* teaches that a plaintiff "does not unlock the doors of discovery [...] armed with nothing more than conclusions." *Iqbal*, *supra*, at 1950. All that Autodesk has alleged in its Complaint are *conclusions* that ZWSoft incorporated protected AutoCAD source code, without any specific comparisons between sections of its code and the code it claims ZWSoft has copied. ZWSoft is therefore left uncertain as to *which* copyrights or *what* trade secrets it is alleged to have taken. Autodesk has not offered facts to support its broad allegations, much less "enough facts to state a claim to relief that is plausible on its face." *Twombly*, *supra*, at 570.

Autodesk has failed to identify a single aspect of source code or a specifically infringed registered copyright. All of these aspects are under Autodesk's control, and should have been included in its Complaint. For this failure, Autodesk's infringement allegations should be dismissed.

**B.** **Standard of Pleading for Copyright Infringement**

The Appendix of Forms provides over eighty-two *Illustrative Civil Rules Forms* accompanying the Federal Rules of Civil Procedure which set out requirements for certain claim types. Fed. R. Civ. Pro. Appendix of Forms. They are intended to provide sample complaints containing minimal pleading necessary for a copyright infringement claim: "[t]he forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84. Civil Form 19, entitled *Complaint for Copyright Infringement and Unfair Competition*, is a scant two pages, with nearly half a page made up of caption. Nevertheless, the form includes both a space specifically for the copyright registration number and references to two exhibits, Exhibit A and Exhibit B, where the claimant is instructed to attach the copyrighted material allegedly being infringed and the material allegedly infringing, respectively. *Id.*

As the form shows, establishing copyright infringement is relatively simple: a plaintiff must demonstrate that it (1) owns a valid copyright, and (2) there is actual copying. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To have a valid copyright, a claimant must do more than state it is the original creator of the work. Rather, an action for copyright protection may not take place until the copyright has been formally registered with the Copyright Office. *Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*, 315 F. Supp. 2d 1053, 1056 (C.D. Cal. 2004). Under 17 U.S.C. §411(a), "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Thus, "[t]o show ownership of a valid copyright and thus satisfy the first prong under *Feist*, a plaintiff must prove that the work as a whole is original and that the plaintiff complied with applicable statutory formalities." *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996). If a plaintiff lacks valid registration, it will be barred from bringing a case for infringement.

1. **Autodesk Failed to Assert it Possesses Registered Copyrights to the Allegedly Infringing Material**

Despite the requirements laid out in *Feist* and its progeny, Autodesk has not specified

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

what similarities, beyond idiosyncrasies, errors, bugs, and support of legacy commands, exist between AutoCAD and ZWCAD+. Rather, Autodesk has merely alleged generally that its source code has been copied. No doubt it hopes to find evidence to support its claims only after lengthy and burdensome discovery of ZWSoft's source code.

Autodesk pleads that it "owns well over a hundred registered U.S. copyrights relating to its AutoCAD products." Complaint at 3, lines 26-27. Yet it cites only three: "[e]xamples include U.S. Copyright Registration Nos. TX0006576172, TX0006586280, and TX0006589381." *Id.* at 3, lines 27-28. The titles, contents, and relationship of these three copyrights remain unspecified. If Autodesk meant to indicate that these three copyrights were those allegedly infringed, it should say so directly. Otherwise, ZWSoft has no way of knowing which of "well over a hundred" copyrights are at issue.

17 U.S.C. §501(b) states: "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." Autodesk fails to delineate not only if the allegedly copied material is copyrightable, but actually part of a registered copyright. Without such a showing, ZWSoft is neither on notice if Autodesk holds valid, registered copyrights for the material ZWSoft is accused of infringing, nor what even that material might be. It is therefore unclear if the claims Autodesk has brought are even actionable. ZWSoft can only speculate as to what copyrights apply to the violation alleged in Autodesk's Complaint.

**C.   <u>Copying Is Not Inherently Infringement</u>**

Copying does not invariably constitute copyright infringement. *Johnson v. Gordon*, 409 F.3d 12, 17-18 (1st Cir. 2005). The Supreme Court clarified that:

> [t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the sine qua non of copyright protection; accordingly, copyright protection may extend only to those components of a work that are original to the author. *Feist*, *supra*, 499 U.S. at 348.

In order to satisfy the second element of *Feist*, the plaintiff must prove the defendant's "copying of constituent elements of the work that are original." *Id.* at 361. Doing so requires showing that

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

(1) the defendant copied the plaintiff's work as a factual matter and (2) "the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." *Lotus Development Corp. v. Borland Intern., Inc.*, 49 F.3d 807 (1st Cir. 1995). Thus, "[t]he key to any software copyright infringement claim is the determination of whether a defendant copied protected elements of the allegedly infringed work that are original to the plaintiff—considering first the actual fact of copying, then the degree of such copying's extent, if any." *Abarca Health, LLC v. PharmaPix Corp.*, 806 F.Supp.2d 483 (D. Puerto Rico 2011).

In *Mazer v. Stein*, the Supreme Court determined that "[u]nlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself." *Mazer v. Stein*, 347 U.S. 201, 217 (1954). Section 102(b) of the Copyright Act provides:

> [i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method or operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work. 17 USC § 102(b).

Further, "[t]he mere fact that a work is copyrighted does not mean that every elements of the work may be protected." *Johnson*, *supra*, 409 F.3d at 19. Rather, "the examination must focus on 'what aspects of the plaintiff's work are protectable under copyright laws and whether whatever copying took place appropriated those [protected] elements.'" *Id.* at 19 (quoting *Matthews v. Freedman*, 157 F.3d 25, 27 (1st Cir. 1998)). Copyrighted software typically contains both copyrighted and unprotectable or functional elements. *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 599 (9th Cir. 2000).

### 1. Autodesk Utilized Third-Party Copyrights It Cannot Enforce

Autodesk's own pleadings demonstrate that not all of the AutoCAD source code is copyrightable original expression, as aspects were created by an outside company:  "The IntelliCAD software itself was originally developed by Softdesk, Inc., formerly an AutoCAD third party developer." Complaint at 4, lines 19-20. "A defendant cannot be held liable where the similarity between two works arises from uncopyrightable elements." *Johnson*, *supra*, at 19.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

ZWSoft cannot be held liable for any copying of third-party code that is not original to Autodesk. *See Maddog Software, Inc. v. Sklader*, 382 F.Supp.2d 268, 280 (D.N.H. 2005). Instead, it must indicate which portions of its source code are protected and which are unprotectable, either as non-copyrightable elements or are the copyrighted works of a third-party. ZWSoft cannot determine any of this information without knowing what copyrights Autodesk holds and which it is alleging ZWSoft has violated.

Autodesk has failed to identify the source of the alleged similarity between its software and ZWSoft's, failed to provide any additional evidence establishing protectable copyright interest over the software at issue, or even to demonstrate that the alleged material is protected by copyright. Autodesk has not stated a claim for copyright infringement because it has not proven the existence of a registered copyright covering the allegedly stolen source code. Accordingly, its copyright infringement allegations against ZWSoft must be dismissed.

**D.      Standard of Pleading for Trade Secret Misappropriation**

In 1994, California adopted the Uniform Trade Secret Act ("CUTSA") to address the specific concerns of trade secret law and provide remedies for trade secret misappropriation. Cal. Civil Code §3426 *et seq*. CUTSA defines a "trade secret" as:

> information, including a formula, pattern, compilation, program device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, for not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code §3426.1(d).

When pleading, a plaintiff "should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.,* 152 F.3d 1161, 1164–65 (9th Cir. 1998) (citation and alteration omitted; emphasis in original). In both California and federal courts, this requires that the plaintiff allege facts, not suppositions or conclusions:

> One who seeks protection against the use or disclosure of a trade secret must plead facts showing (1) the existence of subject matter which is capable of protection as a trade secret; (2) the secret was

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1
2
3
4
5
6

disclosed to the defendant, or to a person for whose conduct a defendant is liable, under circumstances giving rise to a contractual or other legally imposed obligation on the part of the disclosee not to use or disclose the secret to the detriment of the discloser; and (3) if the defendant is an employee or former employee of the plaintiff or if the defendant is charged with having received the secret from an employee or former employee, the facts alleged must also show that the public policy in favor of the protection of the complainant's interest in maintaining the secret outweighs the interest of the employee in using his knowledge to support himself in other employment. *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244 (1968).

7   Additionally, "the complainant should describe the subject matter of the trade secret with

8   sufficient particularity to separate it from matters of general knowledge in the trade or of special

9   knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain

10  at least the boundaries within which the secret lies." *Id.* at 253. When seeking relief for

11  misappropriation of trade secrets, a plaintiff "must identify the trade secrets and carry the burden

12  of showing that they exist." *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 522 (9th Cir.

13  1993). Though full disclosure in the pleading is not required, the plaintiff must "nevertheless

14  allege the ultimate facts showing the existence of a trade secret or other confidential data to state

15  such a cause of action. An averment simply that the plaintiff has a 'secret process' is a bare legal

16  conclusion." *Diodes, supra*, at 252, citing *Show Management v. Hearst Publishing Co.*, 196

17  Cal.App.2d 606, 620 (1961). A plaintiff need not "spell out the details of the trade secret," but

18  must minimally provide "reasonable notice of the issues which must be met at the time of trial

19  and [...] provide reasonable guidance in ascertaining the scope of appropriate discovery." *Brocade*

20  *Communications Systems, Inc. v. A10 Networks, Inc.*, 873 F.Supp.2d 1192 (2012), 1214, citing

21  *Diodes* at 252–53.

22       A trade secret must be valuable because it is unknown to others and has been the subject

23  of efforts by the owner to keep secret. *Abba Rubber Co. v. Seaquist*, 235 Cal.App.3d. 1 (1991). A

24  plaintiff must show that it made "reasonable efforts" to protect its alleged trade secrets, as

25  disclosure will destroy legal protection. *MAI, supra*, 991 F.2d at 521. Thus, for a claim of trade

26  secret misappropriation, a plaintiff must demonstrate that "the defendant acquired, disclosed, or

27  used the plaintiff's trade secret through improper means." *Sargent Fletcher, Inc. v. Able Corp.*,

28  110 Cal.App.4th 1658, 1665 (2003). Such "improper means" include "theft, bribery,

1   misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage

2   through electronic or other means." Cal. Civ. Code §3426.1(a).

3       **1.      Autodesk Failed to Assert it Possesses Valid Trade Secrets**

4       The California Code of Civil Procedure requires a plaintiff identify with "reasonable

5   particularity" the trade secret in question in a lawsuit. Cal. Civ. Proc. Code §2019.210. Under this

6   requirement, ZWSoft is entitled to learn what portions of the source code Autodesk believes

7   constitute its trade secrets, and how ZWSoft allegedly acquired them.

8       Autodesk has chosen not to divulge any of its trade secret in its Complaint, perhaps

9   believing that such disclosure is better left for discovery. However, a trade secret must be

10  disclosed sufficiently in a complaint to give notice of what the plaintiff is allegedly infringing,

11  and this disclosure must be more than cursory: "a plaintiff who seeks relief for misappropriation

12  of trade secrets must identify the trade secrets and carry the burden of showing that they exist."

13  *MAI*, *supra*, at 522. Court have repeatedly rejected claims with insufficient trade secret

14  description. In *Analog Devices, Inc. v. Michalski*, the court found that submission of schematics

15  and documents was not sufficiently specific to identify a trade secret. *Analog Devices, Inc. v.*

16  *Michalski*, 157 N.C.App. 462 (2003). In *Medafor, Inc. v. Starch Med., Inc.*, the court rejected the

17  identification of the trade secret as "business methodologies, formulas, devices, and compilations

18  of information including suppliers and customers" and dismissed the claim. *Medafor, Inc. v.*

19  *Starch Med., Inc.*, 2009 WL 2163580 (D. Minn. 2009). In *American Petroleum Inst. v.*

20  *Technomedia Int'l., Inc.* the court similarly dismissed a counterclaim for failure to plead with

21  sufficient specificity when the trade secret "consist[ed] of information, including compilations,

22  programs, methods, techniques, and processes." *American Petroleum Inst. v. Technomedia Int'l.*,

23  2010 WL 1233496 (D.D.C. 2010). Each of these disclosures have been held insufficient, yet they

24  seem lengthy in comparison to "AutoCAD source code." Autodesk's description is insufficient for

25  the pleading requirements set forth under 12(b)(6), and on that basis the Court should dismiss the

26  complaint.

27      Autodesk remains silent as to how ZWCAD allegedly obtained trade secret information in

28  the first place. In its Complaint, it acknowledges that "AutoCAD source code is one of the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

company's most valuable and closely-guarded assets and trade secrets," a nod to the trade secret requirements necessary to maintain protected designation. Complaint at 3, lines 20-21. In the Complaint, Autodesk briefly addresses how it safeguards source code: "[a]ccess [...] is allowed only on an as-needed basis, and Autodesk protects the source code by placing it in secured source code repositories. Autodesk employees must execute agreements that require them to maintain the confidentiality of Autodesk's trade secret information, including the AutoCAD source code." *Id.* at 3, lines 22-25. This only serves to highlight the information missing but necessary for a trade secret infringement claim: *how* the source code copying could have occurred. The closest Autodesk comes to explaining how the trademarked source code theft could have taken place is in a single tentative sentence: "ZWCAD+ has clearly been built by someone with improper and illegal access to AutoCAD source code." Complaint at 5, lines 26-27. Without more, ZWSoft can only speculate how Autodesk alleges ZWSoft came by the trade secret code, but how it can mount a defense.

No doubt the other alternative to its vague accusation of theft is unappealing to Autodesk, specifically that components of its source code were the same as in ZWCAD+ for entirely permissible reasons. As described previously, Autodesk and ZWSoft shared parallel development paths, and Autodesk admits the two programs shared third-party developers. From this basis, a reasonable person could infer that many of the quirks in the two programs may be from legally-obtained, shared-origin code. "The fact that the [program's] source code contains at least one third-party program only underscores the need for plaintiffs to identify the supposed similarities between the protectable elements of [the two programs]. Absent greater specificity from plaintiffs, the court will be unable to determine what parts of [plaintiff's' software] are copyrighted elements for which plaintiffs are entitled to protection." *Abarca*, *supra*, 806 F.Supp.2d at 492.

Once disclosed, a trade secret no longer enjoys legal protection. *Rickelshaus v. Monsanto Co.*, 467 U.S. 986 (1984). Once it has been disclosed to a third party, a trade secret's fundamental necessary of secrecy is removed, taking with it the accompanying legal protection. ZWSoft's ZWCAD and ZWCAD+ software is valuable precisely because the source code is not generally

known or readily ascertainable except in protected and controlled ways. Without a clear understanding of what it has been alleged of copying, ZWSoft must protect the source code for its programs that is the very basis for its business.

Autodesk should have identified specific trade secrets infringed, or the impermissible manner in which ZWSoft acquired them. For its failure to do so, Autodesk's allegations against ZWSOFT must be dismissed.

### 2.     Permissibility of Reverse Engineering

A trade secret may be acquired without misappropriation, if it is underlying purpose is achieved through proper means. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974). "Trade secret law [...] does not offer protection against discovery by fair and honest means, such as by independent invention, accidental disclosure, or by so-called reverse engineering, that is by starting with the known product and working backward to divine the process which aided in its development or manufacture." *Id.* If a trade secret was acquired in a permissible manner, its use is not actionable, and it will lose its legal protection.

Autodesk has not shown that ZWCAD+ could not have been achieve through mere reverse engineering. ZWSoft may have obtained similar source code to that of the AutoCAD software through straightforward and industry-standard means such as reverse engineering. Autodesk is remiss in addressing this possibility, as "[t]he defendant does not have a 'burden of proof' to make that showing." *Fletcher*, *supra*, 110 Cal.App.4th at 1669. Under *Twombly*, the Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly, supra*, at 546. It is clear from the alternative interpretations available from within Autodesk's complaint itself that Autodesk has failed to make a clear and convincing showing that the code must have been copied, and could not have been achieved through wholly permissible methods.

### E.     <u>Narrowly Tailoring Access to Source Code</u>

ZWSoft is concerned that its direct competitor, Autodesk, will seek to review all ZWCAD and ZWCAD+ source code despite the confidential trade secret nature of the source code and attempt to fill in its bare allegations with retroactively deduced claims.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

"Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendant's files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 1724763, *2 (N.D. Cal. 2014). ZWSoft is not on notice of which portions of its source code are allegedly infringing, and which have allegedly misappropriated trade secret information. It seeks to protect itself from the possibility of retroactively pleading claims and discovery propounded by its direct competitor, Autodesk.

### 1.    Source Code Claims Must Be Claimed with Particularity

Federal Rule of Civil Procedure 26(b)(2) imposes general limitations on the scope of discovery:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, and importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(c).

The Federal Rules also speak to the harms of disclosing trade secrets, specifically allowing for protective orders to safeguard such material. *Id.* To be granted access to a trade secret, the propounding party must demonstrate good cause by "establish[ing] that the trade secret sought is relevant and necessary to the prosecution or defense of the case before a court is justified in ordering a disclosure." *Hartley Pen. Co. v. United States District Court for S.D. Cal.*, 287 F.3d 324, 330-31 (9th Cir. 1961).

Trade secret protection extends to source code. *Viacom Int'l Inc. v. YouTube, Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008). In *Viacom*, the court denied the plaintiff's motion to compel disclosure of certain source code portions which were "critical trade secret[s] for defendants." Id. at 259-61. In *Adobe Sys. Inc. v. Macromedia, Inc.*, the Delaware District Court found that source code was "of critical importance to [defendant's] business and must be provided the highest form

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

of protection a court can provide in the context of a particular case." *Adobe Sys. Inc. v.*

*Macromedia, Inc.*, 2001 WL 1414843 (D. Del. Nov. 5, 2001). The risks inherent in the production

of source code are clear: source code can easily be copied or stolen without proper security

measures, and once released, it loses not only its trade secret protections but its value through not

being widely known and accessible. Federal Courts have determined that "in order for plaintiffs'

request [for full source code disclosure] to be granted, the entire Source Code must be relevant to

plaintiffs' copyright claim and the benefits of disclosure must outweigh the considerable

detriment invoked by defendants." *Abarca, supra*, at 483.

Once source code is determined to be relevant, however, the plaintiff must still "identify

the *source(s)* of the alleged similarity between [its] work and the defendant's work" before the

court decides what protection may apply. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435,

1443 (9th Cir. 1994)(emphasis in original). The Eleventh Circuit Court determined:

> [p]erhaps the best approach for a district court in any computer
> program infringement case, whether involving literal or nonliteral
> elements, is for it to require the copyright owner to inform the court
> as to what aspects or elements of its computer program it considers
> to be protectable. This will serve as the starting point for the court's
> copyright infringement analysis. *MiTek Holdings, Inc. v. Arce
> Eng'g Co., Inc.*, 89 F.3d 1548, 1555 (11th Cir. 1996)(footnote
> omitted).

Indeed, "[a] true trade secret plaintiff ought to be able to identify, up front, and with specificity

the particulars of the trade secrets without any discovery." *Jobscience, supra*, at *2. *See

also Nazomi Commons., Inc. v. Samsung Telcoms., Inc.*, No. 10-05545, 2012 U.S. Dist. LEXIS

76468, *10-12 (N.D. Cal. Jun. 1, 2012) (ECF No. 192) ("Given the sensitivity of source code, the

Court is not inclined to order broad disclosure absent a more specific showing.") (citation

omitted); and *Synopsys, Inc. v. Nassda Corp.*, 2002 WL 32749138 at *1 (N.D. Cal. 2002)(where

source code is a trade secret, the requesting party "has the burden of establishing that the

disclosure of the source code is both relevant and necessary to the action." (citing *Coca-Cola

Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985)).

Autodesk has failed to serve an appropriate designation of the sources of the alleged

similarity between AutoCAD source code and ZWSoft's software, and should not be allowed to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

embark in a fishing expedition at the expense and risk to ZWSoft with only the hope of making its case.

2.      **Autodesk Cannot Be Allowed Broad Discovery of Source Code**

On July 8, 2014, Autodesk sent ZWSoft's co-defendant Global Force Direct, LLC with a First Set of Requests for Production, containing:

**REQUEST FOR PRODUCTION NO. 25:**
Source code for each version and build of ZWCAD and ZWCAD+.

ZWSoft reasonably believes that it will be served with the same request, and that production of its entire proprietary source code is unwarranted where Autodesk has made no effort to ascertain which elements of its own software are protectable, and where disclosure of its source code subjects it to irreparable injury and jeopardizes its competitive viability. Disclosure of such information should be narrowly tailored to those portions alleged to have been copied. Only relevant information which is "reasonably calculated to lead to the discovery of admissible evidence" may be required. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d. 625, 635 (9th Cir. 2005).

Autodesk must be required to satisfy to this Court that they have a cognizable cause of action against ZWSoft before they are entitled to go forward with this suit. Only after they have met such minimal standard can they be allowed to engage in intrusive discovery that seeks to obtain confidential and proprietary trade secret information from a direct competitor. Autodesk must establish a reasonably particularized designation of the source(s) of the alleged similarities between AutoCAD and ZWCAD+, coupled with a protectable copyright interest.

Autodesk has asserted the importance of its own source code, calling it "one of the company's most valuable and closely-guarded assets and trade secrets." Complaint at 3, lines 20-21. This is no less true for ZWSoft's source code, the foundation of its ZWCAD+ software. ZWSoft has a keen interest in protecting elements of its program that it has developed that have not been alleged to have any infringing elements from discovery and review by its competitor. These unique elements include SmartVoice, SmartMouse, File Compare, and third-party cloud storage functions. Producing source code relating to these software features would violate

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

ZWSoft's privacy and expose it to unnecessary risk of theft and misappropriation.

Autodesk does not allege that *all* of the ZWCAD+ source code has been copied or misappropriated from the AutoCAD software. It would be inappropriate to allow discovery of all the ZWCAD+ source code without specificity in the Complaint itself. Further, nowhere does Autodesk allege that *any* of the ZWCAD source code was copied. Autodesk's own headings make this clear: "ZWCAD+ is Built on Stolen AutoCAD Source Code." Complaint at 5, line 8. Yet Autodesk seeks full access to the ZWCAD source code. Autodesk seeks to have the source code for not only the allegedly infringing ZWCAD+ produced, but all of the code for ZWCAD as well. Its reasons, much like the basis for its Complaint, remain unclear.

If "[t]he touchstone of any request for evidence is relevance," then it is necessary for a well-pled complaint to lay out the foundation upon which not only proper discovery, but defendant's notice of their alleged violations, can be built. *Abarca*, *supra*, at 491. The Court must dismiss Autodesk's Complaint for failure to put forth actionable claims. The Court cannot allow this matter to go forward when it appears Autodesk will seek overbroad and potentially harmful discovery, while failing to meet even minimal pleading requirements.

## IV.
## CONCLUSION

For the foregoing reasons, defendants ZWCAD Software Co., Ltd. and ZWCAD Design Co., Ltd. respectfully requests that this Court dismiss Autodesk's first and second causes of action in its Complaint for failure to plead with particularity and failure to state a claim as required by Fed. R. Civ. P. 12(b)(6).

Dated: December 5, 2014                    ROPERS, MAJESKI, KOHN & BENTLEY


By: */s/ Lael D. Andara*
    LAEL D. ANDARA
    BROCK R. LYLE
    MARIE E. SOBIESKI
    Attorneys for Defendant
    ZWCAD SOFTWARE CO., LTD. and
    ZWCAD DESIGN CO., LTD.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City