LAEL D. ANDARA (SBN 217909)
BROCK R. LYLE (SBN 242690)
MARIE E SOBIESKI (SBN 278008)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone:     (650) 364-8200
Facsimile:     (650) 780-1701
Email:         lael.andara@rmkb.com
               brock.lyle@rmkb.com
               marie.sobieski@rmkb.com

Attorneys for Defendants
ZWCAD SOFTWARE CO., LTD and
ZWCAD DESIGN CO., LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTODESK, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>ZWCAD SOFTWARE CO. LTD.,<br>ZWCAD DESIGN CO., LTD., and<br>GLOBAL FORCE DIRECT, LLC. (doing<br>business as ZWCADUSA),<br><br>        Defendants. | CASE NO. 3:14-cv-01409-EDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION TO ADOPT OF THE HAGUE CONVENTION TO OBTAIN FOREIGN DISCOVERY, OR IN THE ALTERNATIVE, TO MODIFY THE PROTECTIVE ORDER TO AVOID CONFLICTS WITH FOREIGN LAW** |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**TABLE OF CONTENTS**

                                                                          **Page**

I.      INTRODUCTION ........................................................................................1

II.     MEET AND CONFER EFFORTS ...........................................................2

        A.      Hague Convention ..............................................................................2

        B.      [Proposed] Amended Protective Order ...............................................2

III.    BACKGROUND .........................................................................................3

        A.      Standing ..............................................................................................3

        B.      The Parties ..........................................................................................4

                1.      Autodesk ..................................................................................4

                2.      ZWCAD Software Co., Ltd. and ZWCAD Design Co., Ltd ....4

        C.      Autodesk Discovery Requests .............................................................5

        D.      Burden of Exporting ESI .....................................................................6

        E.      People's Republic of China Laws Regarding Data and Information ....7

                a.      State Secret Determination .......................................................8

                b.      PRC Privacy Regulations .........................................................9

                c.      Need for Respect and Caution ................................................10

IV.     COMPROMISE PROPOSAL ..................................................................10

        A.      Obtaining Data from the PRC under the Terms of the Hague Convention ..........11

                1.      Hague Convention Process .....................................................11

                2.      Notions of Comity and Respect ..............................................11

                3.      Five Factor Test .....................................................................13

                        a.      Importance to the Litigation of the Data Requested ....13

                        b.      Degree of Specificity of the Request ...........................14

                        c.      Whether the Information Originated in the United States ....13

                        d.      Availability of Alternative Means to Securing the Information ....14

                        e.      Balance of National Interests ......................................15

        B.      Alternatively, Amending the Protective Order Will Avoid a Conflict of Laws ....15

                1.      Federal Rules of Civil Procedure – Rule 26(b)(1) .................16

                        a.      Whether the Information is Relevant to a Party's Claim or Defense and Proportional to the Needs of the Case ....17

                        b.      The Parties' Resources ................................................18

                        c.      Whether the Burden or Expense of the Proposed Discovery Outweighs Its Likely Benefit ................19

                2.      Federal Rule of Civil Procedure - Rule 34 ............................19

**TABLE OF CONTENTS**
**(continued)**

| | | Page |
|---|---|---|
| 3. | The Amended Protective Order Complies with the FRCP | 20 |
| V. | CONCLUSION | 21 |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abarca Health, LLC v. PharmaPix Corp.*,
   806 F.Supp.2d 483 (D. Puerto Rico 2011) ................................................................... 18

*Adobe Sys. Inc. v. Macromedia, Inc.*,
   2001 WL 1414843 (D. Del. Nov. 5, 2001) .................................................................... 18

*Gucci America, Inc. v. Weixing Li*,
   10 Civ. 4974 (RJS), 2011 U.S. Dist. LEXIS 97814 (S.D.N.Y. 2011) ............................ 13

*Hilton v. Guyot*,
   159 U.S. 113, 163-64 (1895) ......................................................................................... 12

*Hitkansut LLC v. United States*,
   2014 U.S. Claims LEXIS 1161 (Fed. Cl. Oct. 21, 2014) ............................................... 17

*Hudson v. Hermann Pfauter GmbH & Co.*,
   117 F.R.D. 33, 40 (N.D.N.Y. 1987) .............................................................................. 12

*Husa v. Laboratoires Servier SA*,
   740 A.2d 1092, 1096-97 (N.J. Super. Ct. App. Div. 1999) ........................................... 12

*In re Perrier Bottled Water Litig.*,
   138 F.R.D. 348, 353, 356 (D. Conn. 1991, ordering "plaintiffs to employ the
   procedures set forth in [the Convention] in pursuing any discovery from [the
   defendant], or of materials or information otherwise located in France") ..................... 12

*In re Rubber Chems. Antitrust Litig.*,
   486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007) ............................................................... 12

*Jobscience, Inc. v. CVPartners, Inc.*,
   2014 WL 1724763, *2 (N.D. Cal. 2014) ....................................................................... 17

*Larsen v. Coldwell Banker Real Estate Corp.*,
   2012 U.S. Dist. LEXIS 12901 (C.D. Cal. Feb. 2, 2012) ............................................... 17

*MAI Sys. Corp. v. Peak Computer, Inc.*,
   991 F.2d 511, 522 (9th Cir. 1993) ................................................................................. 17

*Niagra Duplicator Co. v. Shackleford*
   , 160 F.2d 25, 26 (D.C. Cir. 1947) ................................................................................ 19

*Official Unsecured Creditors Comm. of Media Vision Tech., Inc. v. Jain*,
   215 F.R.D. 587, 590 (N.D. Cal. 2003) .......................................................................... 10

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page

*Petro v. Lighting Serv.*,
　　2009 U.S. Dist. LEXIS 55096 (S.D. Ohio June 29, 2009) .......................................................19

*Philadelphia Gear Corp. v. Am. Pfauter Corp.*,
　　100 F.R.D. 58, 61 (E.D. Pa. 1983).......................................................................................12

*Richmark Corp. v. 26 Falling Consultants*,
　　959 F.2d 1468, 1475 (9th Cir. 1992) ...................................................................................10

*Schroeder v. Lufthansa German Airlines*,
　　1983 U.S. Dist. LEXIS 13735, at *5 (N.D. Ill. Sept. 15, 1983) ..........................................12

*Société Internationale Pour Participations Industrielles et Commerciales v. Rogers*,
　　357 U.S. 197, 211 (1958)......................................................................................................14

*Société Nationale Industrielle Aérospatiale v. United States Dist. Ct. for the S. Dist. of Iowa*,
　　482 U.S. 522, 546 (1987)................................................................................................12, 15

*Strauss v. Credit Lyonnais*,
　　249 F.R.D. 429 (E.D.N.Y. 2008) .........................................................................................13

*Tiffany (NJ) LLC v.Qi Andrew*,
　　276 F.R.D. 143 (S.D.N.Y. 2011) .............................................................................13, 14, 15

*Verity v. Wells Fargo Bank, N.A.* (*In re Verity*),
　　2011 Bankr. LEXIS 2792 (Bankr. D.N.J. July 19, 2011)......................................................20

*Viacom Int'l Inc. v. YouTube, Inc.*,
　　253 F.R.D. 256 (S.D.N.Y. 2008) ..........................................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(c) ....................................................................1, 5, 10, 15, 16, 17, 19

Fed. R. Civ. Proc. 1.....................................................................................2, 14, 16, 19

Rule 26(c) of the Federal Rules of Civil Procedure ..........................................................1

FRCP Rule 1 ..................................................................................................................19

FRCP Rule 34 .........................................................................................................19, 21

Restatement (Third) of the Foreign Relations Law of the United States §442(1)(c) ...................13

Restatement (Third) Foreign Relations Law §442(1)(C) ...................................................13

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

<div style="writing-mode: vertical-rl">Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City</div>

1

<u>NOTICE OF MOTION</u>

2     Defendant ZWCAD Software Co., Ltd. and ZWCAD Design Co., Ltd. (collectively,

3  "ZWSoft") hereby give notice that on May 6, 2015 at 9:00 a.m. before the Honorable Judge

4  Edward J. Davila in Courtroom 4 of the above-referenced Court located at 280 South 1st Street,

5  San Jose, California, ZWSoft will seek a Protective Order governing the disclosure of sensitive,

6  confidential, and trade secret information in this action. This motion for a protective order is

7  brought pursuant to Rule 26(c) of the Federal Rules of Civil Procedure on the grounds that good

8  cause exists to award protective relief to govern the disclosure and dissemination of ZWSoft's

9  data and documents. ZWSoft requests that the Court direct discovery should be conducted under

10  the Hague Convention on Taking of Evidence Abroad in Civil and Commercial Matters (the

11  "Hague Convention"). Alternatively, should the court decline to follow the Hague Convention,

12  ZWSoft's requests the Court order source code of ZWCAD+ 2012 and ZWCAD+ 2014, including

13  the build and mastering scripts, third party binary components and libraries, already deposited in

14  Beijing, be made available for inspection for the purposes of this litigation, subject to the parties'

15  legal objections. Further, ZWSoft requests the Court order ZWSoft's proposed Amended

16  Protective Order, which provides necessary safeguards for the parties to obtain data in this action

17  from the People's Republic of China (the "PRC") consistent with the Federal Rules of Civil

18  Procedure.

19     This motion is based on this Notice of Motion and Motion, the pleadings on file in this

20  matter, the following Memorandum of Points and Authorities, [Proposed] Amended Protective

21  Order, Declaration of Lael D. Andara filed concurrently herewith, and any further argument the

22  Court might allow.

23     As of the filing of this Motion, ZWCAD Software Co., Ltd. and ZWCAD Design Co.,

24  Ltd. have not conducted a 26(f) conference and first appeared in this matter on December 5, 2014.

25  **I.     <u>INTRODUCTION</u>**

26     Defendants ZWCAD Software Co., Ltd. and ZWCAD Design Co., Ltd. (collectively,

27  "ZWSoft"), are incorporated under the laws of the People's Republic of China. Pursuant to Rule

28  26(c) of the Federal Rules of Civil Procedure, ZWSoft brings this motion to safeguard the

interests of all parties under both US and PRC law.

Allowance of broad and unfettered discovery puts ZWSoft and its employees at risk of both civil and criminal penalties in the PRC with little or no benefit to this litigation. Risks can be mitigated while allowing for fair discovery by both sides by following the Hague Convention, or if necessary, applying a modified protocol consistent with the Federal Rules of Civil Procedure, as outlined in the proposed Amended Protective Order.

Autodesk and ZWSoft are already locked in litigation on these same issues in the Netherlands.[1] The content and scope of that case is substantively the same, concerning the alleged copying of source code. The parties have already reached agreements regarding the production of source code for that case, which for the sake of judicial economy should and can be implemented in forwarding the objectives of a just, speedy, and inexpensive determination of this action. Fed. R. Civ. Proc. 1.

## II.    MEET AND CONFER EFFORTS

### A.    Hague Convention

On December 5, 2014, counsel for ZWSoft requested that "*Autodesk agree to stipulate that data being sought from China will follow the Hague Convention protocol and not the FRCP.*" *See* Decl. of Lael D. Andara in Support of ZWSoft's Motion for Entry of a Protective Order ¶¶ 9. ("Andara Decl."). On December 10, 2014, a conference call was convened between counsel for **ZWSoft**, Lael Andara, **Global Force Direct, LLC** ("GFD"), Kenneth Walczak, and **Autodesk**, Diana Kruze. Andara Decl. ¶¶ 101-15. Autodesk advised that they would not consent to proceeding with the Hague Convention for obtaining evidence from the PRC. *Id.* at 6. Andara Decl. ¶ 14.

### B.    [Proposed] Amended Protective Order

As an alternative to the Hague Convention, ZWSoft sought to negotiate a stipulated protective order with Autodesk that provided a protocol to balance the needs of the case with the risk of exporting data from the PRC. *Id.* ¶¶ 10-15. On December 3, 2014, defendants ZWSoft sent

---

[1] The District Court of the Hague in the Netherlands, case number C/09/460412/KG ZA 14-178.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER - CASE NO. 3:14-CV-

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

GFD and Autodesk a draft amended protective order based on the Protective Order entered by Magistrate Laporte on September 29, 2014, to which ZWSoft was not a party. [Doc. 34] *See* id. ¶ 7. (For the Court's convenience, a redline showing the differences between the Stipulated Protective Order [Doc. 34] agreed to between Autodesk and GFD and ZWSoft's proposed order is attached. *See id.* ¶ 7, Exhibit A). On December 10, 2014, counsel for Autodesk provided a redline version of the proposed Amended Protective Order, which substantively removed ZWSoft's additions.  *Id.* ¶ 10. Exhibit B.

The proposed Amended Protective Order was discussed on the December 10, 2014 call referenced above, but no compromise could be reached, specifically as to sections 8 and 10 relating to export of data from the PRC. *Id.* ¶¶ 10-16. Autodesk has asserted that it wants data production, particularly the ZWCAD+ source code, brought to the United States for review.  *Id.* ¶¶ 10-16. The parties addressed the fact that the District Court of the Hague had, at Autodesk's suggestion, ordered ZWSoft source code be deposited with a firm in the PRC, rather than in the Netherlands. *Id.* ¶¶ 10-16. ZWSoft proposed this already-designated source code repository be used for this litigation. *Id.* ¶¶ 10-16. Autodesk maintained that while they did not object to reviewing source code in the PRC, it was imperative that the source code also be available for review in the United States. *Id.* ¶¶ 10-16. As to other data related to product development and United States sales, Autodesk indicated that the information needed to be brought to the United States and would oppose inspection in the PRC. *Id.* ¶¶ 10-16.

## III.   **BACKGROUND**

### A.   **Standing**

ZWSoft is compelled to bring this motion now to avoid any accusations of delaying discovery. *See, e.g., Richmond Corp. v. Timber Falling* Consultants, 952 F.2d 1468 (9th Cir. 1992) (rejecting defendant's objection to discovery because defendants failed to object to disclosure of PRC state secrets until late in pretrial proceedings after defendant failed to comply with court-ordered discovery, was held in contempt, and subject to sanctions). ZWSoft seeks the Court's authority deciding this matter so that the parties may begin discovery that is proportional to the needs of the case, and does not subject ZWSoft to unwarranted risk.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER - CASE NO. 3:14-CV-

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**B.     The Parties**

1.     **Autodesk**

Autodesk asserts that it is "a pioneer and worldwide leader in digital design technologies," having originated "computer-aided design ('CAD') software to create digital models and workflows that allow visualization, simulation, and analysis of designs before implementation." Complaint at 1, lines 5-11. AutoCAD was launched in 1982. *Id.* at 2, line 23. AutoCAD became an industry favorite in the 1980s. *Id.* at 2, line 28. Since AutoCAD's initial release, "Autodesk has continually developed and enhanced the product" and expanded their product line. *Id.* at 3, lines 1-4.

In its Complaint, Autodesk asserts both copyright and trade secret protection for the AutoCAD software. It lists three U.S. copyright registration numbers as "examples" of its "well over a hundred registered U.S. copyrights relating to its AutoCAD products," but does not state which copyrights are alleged to have been violated. *Id.* at 3, lines 26-27. It further asserts that the "AutoCAD source code is one of the company's most valuable and closely-guarded assets and trade secrets," but does not indicate how ZWSoft could have accessed such secret information. *Id.* at 3, lines 20-21.

2.     **ZWCAD Software Co., Ltd. and ZWCAD Design Co., Ltd.**

Autodesk alleges that ZWSoft released its first CAD software product, ZWCAD 1.0, in 2002, and subsequent products every year from 2003 to 2012. *Id.* at 4, lines 2-4. In 2012, ZWSoft began to sell ZWCAD+. *Id.* at 4-5, lines 22-7. The Complaint claims that "ZWSOFT's ZWCAD and ZWCAD+ products directly compete with Autodesk's AutoCAD software as CAD programs for the architectural, engineering, construction, manufacturing, geospatial mapping, and digital media industries." *Id.* at 4, lines 4-6. Autodesk does not allege that pre-2012 ZWCAD infringes any copyrights, copies any source code, or includes any trade secret information. Instead, Autodesk alleges ZWSOFT's ZWCAD+ software has "close similarities to AutoCAD," specifically AutoCAD's 2007 and 2008 versions. *Id.* at 5, line 5, and 6, lines 1-14. On this basis, Autodesk concludes that ZWSoft misappropriated "significant portions of Autodesk's proprietary source code." *Id.* at 5, lines 10-11.

Autodesk cites idiosyncrasies, including errors, bugs, and support of legacy commands and system variables, to prop up its copyright and trade secret allegations, but does not assert copyright ownership of the aforementioned idiosyncrasies or error messages. Autodesk does not allege that either ZWCAD or ZWCAD+ is identical to Autodesk 2007 or Autodesk 2008, or specify which portions it claims are infringing. *Id.* at 5, lines 9-11.

**C.    Autodesk Discovery Requests**

Autodesk served co-defendant GFD with a First Set of Requests for Production on July 8, 2014. Despite the vague allegations included in Autodesk's Complaint [Doc. 1], concerns with which are further detailed in ZWSoft's Motion to Dismiss [Doc. 48] to be considered by the Court on April 30, 2015, ZWSoft reasonably believes it will be served with substantially the same requests. These raise a number of concerns, particularly that upon conducting the FRCP 26(f) conference and anticipated written discovery by Autodesk in February, ZWSoft will also receive overly broad written discovery exceeding what is legally and reasonably needed for the this case, potentially exposing ZWSoft to civil and criminal penalties in the PRC. The following are examples of the written discovery requests:

> ***REQUEST FOR PRODUCTION NO. 1:***
>
> *All documents concerning ZWCAD SOFTWARE CO., LTD.*
>
> ***REQUEST FOR PRODUCTION NO. 2:***
>
> *All documents concerning ZWCAD DESIGN CO., LTD.*
>
> ***REQUEST FOR PRODUCTION NO. 3:***
>
> *All documents concerning ZWCAD.*
>
> ***REQUEST FOR PRODUCTION NO. 4:***
>
> *All documents concerning ZWCAD+.*

Andara Decl. ¶ 12 as Exhibit C is a true and correct copy of the RFP served on GFD. Many of these requests are overly broad as to both time and geographic location, and not rationally limited to the needs of the case. ZWSoft's burden and risks in complying with these requests exceeds what is reasonable.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

### D.   Burden of Exporting ESI

Autodesk has already agreed to the use of Alvarez & Marsal in Beijing as a source code sequestrator for the parallel case in the Netherlands. Indeed, it was Autodesk who located, vetted, and advocated the PRC-located firm initially. This is a more than tacit admission that production of the source code in Beijing for this litigation is reasonable and secure.

Two sources of information are predominantly relevant in this case. The first is ZWSoft's accused ZWCAD+ software source code, a copy of which already been provided for the Dutch litigation in a location in the PRC.

The second source of information at issue is electronically stored information ("ESI"), consisting of non-source code related information. This will consist in large part of emails, documents, and spreadsheets created, maintained, and kept in the normal course of business in the PRC, and specifically in Guangzhou and Beijing.

The burden of exporting data from the PRC to the United States is two-fold. First, the ESI may implicate PRC state secret or privacy laws, exposing ZWSoft to risk of significant legal penalties. Second, as much of the ESI is anticipated to be in the native language, predominantly modern Chinese. Having the data reviewed in the PRC by a native speaker acting under the FRCP standards will be far more cost effective than bringing it to the United States and translating it before potential production in this litigation.

Autodesk is a multinational company and made over $2.3 billion dollars of revenue in 2013. *Autodesk Inc. 2014 Annual Report Form (10-K)*, United States Securities and Exchange Commission (March 10, 2014). In addition to its headquarters and offices in the United States, Autodesk has over 50 offices in more than twenty-five countries, including six in the PRC.[2]

By comparison, ZWSoft has an average revenue roughly 1/1,000th of Autodesk's. The size disparity between the companies is clear: Autodesk is the industry giant, with the resources to outman and outspend ZWSoft with ease.

---

[2] Taken from the "Contact Us" pages of Autodesk's websites, including:
http://usa.autodesk.com/adsk/servlet/item?siteID=123112&id=304741 and
http://usa.autodesk.com/adsk/servlet/item?siteID=123112&id=304529.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    The analysis of the source code performed by experts for both parties will not change just

2    because there is a change in caption on the papers. Following the Hague Convention, or

3    alternatively amending the existing Protective Order, addresses foreign state secrecy and privacy

4    laws for data and avoids placing ZWSoft at a significant risk. As such, ESI export for use in the

5    United States litigation can be accomplished without disregard for the laws of the PRC. If

6    Autodesk is already analyzing the source code in Beijing, argument that such investigation is

7    unduly burdensome in comparison to the risk to ZWSoft do not justify duplicative production.

8    **E.**      **People's Republic of China Laws Regarding Data and Information**

9    When collecting ESI, it is vital to remember that the PRC is a foreign nation governed by

10   its own set of laws and regulations that may not run parallel to those of the United States. Under

11   the PRC's *Law on Guarding State Secrets of the People's Republic of China* (the "State Secret

12   Law"), every PRC entity is required to protect state secrets. The National People's Congress of

13   the People's Republic of China, *Law of the P.R.C. on Guarding State Secrets*, as amended on

14   April 29, 2010, effective October 1, 2010. This includes not only government-controlled

15   businesses, but private businesses and citizens, and extends whether or not that business or person

16   is located in the PRC, the United States, or elsewhere. *Id.*

17   Article 21 of the State Secrecy Law requires that Chinese authorities clear any transferal

18   of data for the purpose of cooperation with a foreign country. *Id.* The PRC government must give

19   its permission prior to any information being transferred if that information is, or might be, a state

20   secret. *Id.* The *Interpretation of the Supreme People's Count on Several Issues Concerning the*

21   *Application of Law for Trial of Cases of Stealing, Buying, or Unlawfully Supplying State Secrets*

22   *or Intelligence for Entities Outside of the Territory of China* states that, "[w]hoever steals, spies

23   into, buys, or unlawfully supplies state secrets or intelligence for entities outside of the Territory

24   of China" can be fined or sentenced to prison. However, what specifically constitutes a "state

25   secret" can be unclear. What may be considered ordinary business information in the United

26   States may constitute a "state secret," of the type of government involvement implicating the state

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

secret laws, in the PRC. *See, e.g.*, *China Data Privacy and Discovery Overview*, The Sedona Conference, J.D. Kemnitz and K. Sprouse, 2013[3]; *Understanding China's State Secrets Laws*, China Business Review, January 1, 2011.[4]

### a.   State Secret Determination

Additionally, information considered to involve "state secrets" may not be designated as such until years after it is removed from the PRC. This was the case for Chinese-born American citizen Xue Feng, sentenced in 2010 to eight years in prison after trying to buy and export a database from the PRC. Most countries consider this type of information to be open and public, including the United States. Not so in the PRC, where it was only designated a "state secret" two years after Mr. Feng's attempted purchase. *Xue Feng, U.S. Geologist, Gets 8-Year Sentence, Was Tortured in China*, The Huffington Post, September 5, 2010.[5] This example serves to highlight the degree of caution that must be undertaken when moving data in and out of the PRC, even data commonly considered a normal part of business. The PRC takes particular interest when documents are being exported abroad, and may extend its reach if it believes there is a legitimate, even if previously unexpressed or tangential, government interest.

While Article 2 of the State Secrets Law seems clear, defining state secrets as those "matters that have a vital bearing on state security and national interests and, as specified by legal procedure, are entrusted to a limited number of people for a given period of time," Article 8 expands this seemingly tight definition to further include:

> (1) major policy decisions on State affairs;
>
> (2) the building of national defense and the activities of the armed forces;
>
> (3) Diplomatic activities, activities related to foreign countries, and information maintained as commitments to foreign countries;
>
> (4) national economic and social development;
>
> (5) science and technology;

---

[3] Available at: http://www.shb.com/newsevents/2013/ChinaDataPrivacy.pdf.
[4] Available at: http://www.chinabusinessreview.com/understanding-chinas-state-secrets-laws/.
[5] Available at: http://www.huffingtonpost.com/2010/07/05/xue-feng-us-geologist-get_n_635534.html.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/7708323.4/RS

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER - CASE NO. 3:14-CV-

1

(6) activities for safeguarding State security and the investigation of criminal offenses; and

2

3

(7) other matters that are clarified as State secrets by the State secret-guarding department.

4

These categories are broad and call for governmental interpretation, which is distinctly lacking. It

5

is also incorrect to assume that "(5) science and technology" relates only to projects funded by

6

governmental organizations. There is no definite manner of interpreting this restriction, and thus

7

it is reasonable to believe technology such as programming and source code could be deemed a

8

state secret. This is particularly if the removal of the source code is from a successful and

9

growing PRC corporation, and may therefore impact the PRC's "national and economic

10

development." Thus, the PRC may consider ZWCAD or ZWCAD+ software source code to be or

11

contain state secret information. ZWSoft is not unreasonable in wanting to avoid this risk.

12

### b.    PRC Privacy Regulations

13

Like the state secrecy laws, the PRC's rules on what defines "personal privacy" are

14

amorphous, and there is no comprehensive data privacy and protection in place. On February 1,

15

2013, the PRC's Ministry of Industry and Information Technology issued non-binding data

16

privacy guidelines, entitled *The Information Technology Security Guideline for Personal*

17

*Information Protection Within Information Systems for Public and Commercial Services*

18

("Guidelines"). Principles put forward in the Guidelines are echoed in other regulations, including

19

the *Decision on Strengthening Protection of Online Information*, but none include a specific

20

definition as to what constitutes "sensitive data." Companies are left to carefully navigate what

21

information they collect and store, and how they use this information.  Further, the Guidelines

22

suggest that transfers of information across the PRC's borders will be permitted with only express

23

consent, which leaves data collection for litigation concerns uncomfortably unsettled.

24

Even seemingly legal reasons may not excuse collection, storage, and use of information

25

on PRC citizens. For example, on August 8, 2014, a Shanghai court sentenced a couple to fines

26

and more than two years of prison each for purchasing and use of personal information of

27

Chinese citizens. *Chinese Privacy Case Raises Risks of Doing Business in Country*, The Wall

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  Street Journal, August 12, 2014.[6]  The couple used this information to prepare otherwise legal and

2  commonplace investigative reports for clients.

3   Impermissible disclosure of private information can result in civil or criminal penalties.

4  The collection of potentially personal information must be conducted carefully to ensure

5  compliance with the PRC's laws and to avoid putting those collecting for ZWSoft at risk, while

6  providing data that is necessary to litigate the merits.

7  <center>**c. Need for Respect and Caution**</center>

8   The threat of penalty for production of information from the PRC that could be deemed to

9  be private or a state secret is more than speculative. State secrecy and privacy laws must be

10  considered before allowing broad and largely unnecessary discovery. ZWSoft should not be

11  compelled to remove information from the PRC without taking the proper precautions, and such

12  steps need not hinder the ability of Autodesk to review and use necessary information in this

13  litigation.

14  **IV. <u>COMPROMISE PROPOSAL</u>**

15   "[F]or good cause shown," the Court may issue protective orders limiting or setting

16  conditions on the disclosure of "trade secret[s] or other confidential research, development, or

17  commercial information." Fed. R. Civ. P. 26(c)(7). The courts routinely issue orders granting

18  confidential status to trade secrets and sensitive information. *See, e.g., Official Unsecured*

19  *Creditors Comm. of Media Vision Tech., Inc. v. Jain*, 215 F.R.D. 587, 590 (N.D. Cal. 2003).

20   Protective orders on sensitive and trade secret information may also be placed on

21  information when production might step on the toes of foreign nations. This is particularly true

22  when production is available in a manner that abides by the laws of the foreign sovereignty,

23  without sacrificing the propounding party's rights to access under United States law: "If the

24  information sought can easily be obtained elsewhere, there is little or no reason to require a party

25  to violate foreign law." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th

26

27

28  [6] Available at: http://www.wsj.com/articles/chinese-privacy-case-raises-risks-of-doing-business-in-country-1407860680.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  Cir. 1992). The Hague Convention provides Autodesk with an adequate means of securing the

2  information requested without risking ZWSoft's violation of the PRC's sovereignty, privacy, and

3  state secret laws. If the Court deems the Hague Convention appropriate, ZWSoft proposes an

4  amended protected order that balances the interests of both parties in the context of the Federal

5  Rules of Civil Procedure ("FRCP").

6      **A.**    **Obtaining Data from the PRC under the Terms of the Hague Convention**

7          **1.**    **Hague Convention Process**

8        The most equitable way to propound discovery of data in the PRC is through the Hague

9  Convention. Both the United States and the PRC are signatories to the Hague Convention and

10 therefore bound by their agreements. Additionally, use of this proper and authorized method

11 shields ZWSoft and its employees from possible civil and criminal penalties for disclosure

12 outside of information deemed now or later to be "state secrets" or implicated under privacy

13 regulations.

14       To obtain discovery under the Hague Convention, the Court must submit a Letter of

15 Request to the PRC Minister of Justice. This Letter will then be forwarded to the PRC Supreme

16 Court for review. The PRC Supreme Court had the authority to permit the disclosure of

17 documents with a "direct and close connection with the subject matter of the litigation."

18 *Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*,

19 Article 33 and Status Table. The Court may limit or reject requests if disclosure of information

20 would violate PRC law or state sovereignty, security, or public interest. Upon approval, the Letter

21 of Request will be forwarded to a lower PRC court for execution, which includes review of the

22 material and redaction of potentially sensitive information. These checks include confirming that

23 none of the material being requested violates the PRC's state secrecy laws or privacy regulations.

24 ZWSoft concedes that this process typically takes longer than conducting discovery under the

25 Federal Rules of Civil Procedure, but asserts that the benefits of compliance with the PRC laws

26 justifies this cost. The process ensures that information taken out of the PRC will not subject

27 those who produce it to risk of civil or criminal punishment. Additionally, it upholds the premise

28 of comity sought by signatory nations to the Hague Convention.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/7708323.4/RS                                    - 11 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER - CASE NO. 3:14-CV-

## 2.    Notions of Comity and Respect

"Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). It is the recognition that one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007).

The Supreme Court has made clear that this Court "should take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Société Nationale Industrielle Aérospatiale v. United States Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). California courts have required that a court's initial discovery orders account for the ascertainable requirements of the foreign state and adopt those procedures which are least likely to offend the state's sovereignty. *Schroeder v. Lufthansa German Airlines*, 1983 U.S. Dist. LEXIS 13735, at *5 (N.D. Ill. Sept. 15, 1983)

Following *Société Nationale*, courts have ordered parties to seek permission from a foreign government for the initial production of documents through the Hague Convention. This is required where a conflict exists between discovery that would be permissible under the FRCP, and foreign laws limiting the disclosure of such materials. *See In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 353, 356 (D. Conn. 1991, ordering "plaintiffs to employ the procedures set forth in [the Convention] in pursuing any discovery from [the defendant], or of materials or information otherwise located in France"); *Hudson v. Hermann Pfauter GmbH & Co.*, 117 F.R.D. 33, 40 (N.D.N.Y. 1987) (finding plaintiffs were required to serve interrogatories in accordance with the Hague Convention, noting, in part, that the "use of the Federal Rules could require [the defendant] to violate the privacy rights of individuals protected by West German law"); *Husa v. Laboratoires Servier SA*, 740 A.2d 1092, 1096-97 (N.J. Super. Ct. App. Div. 1999)(requiring use of Hague Convention procedures for party discovery, noting existence of a French "blocking statute" which "should be accommodated, when possible"); *see also Philadelphia Gear Corp. v.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER - CASE NO. 3:14-CV-

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

*Am. Pfauter Corp.*, 100 F.R.D. 58, 61 (E.D. Pa. 1983) (requiring plaintiff to comply with Hague Convention when taking discovery of foreign defendant); *Schroeder v. Lufthansa German Airlines*, No. 83 C 1928, 1983 U.S. Dist. LEXIS 13735, at *4-8 (N.D. Ill. Sept. 15, 1983) (convention applied to interrogatories, and the treaty called for cooperative and expeditious responses).

### 3.   Five Factor Test

District Courts in New York have heard a number of cases involving whether or not to abide by the Hague Convention. To guide their analysis, they have adopted the five-factor test set forth in the Restatement (Third) of the Foreign Relations Law of the United States §442(1)(c). *See*, *e.g.*, *Tiffany (NJ) LLC v.Qi Andrew*, 276 F.R.D. 143 (S.D.N.Y. 2011); *Strauss v. Credit Lyonnais*, 249 F.R.D. 429 (E.D.N.Y. 2008). This "comity" analysis requires the courts to consider:

> (1) the importance to the investigation or litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means to securing the information; and
>
> (5) the balance of national interests.

Restatement (Third) Foreign Relations Law §442(1)(C). The court may additional consider "the hardship of compliance on the party of witness from whom discovery is sought [and] the good faith of the party resisting discovery." *Gucci America, Inc. v. Weixing Li*, 10 Civ. 4974 (RJS), 2011 U.S. Dist. LEXIS 97814 (S.D.N.Y. 2011).

Factors dispositive of this issue include:

### a.   Importance to the Litigation of the Data Requested

Without doubt this litigation requires review of the source code that Autodesk identifies as being copied or stolen, but that can be easily resolved by using the repository already chosen by Autodesk in the PRC. Requiring duplicative source code production in the United States creates additional cost, unnecessary security risk, and the potential for violation of the PRC's laws.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Andara Dec. ¶ 15.

2                        **b.      Degree of Specificity of the Request**

3          As discussed and demonstrated above and in the Motion to Dismiss [Doc. 48], the scope

4    and basis for Autodesk's requests are overly broad and unduly burdensome. Autodesk has thus-far

5    failed to give ZWSoft a clear indication of which aspects of the source code are relevant to this

6    litigation, but has propounded extensive and largely unnecessary discovery. Autodesk is not

7    authorized under United States law to unfettered review of all ZWSoft source code, including that

8    which is clearly not relevant to this litigation, in order to make its case.

9          It is further unnecessary to produce duplicative information, and the Court must recall that

10   a great deal of discoverable ESI, including documents created jointly and exchanged between

11   ZWSoft and its United States distributor GDL, is already available or has been produced to

12   Autodesk. This case involves only the aspects of the claims that relate to the products and sale of

13   those products in the United States. To the extent it has already been provided data already in the

14   United States, it must not be allowed to request this same information where it will subject

15   ZWSoft and its employees to needless burden and risk. *See* FRCP 1.

16                       **c.      Whether the Information Originated in the United States**

17         Autodesk has argued that ZWSoft, in addition to the production in the PRC, should also

18   produce its source code in the United States, and asserted that such production would ease not

19   only Autodesk's burden to review, but ZWSoft's. Andara Decl. ¶ 15. ZWSoft fails to see how this

20   eases any burden but Autodesk's, but fully comprehends the additional and excessive costs and

21   risks ZWSoft will incur. Rote compliance to the FRCP may force ZWSoft to violate laws of the

22   PRC and subject it and its employees to civil and criminal liability, and certainly create avoidable

23   costs disproportionate to the needs of the case. If a foreign company is likely to face criminal

24   prosecution in a foreign country for complying with a United States court order, that is a weighty

25   excuse for nonproduction. *Société Internationale Pour Participations Industrielles et*

26   *Commerciales v. Rogers,* 357 U.S. 197, 211 (1958).

27                       **d.      Availability of Alternative Means to Securing the Information**

28         Autodesk has argued that compliance with the Hague Convention is itself a burden.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER - CASE NO. 3:14-CV-

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    However, in *Tiffany*, the court dismissed outdated notions that the Hague Convention was time

2    consuming or unlikely to lead to discoverable information. *Tiffany, supra,* 276 F.R.D. at 143.

3    Instead, it was persuaded by new evidence that the PRC authorities are willing to execute Letters

4    of Request and view the Hague Convention as a viable means to obtain evidence. Andara Decl. ¶

5    17. *See Chinese Ministry of Justice Report* from *Tiffany*, *supra*, attached as Exhibit D . For these

6    reasons, the Hague Convention remains the most effective, appropriate, and diplomatic way of

7    producing documents for litigation in this case.

8                          **e.        Balance of National Interests**

9            The Hague Convention procedures provide the means to access the key evidence, while

10   respecting the rights of the PRC. Requiring the parties here to proceed under the Hague

11   Convention strikes the appropriate balance between principles of comity and the many interests of

12   the parties. The use of these procedures will reduce ZWSoft' risks of violating PRC law, permit

13   the appropriate authorities to interpret the requirements of the PRC, and allow Autodesk to obtain

14   needed discovery while observing to the laws of the PRC sovereignty.

15           Accordingly, this Court should direct the parties to use the procedures specified in the

16   Hague Convention for discovery to be taken in the PRC.

17           **B.        Alternatively, Amending the Protective Order Will Avoid a Conflict of Laws**

18           If the Court elects to apply the Federal Rules of Civil Procedure rather than the Hague

19   Convention, ZWSoft requests that production be ordered as outlined in section 10 of the proposed

20   Amended Protective Order. Andara Decl. Exhibit A. ZWSoft has provided a protocol that

21   balances the needs of the case with the objective of a just, speedy, and inexpensive determination

22   under the requirements of FRCP 26(b)(2)(C). This proposed Amended Protective Order includes

23   a protocol following the objectives of the FRCP modified to allow for complete production of

24   relevant data and code while balancing the laws of the PRC and the burden on Au todesk.

25           In *Société Nationale*, the Supreme Court found that lower courts have wide discretion to

26   decide on a case-by-case basis whether to require the use of those procedures prior to relying on

27   the discovery procedures under the FRCP. *Société Nationale Industrielle Aerospatiale v. US Dist.*

28   *Court for Southern Dist. Of Iowa*, 482 U.S. 522, 544 (1987) (holding a court should apply

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER - CASE NO. 3:14-CV-

1   "scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to

2   those procedures will prove effective"). This procedure is authorized under the Federal Rules of

3   Civil Procedure, particularly Rules 26 and 34.

4   **1.      Federal Rules of Civil Procedure – Rule 26(b)(1)**

5          The Federal Rules of Civil Procedure authorize party-initiated discovery of any evidence

6   relevant to a party's claims or defenses. Fed. R. Civ. P. 26(b)(1). Rule 26 grants the court

7   discretion to limit discovery on several grounds, including international comity. *Aerospatiale*,

8   *supra*, 482 U.S. at 544. In supervising pretrial proceedings, United States courts should exercise

9   special vigilance to demonstrate due respect for any sovereign interest expressed by a foreign

10  state. *Id*. at 546.

11         Recently proposed amendments to the Federal Rules of Civil procedure attempt to clarify

12  the correct focus of the inquiry of discovery in United States Courts, beginning with revised Rule

13  1 (proposed new language appears <u>underlined</u>):

14         These rules govern the procedure in all civil actions and proceedings in the United
       States district courts, except as stated in Rule 81. They should be construed, and
15     administered, <u>and employed by the court and the parties</u> to secure the just, speedy,
       and inexpensive determination of every action and proceeding.
16
17  The goal is a just, speedy, and inexpensive discovery process. Revised Rule 26 provides further
    context:
18
19     (b) Discovery Scope and Limits.

20     (1) Scope in General. Unless otherwise limited by court order, the scope of
       discovery is as  follows: Parties may obtain discovery regarding any nonprivileged
21     matter that is relevant to any party's claim or defense <u>and proportional to the needs
       of the case,  considering the amount in controversy, the importance of the issues at
22     stake in the action, the parties' resources, the importance of the discovery in
       resolving the issues, and whether the burden or expense of the proposed discovery
23     outweighs its likely benefit. Information within this scope of discovery need not be
       admissible in evidence to be discoverable.</u> ~~including the existence, description,
24     nature, custody, condition, and location of any documents or other tangible things
       and the identity and location of persons who know of any discoverable matter. For
25     good cause, the court may order discovery of any matter relevant to the subject
       matter involved in the action. Relevant formation need not be admissible at the
26     trial if the discovery appears reasonably calculated to lead to the discovery of
       admissible evidence. All discovery is subject to the limitations imposed by Rule
       26(b)(2)(C).~~
27
28  The proposed amendment clarifies the context of discovery, ensuring that it remains proportional

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

to the needs of the case. Commentary to the rule clarifies: "[d]iscovery of inadmissible information is limited to matter that is otherwise within the scope of discovery, namely that which is relevant to a party's claim or defense and proportional to the needs of the case." This is not an addition, but rather an explicit elucidation as to the need for proportionality previously recognized by the courts. *Larsen v. Coldwell Banker Real Estate Corp.*, 2012 U.S. Dist. LEXIS 12901 (C.D. Cal. Feb. 2, 2012) (citing *The Sedona Conference, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production*, Principle 2 (2d ed. 2007) with reference to Fed. R. Civ. P. 26(b)(2)(C)(iii), the court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."); *Hitkansut LLC v. United States*, 2014 U.S. Claims LEXIS 1161 (Fed. Cl. Oct. 21, 2014) (citing 7 James Wm. Moore et al., Moore's Federal Practice §37.22[2][a] (3d ed. 2012) as to the proportionality factors of FRCP 26 (b)(2)).

The defining discovery factors under the amendment to Rule 26 share parallels with the Hague Convention factors: importance of the issues at stake, the parties resources, the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit.

### a.   Whether the Information is Relevant to a Party's Claim or Defense and Proportional to the Needs of the Case

As discussed in the Motion to Dismiss [Doc. 48] and above, if Autodesk is allowed to proceed in this litigation it must allege sufficient facts to support its case, and in doing so must narrowly tailor its discovery to only those portions of ZWSoft's source code it believes have infringed. "[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 522 (9th Cir. 1993). Andara Decl. ¶ 15. Further, "[e]xperience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendant's

- 17 -

1  files, and then cleverly specify whatever happens to be there as having been trade secrets stolen

2  from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 1724763, *2 (N.D. Cal. 2014). To

3  allow unfettered access puts ZWSoft's trade secret source code at unnecessary peril.

4      The risks inherent in the production of source code even in the PRC is clear: source code

5  can easily be copied or stolen without proper security measures, and once released, it loses not

6  only its trade secret protections but its value through not being widely known and accessible. In

7  *Viacom Int'l Inc. v. YouTube, Inc.*, the court denied the plaintiff's motion to compel disclosure of

8  certain source code portions which were "critical trade secret[s] for defendants." *Viacom Int'l Inc.*

9  *v. YouTube, Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008). In *Adobe Sys. Inc. v. Macromedia, Inc.*, the

10 Delaware District Court found that source code was "of critical importance to [defendant's]

11 business and must be provided the highest form of protection a court can provide in the context of

12 a particular case." *Adobe Sys. Inc. v. Macromedia, Inc.*, 2001 WL 1414843 (D. Del. Nov. 5,

13 2001). Federal Courts have determined that "in order for plaintiffs' request [for full source code

14 disclosure] to be granted, the entire Source Code must be relevant to plaintiffs' copyright claim

15 and the benefits of disclosure must outweigh the considerable detriment invoked by defendants."

16 *Abarca Health, LLC v. PharmaPix Corp.*, 806 F.Supp.2d 483 (D. Puerto Rico 2011).

17     In consideration of these factors, and if the Court will not order compliance with the

18 Hague Convention, ZWSoft requests the Court adopt its proposed Amended protocol, which

19 allows the parties to respect blocking statutes while also remaining in the time frame anticipated

20 by the FRCP. This may be accomplished by either redacting those portions of necessary

21 documents which may be problematic due to the PRC's state secrecy or privacy concerns, or by

22 entering into a stipulation as to the facts contained in those documents. ZWSoft admits that even

23 if the percentage of data that may be subject to the PRC privacy and secrecy regulations is low,

24 the risk is exponentially large. This is akin to a trapeze artist flying high without a net. 99.99% of

25 the time, no net is required. But in the 0.01% of the time when the trapeze fails, the net is not

26 there, and the fall causes much more damage than it otherwise might.

27         **b.    The Parties' Resources**

28 Autodesk asserts that production of the source code and other data in the PRC would be

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

unduly expensive and excessively burdensome. Andara Decl. ¶ 15. As discussed above, ZWSoft

is 1,000th the size of Autodesk. Autodesk has brought this claim and can shoulder the expense of

reviewing source code and documents in a location where both Autodesk and its counsel maintain

offices.

### c. Whether the Burden or Expense of the Proposed Discovery Outweighs Its Likely Benefit

The scope of permissible discovery under Rule 26(b)(1) is limited by the "proportionality"

or balancing test set forth in Rule 26(b)(2)(C):

> [T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

This test is particularly relevant when addressing the scope, costs, and burdens of electronic

information sought from the PRC. It demonstrates how modifying the inspection protocol will

allow the parties to attain all of the FRCP Rule 1 objectives, while providing ZWSoft a safety net.

### 2. Federal Rule of Civil Procedure - Rule 34

The amendments to the Federal Rules for Civil Procedure allow a party responding to a

FRCP 34 request to make the information available for inspection rather than produce the

information. Rule 34(b)(2)(E)(i) provides in relevant part that, unless otherwise ordered by the

court, "[a] party must produce documents as they are kept in the usual course of business or must

organize and label them to correspond to the categories of the request." In *Niagra Duplicator Co.*

*v. Shackleford*, the court found that because the burden of inspection and copying is placed on the

moving party under Rule 34, requiring the responding party to bear the expenses of discovery

would be an undue burden. *Niagra Duplicator Co. v. Shackleford*, 160 F.2d 25, 26 (D.C. Cir.

1947). The court held that the responding party could comply with the discovery request by

making the materials available for inspection at his office. *Id.* at 27.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   Consistent with Rule 34, ZWSoft's proposed protocol makes the requested information

2   available for inspection in the PRC, the same place where it is kept in the normal course of

3   business. Andara Decl. Exh. A, section 10. Courts have previously found inspection appropriate

4   at the place where they are created. *Petro v. Lighting Serv.*, 2009 U.S. Dist. LEXIS 55096 (S.D.

5   Ohio June 29, 2009) (*citing* Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d at

6   §221). The court found that the defendants acted reasonably when they made relevant documents

7   available for inspection and copying at their place of business. *Verity v. Wells Fargo Bank, N.A.*

8   (*In re Verity*), 2011 Bankr. LEXIS 2792 (Bankr. D.N.J. July 19, 2011). The court reasoned that

9   the costs should fall upon plaintiffs, who seek to benefit from the discovery, when releasing the

10  original documents into their custody or bearing the cost of travel expenses would be unduly

11  burdensome for the defendants. *Id.* Such is the case here.

12      Use of the proposed Amended Protective Order allows for the parties to access necessary

13  information without excessive unnecessary expenditures and without risk of violating PRC law.

14          **3.    The Amended Protective Order Complies with the FRCP**

15      ZWSoft's proposed protective order provides specific timelines for compliance consistent

16  with the FRCP as set forth:

17  10.2    The protocol only relates to data kept in the regular course of business in the PRC.

18  10.3    The data will be collected, processed, and reviewed in the PRC.

19  10.4    The data will be made available for inspection in the PRC, under the same conditions
        previously agreed in the Protective Order for Source Code review.

20  10.7    The Producing Party will have thirty (30) days from the Receiving Party's
        identification of data necessary for export to advise its employees of potential
21      disclosure of information implicating PRC privacy laws.

22  10.8    The Producing Party will have sixty (60) days from the Receiving Party's
        identification of data necessary for export to have any information that local counsel
        identifies as sensitive information to obtain clearance by the PRC authority for export.
23

    10.9    If such clearance is not received by the PRC within the sixty (60) day time frame
24      referenced, the parties will meet and confer in good faith to determine if the
        potentially sensitive aspect of the information may be redacted to exclude any
25      potential state secret. If redaction is not possible, the parties will meet and confer in
        good faith to determine if a stipulation can be reached as to the substance of the
26      information, relevant to the pending action, to obviate the need to export the data.

27  ZWSoft understands Autodesk's concern as to time. The timelines of 10.7, 10.8, and 10.9 begin

28  concurrently, and therefore the longest time until resolution is only sixty (60) days. The final

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   aspect of the proposed protocol requires minimization of exportation of the data, subject to the

2   materials being proportional to the needs of the case. This takes into considering the amount in

3   controversy, the importance of the issues at stake in the action, and the importance of the

4   discovery in resolving the issues. The proposal deals with data that may be subject to PRC state

5   secrecy and privacy laws by providing a mechanism to produce the substantive equivalent in the

6   form of redaction or a stipulation. In short, this protocol does not place an unsustainable burden

7   on Autodesk.

8   **V.**      **CONCLUSION**

9         Requiring the parties to proceed under the Hague Convention strikes the appropriate

10   balance between principles of comity and the interests of the parties. Use of these procedures will

11   reduce ZWSofts' risks of violating PRC law, minimize excessive and unnecessary costs, and still

12   allow Autodesk to obtain needed discovery. Accordingly, this Court should direct the parties to

13   use the procedures specified in the Hague Convention.

14         However, if the Court does not direct the parties comply with the Hague Convention, it

15   should minimize the scope of data brought out of the PRC to only that which is necessary and

16   relevant. This can be accomplished by implementing the protocol set forth in the proposed

17   Amended Protective Order.

18         ZWSoft requests the Court order that the source codes of ZWCAD+ 2012 and ZWCAD+

19   2014, including the build and mastering scripts, third party binary components and libraries,

20   already deposited with Alvarez & Marsal in Beijing be made available for inspection for the

21   purposes of this litigation, subject to the parties' legal objections. Further, the Court may order

22   that data sought from ZWSoft be made available for inspection in the PRC as allowed under

23   FRCP Rule 34. When data is identified as necessary for a claim or defense in the United States

24   litigation, the parties will obtain approval from the PRC prior to exporting it in the time specified.

25   In this manner, the needs of the parties as well as the sovereignty rights of the United States and

26   the PRC are respected while achieving the objective of a just, speedy, and inexpensive

27   proceeding.

28   / / /

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

2    Dated:  December 19, 2014                    ROPERS, MAJESKI, KOHN & BENTLEY

3

4                                                By:_____
                                                    LAEL D. ANDARA
5                                                   BROCK R. LYLE
                                                    MARIE E SOBIESKI
6                                                   Attorneys for Defendant
                                                    ZWCAD SOFTWARE CO., LTD. and
7                                                   ZWCAD DESIGN CO., LTD.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# EXHIBIT A

1   LAEL D. ANDARA (SBN 217909)
    BROCK R. LYLE (SBN 242690)
2   MARIE E SOBIESKI (SBN 278008)
    ROPERS, MAJESKI, KOHN & BENTLEY
3   1001 Marshall Street, Suite 500
    Redwood City, CA 94063-2052
4   Telephone:    (650) 364-8200
    Facsimile:    (650) 780-1701
5   Email:        lael.andara@rmkb.com
                  brock.lyle@rmkb.com
6                 marie.sobieski@rmkb.com

7   Attorneys for Defendants
    ZWCAD SOFTWARE CO., LTD and
8   ZWCAD DESIGN CO., LTD

9                        UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11

12  AUTODESK, INC.,                          CASE NO. 3:14-cv-01409-EJD

13              Plaintiff,                    **[PROPOSED] MODIFICATION TO
                                             PROTECTIVE ORDER FOR LITIGATION
14  v.                                       INVOLVING HIGHLY SENSITIVE
                                             CONFIDENTIAL INFORMATION
15                                           AND/OR TRADE SECRETS**
    ZWCAD SOFTWARE CO. LTD.,
16  ZWCAD DESIGN CO., LTD., and
    GLOBAL FORCE DIRECT, LLC. (doing
17  business as ZWCADUSA),
                                             Judge: Honorable Edward J. Davila
18              Defendants.

19

20                          **PROTECTIVE ORDER**

21          Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the undersigned parties

22  have stipulated and agreed to the terms and entry of, and the Court hereby orders the parties to

23  abide by, this Protective Order. Information subject to this Protective Order may be used only for

24  the purposes of this litigation.

25  **1.      PURPOSE**

26          Disclosure and discovery activity in this action are likely to involve production of

27  confidential, proprietary, or private information for which special protection from public

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 14.3, below, that **this Stipulated Protective Order does not entitle them to file confidential information under seal**; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the Court to file material under seal.

**2.    DEFINITIONS**

2.1    **Challenging Party:** A Party or Non-Party that challenges the designation of information or items under this Order.

2.2    **"CONFIDENTIAL" Information or Items**: Information, documents, or portions of documents (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection because they contain sensitive personal information, trade secrets, or research, development, or commercial information, as defined under Federal Rule of Civil Procedure 26(c). Depending on the degree of protection warranted, "CONFIDENTIAL— ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—SOURCE CODE."

2.3    **Counsel** (without qualifier): Outside Counsel of Record and In-House Counsel (as well as their support staff, including paralegals, paralegal clerks, legal interns, and legal assistants).

2.4    **Designated In-House Counsel**: In-House Counsel who seek access to "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information in this matter.

2.5    **Designating Party**: A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE".

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**2.6**     **Disclosure or Discovery Material**: All items or information, regardless of the medium or manner in which they are generated, stored, or maintained (including but not limited to testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

**2.7**     **Document:** "Document" and "documents" as used herein have the broadest possible meaning under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001, and include the broadest construction under those Rules of "electronically stored information," "writings," "recordings," or "photographs."

**2.8**     **Expert**: A person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor, and (4) has no direct or monetary interest in the outcome of the litigation.

**2.9**     **"CONFIDENTIAL – ATTORNEYS' EYES ONLY"** **Information or Items**: Extremely sensitive "Confidential Information or Items," representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means. By definition, data designated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE," will be encrypted by the Receiving Party and the Receiving Party shall provide the Producing Party a list of individuals who have had access to the data as part of this litigation. If additional individuals are given access to such data, the Receiving Party shall provide the Producing Party with a list of such individuals within ten (10) days of those individuals' access to the data.

**2.10**     **"HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items**: Extremely sensitive "Confidential Information or Items" representing computer code and/or

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.  By definition, data designated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE," will be encrypted by the Receiving Party and the Receiving Party shall provide the Producing Party a list of individuals who have had access to the data as part of this litigation. If additional individuals are given access to such data, the Receiving Party shall provide the Producing Party with a list of such individuals within ten (10) days of those individuals' access to the data.  Any SOURCE CODE produced in this litigation will be treated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY," until such time as designated otherwise by the Producing Party.

2.11    **In-House Counsel:** Attorneys who are employees of a party to this action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.12    **Non-Party**: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.13    **Outside Counsel of Record**: Attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and/or have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.14    **Party**: Any party to this action, including all of its officers, directors, employees, consultants, and retained experts. Except where otherwise specified, the term "Party" does NOT include Outside Counsel of Record or their support staffs.

2.15    **Producing Party**: A Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.16    **Professional Vendors**: Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1      **2.17**    **Protected Material**: Any Disclosure or Discovery Material that is designated as

2  "CONFIDENTIAL," "CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY

3  CONFIDENTIAL–SOURCE CODE."

4      **2.18**    **Receiving Party**: A Party that receives Disclosure or Discovery Material from a

5  Producing Party.

6  **3.**    **SCOPE**

7      The protections conferred by this Order cover not only Protected Material (as defined

8  above), but also (1) any information copied or extracted from Protected Material; (2) all copies,

9  excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations,

10  or presentations by Parties or their Counsel that might reveal Protected Material. The protections

11  conferred by this Stipulation and Order do not cover the following information: (a) any

12  information that is in the public domain at the time of disclosure to a Receiving Party or becomes

13  part of the public domain after its disclosure to a Receiving Party as a result of publication not

14  involving a violation of this Order, including becoming part of the public record when unsealed

15  or filed on the public docket by the Court, or through trial or otherwise; and (b) any information

16  known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the

17  disclosure from a source who obtained the information lawfully and under no obligation of

18  confidentiality to the Designating Party. In the event of a dispute as to the "public" status of

19  information, the burden shall be on the Party challenging the designation to establish that said

20  information is in the public domain and/or was known to the Receiving Party prior to disclosure

21  by the Designating Party. Any use of Protected Material at trial shall be governed by a separate

22  agreement or order.

23  **4.**    **DURATION**

24      Even after final disposition of this litigation, the confidentiality obligations imposed by

25  this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court

26  order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all

27  claims and defenses in this action, with or without prejudice; and (2) final judgment herein after

28  the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   including the time limits for filing any motions or applications for extension of time pursuant to

2   applicable law.

3   **5.      DESIGNATING PROTECTED MATERIAL**

4   **5.1      Exercise of Restraint and Care in Designating Material for Protection**. Each

5   Party or Non-Party that designates information or items for protection under this Order must take

6   care to limit any such designation to specific material that qualifies under the appropriate

7   standards.   To the extent it is practical to do so, the Designating Party must designate for

8   protection only those parts of material, documents, items, or oral or written communications that

9   qualify – so that other portions of the material, documents, items, or communications for which

10  protection is not warranted are not swept unjustifiably within the ambit of this Order. By

11  Designating a document, information, or item for protection as "CONFIDENTIAL," the

12  Designating Party avers that it can and would make a showing to the Court sufficient to justify

13  entry of a protective order covering that document or portion thereof under Rule 26(c) of the

14  Federal Rules of Civil Procedure.

15  (a) Mass, indiscriminate, or routinized designations are prohibited. Designations that are

16  shown to be clearly unjustified or that have been made for an improper purpose (e.g., to

17  unnecessarily encumber or retard the case development process or to impose unnecessary

18  expenses and burdens on other parties) expose the Designating Party to sanctions.

19  (b) If it comes to a Designating Party's attention that information or items that it

20  designated for protection do not qualify for protection at all or do not qualify for the level of

21  protection initially asserted, that Designating Party must promptly notify all other parties that it is

22  withdrawing the mistaken designation.

23  **5.2      Manner and Timing of Designations**. Except as otherwise provided in this Order

24  (see e.g., section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery

25  Material that qualifies for protection under this Order must be clearly so designated before the

26  material is disclosed or produced.

27  Designation in conformity with this Order requires:

28  (a)      ***For information in documentary form*** (e.g., paper or electronic

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE CODE" to each page that contains protected material, whenever possible prior to production. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted. If designation is not possible prior to the production, the Producing Party shall make the designation within twenty (20) days after disclosure. All documents produced with a Bates label shall be treated as at least "CONFIDENTIAL" for the first fifteen (15) days after production by a Party.

(b)     A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the materials made available for inspection shall be deemed "**CONFIDENTIAL—ATTORNEYS' EYES ONLY**." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE CODE") to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(c)     *For testimony given in deposition or in other pretrial or trial proceedings*, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating

Party **may invoke on the record** (before the deposition, hearing, or other proceeding is concluded) a right to have **up to** thirty (30) days <u>after receipt of the transcript</u> to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the thirty (30) days shall be covered by the provisions of this Order. Alternatively, a Designating Party may specify, at the deposition or up to thirty (30) days after receipt of the transcript afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL,"  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

(d)      Parties shall give the other parties notice if they reasonably expect a deposition, hearing, or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. **The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "CONFIDENTIAL–ATTORNEYS' EYES ONLY."**

(e)      Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared after the 30-day period for designation has been invoked shall be treated during that period as if it had been designated " CONFIDENTIAL–ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(f)      ***For information produced in some form other than documentary and for any other tangible items***, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," " CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

CODE."   If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

Source Code will be presumed "CONFIDENTIAL–ATTORNEYS' EYES ONLY" until produced with a different designation and encrypted in digital form as referenced by definition. To the extent the Requesting Party requires production of Source Code, upon or after Inspection, any production will be subject to the Requesting Party proving a good faith basis for the print out of any portion of the Source Code. Should Producing Party object to the production, prior to production the Producing Party shall have fourteen (14) days to request judicial intervention of the objection as set forth below in section 6.3, or withdraw its objection and produce the requested information.

**5.3     Inadvertent Failures to Designate**. Inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. To allow the parties to correct inadvertent failures to designate, all documents produced with a Bates number shall be treated as at least "CONFIDENTIAL" for the first fifteen (15) days after production by a Party. In the event a Designating Party inadvertently fails to designate qualified material as "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE CODE" in accordance with the forgoing procedures, the Designating Party shall provide supplemental written notice designating the material under the appropriate confidentiality designation as soon as practicable.   Upon receipt of such supplemental written notice, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

**6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS**

**6.1     Timing of Challenges**. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  challenge a confidentiality designation by electing not to mount a challenge promptly after the

2  original designation is disclosed.

3      **6.2    Meet and Confer**. The Challenging Party shall initiate the dispute resolution

4  process consistent with Civil L.R. 37-1, by providing written notice of each designation it is

5  challenging and describing the basis for each challenge. To avoid ambiguity as to whether a

6  challenge has been made, the written notice must recite that the challenge to confidentiality is

7  being made in accordance with this specific paragraph of this Order. The parties shall attempt to

8  resolve each challenge in good faith and must begin the process by conferring directly (in voice to

9  voice dialogue; other forms of communication are not sufficient) within fourteen (14) days of the

10  date of service of notice. In conferring, the Challenging Party must explain the basis for its belief

11  that the confidentiality designation was not proper and must give the Designating Party an

12  opportunity to review the designated material, to reconsider the circumstances, and, if no change

13  in designation is offered, to explain the basis for the chosen designation. A Challenging Party

14  may proceed to the next stage of the challenge process only if it has engaged in this meet and

15  confer process first or establishes that the Designating Party is unwilling to participate in the meet

16  and confer process in a timely manner.

17      **6.3    Judicial Intervention**. The Challenging Party may file a motion challenging a

18  confidentiality designation at any time if there is good cause for doing so, including a challenge to

19  the designation of a deposition transcript or any portion thereof. Any motion brought pursuant to

20  this provision must be accompanied by a competent declaration affirming that the movant has

21  complied with the meet and confer requirements imposed by the preceding paragraph. The burden

22  of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous

23  challenges and those made for an improper purpose (e.g., to harass or impose unnecessary

24  expenses and burdens on other parties) may expose the Challenging Party to sanctions. All parties

25  shall continue to afford the material in question the level of protection to which it is entitled under

26  the    Producing    Party's    designation    until    the    Court    rules    on    the    challenge.

27  ///

28  ///

7. **ACCESS TO AND USE OF PROTECTED MATERIAL**

**7.1** **Basic Principles**. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 16 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. **Data designated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY" and/or "HIGHLY CONFIDENTIAL–SOURCE CODE,"** will be encrypted by the Receiving Party and the Receiving Party shall provide the Producing Party a list of individuals who have had access to the data as part of this litigation. If additional individuals are given access to such data, the Receiving Party shall provide the Producing Party with a list of such individuals within ten (10) days of their access to the data.  Any SOURCE CODE produced in this litigation will be treated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY," until such time as designated otherwise by the Producing Party.

**7.2** **Disclosure of "CONFIDENTIAL" Information or Items**. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) The Receiving Party's Outside Counsel of Record in this action, including support staff, paralegals, paralegal clerks, legal interns, and legal assistants, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) The officers, directors, and employees (including In-House Counsel and support staff, paralegals, paralegal clerks, legal interns, and legal assistants) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

(c)     Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     The Court and its personnel;

(e)     Court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)     During their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

During their depositions, witnesses to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

**(g)**     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

**7.3     Disclosure of "CONFIDENTIAL–ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL–SOURCE CODE" Information or Items**. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE" only to:

(a)     The Receiving Party's Outside Counsel of Record in this action, including support staff, paralegals, paralegal clerks, legal interns, and legal assistants, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

(b)     For "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information, but **not** "HIGHLY CONFIDENITIAL—SOURCE CODE": Designated In-House Counsel of the Receiving Party (1) who have no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed;

(c)     Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed;

(d)     The Court and its personnel;

(e)     Court reporters and their staff, professional jury or trial consultants,  and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(f)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

**7.4     Procedures for Approving or Objecting to Disclosure of "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE" Information or Items to Counsel or Experts**.

(a)     Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Counsel any information or item that has been designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated In-House Counsel and the city and state of his or her residence, and (2) describes the Designated In-House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if In-House Counsel is involved, or may become involved, in any competitive decision-making.

///

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

(b)      Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY" **or** "HIGHLY CONFIDENTIAL–SOURCE CODE" pursuant to paragraph 7.3(c) first must make a written request to the Designating Party that (1) identifies the general categories of "CONFIDENTIAL–ATTORNEYS' EYES ONLY" **or** "HIGHLY CONFIDENTIAL–SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years[1], and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five (5) years[2].A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Counsel or Expert unless, within fourteen (14) days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based. A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven (7) days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to Designated In-House Counsel or the Expert may file a motion as provided in Civil Local Rule

---

[1] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert shall provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

[2] It may be appropriate in certain circumstances to restrict the Expert from undertaking certain limited work prior to the termination of the litigation that could foreseeably result in an improper use of the Designating Party's "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information.

7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the Court to do so. Any such request must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to Designated In-House Counsel or the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such request must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure. In any such proceeding, the Party opposing disclosure to Counsel or the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated In-House Counsel or Expert.

Failure to object to a proposed outside Expert or consultant shall not preclude any party from later objecting to continued access by that outside Expert or consultant where facts suggest a basis for objecting could not have been discovered by the objecting party within the time for making timely objection. If a later objection is made, no further Protected Matter shall be disclosed to the designated outside Expert or consultant until the matter is resolved by the parties through the meet and confer process, by the Court, or the objecting Party withdraws its objection.

**8.    FOREIGN COLLECTION**

**8.1**    A Federal District Court having personal jurisdiction over a foreign national party has the discretion to allow the employment of the Federal Rules of Civil Procedure or the Hague Convention in conducting pre-trial discovery. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 544 (1987).  Both the discovery rules set forth in the Federal Rules of Civil Procedure and the Hague Convention are the law of the United States.  The Convention draws no distinction between evidence obtained from third parties and that obtained from the litigants themselves, nor does it purport to draw any sharp line between evidence that is "abroad" and evidence that is within the control of a party subject to the jurisdiction of the requesting court. This Order assumes employment of the Federal Rule of Civil

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Procedure as modified to advance the goals of FRCP 1 and recognize the interests of Foreign

2    countries to protect their information.

3        **8.2**    *Aerospatiale* instructs the American courts to "exercise special vigilance to protect

4    foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place

5    them in a disadvantageous position." *Id*. at 546. "Judicial supervision of discovery should always

6    seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests.

7    When it is necessary to seek evidence abroad, however, the district court must supervise pretrial

8    proceedings particularly closely to prevent discovery abuses." *Id.*

9        **8.3**    There is pending an action with these same parties on similar or the same legal

10   claims now pending in the District Court of the Hague. (Case No. C-09-460412)  The issue of the

11   accused Source Code being exported outside of China was previously considered in the

12   Netherlands litigation. On May 12, 2014, the District Court of the Hague directed the Defendants

13   in this action to submit the Source code of ZWCAD+ 2012 and ZWCAD+ 2014, including the

14   build and master scripts, third party binary components and libraries. The Court appointed the

15   firm Autodesk had proposed, who has provided legal services to Autodesk in that region:

16       *Alvarez & Marsal Consulting (Shanghai) Limited, Beijing Branch Unit*

17       *1118-21, 11F China World Office I*

18       *No. 1 Jianguomenwai Ave., Chaoyang District*

19       *Beojing 100004, P.R. China*

20   The source code was deposited with Alvarez & Marshal by Defendants in May of 2014, and is

21   still retained there. Pursuant to this order, to advance the interests of judicial economy by

22   avoiding wasteful duplication of discovery specific to the Source Code that is at issue in both

23   actions, this Protective Order directs that the Source Code be maintained for Inspection in this

24   action as well. Access to the Source Code in the People's Republic of China ("PRC") is subject to

25   the Federal Rules of Civil Procedure.

26   ///

27   ///

28   ///

9. **SOURCE CODE**

**9.1** To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL-SOURCE CODE," if it comprises or includes confidential, proprietary or trade secret source code.

**9.2** Protected Material designated as "HIGHLY CONFIDENTIAL–SOURCE CODE" shall be subject to all of the protections afforded to "CONFIDENTIAL–ATTORNEYS' EYES ONLY" information, and may be disclosed only to the individuals to whom "CONFIDENTIAL–ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 9.3 and 9.4.

**9.3** Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon location. The source code shall be made available for inspection on a secured computer in a secured room **without Internet access or network access to other computers**, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code. The Producing Party may not monitor audio or the display screens being reviewed as that may violate the work product privilege.

**9.4** The Receiving Party may request paper copies of limited portions of source code that are ***reasonably necessary*** for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in section 9.3 in the first instance. The printed Source Code shall be labeled with "[PRODUCING PARTY'S NAME] HIGHLY CONFIDENTIAL—SOURCE CODE—SUBJECT TO PROTECTIVE ORDER," with relevant Bates Numbering. Outside Counsel of Record for the Producing Party will keep the originals of

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

these printed documents. The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedures outlined in Section 6 herein, and whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution. Within three (3) business days of the printing of any Source Code, the Producing Party shall either (i) provide copies of the printed Source Code for Outside Counsel of Record for the Receiving Party or (ii) object that the printed portions are excessive or not done for a permitted purpose. Printed portions which exceed ten (10) pages from any source code file, or which exceed five hundred (500) total pages in this action shall be presumed to be excessive and not done for a permitted purposed, although the parties will be reasonable in accommodating requests to print portions exceeding these limits upon a showing of good cause by the Receiving Party.

**9.5**    If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Producing Party shall be entitled to seek the Court's resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose. While any objections to the printed Source Code are pending, the Producing Party shall make available the printed Source Code for inspection in the secure room where its Source Code Computer is located. If the Court overrules the Producing Party's objections to the printed Source Code, the Producing Party shall provide copies of the printed Source Code for Outside Counsel of Record for the Receiving Party on watermarked paper within twenty-four (24) hours of the Court's ruling.

**9.6**    The Receiving Party's Outside Counsel of Record may make no more than five (5) additional paper copies of any portions of the Source Code received from a Producing Party, not including copies attached to court filings or used at depositions. In addition to other reasonable steps to maintain the security and confidentiality of Source Code, printed copies of Source Code maintained by the Receiving Party must be kept in a locked storage container when not being actively reviewed. No more than a total of ten (10) individuals identified by the Receiving Party, including all individuals who have access to the secure room as limited herein, shall have access

to the printed portions of Source Code (except insofar as such code appears in any filing with the Court or expert report in this case). All paper copies of source code shall be securely destroyed if they are no longer necessary in the litigation (e.g., extra copies at the conclusion of a deposition). Copies of Source Code that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

9.7    The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party also shall keep a paper log indicating the names of any individuals inspecting paper copies of the Source Code and the dates and times of inspection, and the names of any individuals to whom paper copies of portions of Source Code are provided. The Receiving Party shall maintain all paper copies of any printed portions of the Source Code in a secured, locked area. The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other individual.

## 10.    DATA FOR EXPORT INTO THE UNITED STATES

10.1    To the extent production of information from the PRC becomes necessary in this case, a Producing Party may designate said information as "CONFIDENTIAL–ATTORNEYS' EYES ONLY," if it comprises or includes confidential, proprietary or trade secret information.

10.2    To the extent information is sought to be exported from outside of the PRC after Inspection by the Receiving Party, the following protocol will be followed to minimize the cost of litigation under FRCP 1. This procedure will also serve to recognize the sovereignty and national

interest of the PRC relating to the privacy of its citizens and state secrecy laws, and maintain the ability of the Parties to identify information by inspection as may be needed in this action.

**10.3** Data kept and maintained in the regular course of business by any party to this action in the PRC will be collected and processed in the PRC. Throughout the process U.S. counsel for the Producing Party will oversee the review of said data to be compliant and responsive under the standard articulated under FRCP 26(b). Having the information reviewed in its native language will minimize cost and risk of export of irrelevant data that could potentially violate PRC privacy or state secrecy laws.

**10.4** After initial review, the responsive information shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the responsive information onto any recordable media or recordable device, pursuant to FRCP 34(b)(2)(B).

**10.5** The Producing Party may visually monitor the activities of the Receiving Party's representatives during any review, but only to ensure that there is no unauthorized recording, copying, or transmission of the information being reviewed. The Producing Party may not monitor audio or the display screens being reviewed to preserve work product privacy.

**10.6** The Receiving Party will limit their request for the production of responsive information from the PRC to only that information which is reasonably necessary for the preparation of court filings, pleadings, expert reports, other papers, or for deposition or trial.

**10.7** The Producing Party will have thirty (30) days from the Receiving Party's identification of data necessary for export to advise its employees of potential disclosure of information implicating PRC privacy laws. Under Article 4 of the PRC Labor Contract Law of the People's Republic of China, employers are required to announce to, or otherwise inform their employees of, the rules and important events that are directly related to the interests of the employees. Therefore, the Producing Party will be required to advise all employees as to any email communications or other forms of information that implicate privacy issues that will be provided in the U.S. litigation.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**10.8**    The Producing Party will have sixty (60) days from the Receiving Party's identification of data necessary for export to have any information that local counsel identifies as sensitive information that requires clearance by the PRC authority for export.    According to Article 5, the Administrations for the Protection of State Secrets are the law enforcement government agencies that are charged of safeguarding state secrets. The National Administration for the Protection of State Secrets (NAPSS) is a bureau under the State Council (the central Chinese government), supervising and operating through local Administrations for the Protection of State Secrets (APSS) at the provincial level, the prefecture level, and the county level.

Under Article 2 of the state secrets law, a "state secret" is defined a matters which has a bearing on national security and interests, classified through legal procedures, and to which access is granted to a limited number of persons for a certain period of time. The export of data before it has been reviewed and cleared of sensitive information can violate the state secrets law and subject the company and its attorneys to severe administrative and/or criminal sanctions. Article 34 of the state secrets law articulates a mandatory security clearance and eligibility review if an enterprise or public service unit intends to conduct business involving state secrets, including but not limited to the production, reproduction, maintenance, and destruction of storage media of state secrets, the integration of computer information systems involving state secrets, and the scientific research and production of weapons and equipment.

**10.9**    If such clearance is not received by the PRC within the time frame referenced, the parties will meet and confer in good faith to determine if the potentially sensitive aspect of the information may be redacted to exclude any potential state secret. If redaction is not possible, the parties will meet and confer in good faith to determine if a stipulation can be reached as to the substance of the information, relevant to the pending action, to obviate the need to export the data. Courts are less inclined to ignore a foreign state's concerns if the outcome of litigation "does not stand or fall on the present discovery order," or if the evidence sought is cumulative. *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1475 (9th Cir. 1992); *In re Rubber Chems. Antitrust Litig.,* 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007).

**10.10** If a dispute still remains as to the export of responsive information outside of the PRC, the parties will submit a joint letter to Magistrate Judge Grewal within five (5) days of a meet and confer, not to exceed five (5) pages: that certifies that counsel for both parties have met and conferred in person; that describes in general the nature of the information sought; states that counsel for the Producing Party certifies that the information qualifies for protection under the PRC law and reference the subject law; and that identifies why a stipulation as to the underlying facts is insufficient.

**11.     PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE" that Party must:

(i)      promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(ii)     promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Order; and

(iii)    cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

The purpose of imposing these duties is to alert any interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its

confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

**12.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION**

**12.1**    The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE". Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

**12.2**    In the event that a Party is required, by a valid discovery request, subpoena, or order, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(i)    promptly, and in no event more than three (3) days after receipt of the request, subpoena, or order notify in writing the Designating Party. Such notification shall include a copy of the request, subpoena or order;

(ii)    promptly, and in no event more than three (3) days after receipt of the request, subpoena, or order notify in writing the party who caused the request, subpoena, or order to issue in the other litigation that some or all of the material covered by the request, subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Order; and

(iii)    make the information requested available for inspection by the Non-Party;

(iv)    If the Non-Party fails to object or seek a protective order from this Court within fourteen (14) days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court. The purpose of this provision is to alert the interested parties to the

existence of confidentiality rights of a Non-Party an opportunity to protect its confidentiality interests in this court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

**13.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve and return all unauthorized copies of the Protected Material and delete or otherwise destroy all copies, (c) inform the person or persons to whom unauthorized disclosures were made of all of the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

**14.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

**14.1** Production of information that is privileged or otherwise immune from discovery shall be entitled to the protections of Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502. If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return or destroy the specified information and any copies it has and may not sequester, use, or disclose the information until the claim is resolved. This includes a restriction against presenting the information to the court for a determination of the claim. The party asserting the privilege is not required to make a showing prior to the return of the designated material.

**14.2   The Receiving Party will return such inadvertently-produced item or items of information and destroy copies thereof within ten (10) days** of receiving a written request for the return of such item or items of information. The party having returned such inadvertently-produced item or items of information may thereafter, without asserting waiver because of the

RC1/7715858.3/LB4

- 24 -

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Redwood City*

inadvertent production, seek production of any such documents in accordance with the Federal Rules of Civil Procedure.

**15.     MISCELLANEOUS**

   **15.1     Right to Further Relief**. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

   **15.2     Right to Assert Other Objections**. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Order.

   **15.3     Privilege Logs**. Counsel for a party may withhold documents from production as exempt from discovery because such documents are protected from disclosure under the attorney-client privilege or work product doctrine of FRCP 26(b), or any other applicable privilege or immunity. For documents so withheld, the party withholding the documents shall prepare a log consistent with FRCP 26(b)(5) identifying each document withheld, the protection claimed, and the basis for the protection. Counsel for either party need not list in any such log any privileged documents or communications between their firm and their client created after the filing of this action.

   **15.4     Filing Protected Material**. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil L.R. 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil L.R. 79-5, a sealing order will issue only upon a request showing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil L.R. 79-5(d) is denied by the Court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil L.R. 79-5(e) unless otherwise instructed by the Court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**15.5** This Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

**15.6** The party or parties receiving Protected Material shall not under any circumstances sell, offer for sale, advertise, or publicize Protected Material or any information contained therein.

**16.** **FINAL DISPOSITION**

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Outside Counsel of Record are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, but not an opposing or third party's production, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

1    Dated:  December 19, 2014                    MORRISON & FOERSTER

2

3                                                  By:_____
                                                       MICHAEL A. JACOBS
4                                                      RICHARD S.J. HUNG
                                                       Attorneys for Plaintiff
5                                                      AUTODESK, INC.

6
     Dated:  December 19, 2014                    ROPERS, MAJESKI, KOHN & BENTLEY
7

8

9                                                  By: _____
                                                       LAEL D. ANDARA
10                                                     BROCK R. LYLE
                                                       MARIE E SOBIESKI
11                                                     Attorneys for Defendants
                                                       ZWCAD SOFTWARE CO., LTD. and
12                                                     ZWCAD DESIGN CO., LTD.

13   Dated:  December 19, 2014                    NASSIRI & JUNG LLP

14

15                                                 By: _____
                                                       CHARLES H. JUNG
16                                                     KENNETH M. WALCZAK
                                                       Attorneys for Defendants
17                                                     GLOBAL FORCE DIRECT, LLC

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## *ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND*

I, _____ [print or type full name], of

_____ [print or type full address], declare ***under penalty of perjury*** that I

have read in its entirety and understand the Stipulated Protective Order that was issued by the

United States District Court for the Northern District of California on December __, 2014 in the

case of ***Autodesk, Inc. v. ZwCAD Software Co., Ltd., et al.,*** Case No. 3:14-cv-01409-EDL.

I agree to comply with and to be bound by all the terms of the Stipulated

Protective Order and I understand and acknowledge that failure to so comply could expose me

to sanctions and punishment in the nature of contempt.

I solemnly promise that I will not disclose in any manner any information or

item that is subject to the Stipulated Protective Order to any person or entity except in strict

compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for

the Northern District of California for the purpose of enforcing the terms of the Stipulated

Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of

_____ [print or type full address and telephone

number] as my California agent for service of process in connection with this action or any

proceedings related to enforcement of the Stipulated Protective Order.


Date: _____

City and State where sworn and signed: _____


Printed name: _____

[*printed name*]


Signature: _____

[*signature*]

1     **IT IS SO ORDERED**

2     Dated: December _____, 2014                          By:_____

3                                                                    HONORABLE EDWARD J. DAVILA
                                                                      UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1  LAEL D. ANDARA (SBN 217909)
   BROCK R. LYLE (SBN 242690)
2  MARIE E SOBIESKI (SBN 278008)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  1001 Marshall Street, Suite 500
   Redwood City, CA 94063-2052
4  Telephone:   (650) 364-8200
   Facsimile:    (650) 780-1701
5  Email:        lael.andara@rmkb.com
                 brock.lyle@rmkb.com
6                marie.sobieski@rmkb.com

7  Attorneys for Defendants
   ZWCAD SOFTWARE CO., LTD and
8  ZWCAD DESIGN CO., LTD

9

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12  AUTODESK, INC.,                        CASE NO. 3:14-cv-01409-EJD
13              Plaintiff,                 **[PROPOSED] MODIFICATION TO
                                           PROTECTIVE ORDER FOR LITIGATION
14  v.                                     INVOLVING HIGHLY SENSITIVE
                                           CONFIDENTIAL INFORMATION
15  ZWCAD SOFTWARE CO. LTD.,               AND/OR TRADE SECRETS**
    ZWCAD DESIGN CO., LTD., and
16  GLOBAL FORCE DIRECT, LLC. (doing
    business as ZWCADUSA),
17                                         Judge: Honorable Edward J. Davila
18              Defendants.
19

20                         __PROTECTIVE ORDER__

21        Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the undersigned parties

22  have stipulated and agreed to the terms and entry of, and the Court hereby orders the parties to

23  abide by, this Protective Order. Information subject to this Protective Order may be used only for

24  the purposes of this litigation.

25  1.    **PURPOSE**

26        Disclosure and discovery activity in this action are likely to involve production of

27  confidential, proprietary, or private information for which special protection from public

28

RC1/7715858.3/LB4

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   disclosure and from use for any purpose other than prosecuting this litigation may be warranted.

2   Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated

3   Protective Order. The parties acknowledge that this Order does not confer blanket protections on

4   all disclosures or responses to discovery and that the protection it affords from public disclosure

5   and use extends only to the limited information or items that are entitled to confidential treatment

6   under the applicable legal principles. The parties further acknowledge, as set forth in Section

7   14.3, below, that **this Stipulated Protective Order does not entitle them to file confidential**

8   **information under seal**; Civil Local Rule 79-5 sets forth the procedures that must be followed

9   and the standards that will be applied when a party seeks permission from the Court to file

10  material under seal.

11  **2.    DEFINITIONS**

12      **2.1    Challenging Party:** A Party or Non-Party that challenges the designation of

13  information or items under this Order.

14      **2.2    "CONFIDENTIAL" Information or Items**: Information, documents, or portions

15  of documents (regardless of how it is generated, stored, or maintained) or tangible things that

16  qualify for protection because they contain sensitive personal information, trade secrets, or

17  research, development, or commercial information, as defined under Federal Rule of Civil

18  Procedure 26(c). Depending on the degree of protection warranted, "CONFIDENTIAL—

19  ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—SOURCE CODE."

20      **2.3    Counsel** (without qualifier): Outside Counsel of Record and In-House Counsel (as

21  well as their support staff, including paralegals, paralegal clerks, legal interns, and legal

22  assistants).

23      **2.4    Designated In-House Counsel**: In-House Counsel who seek access to

24  "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information in this matter.

25      **2.5    Designating Party**: A Party or Non-Party that designates information or items that

26  it produces in disclosures or in responses to discovery as "CONFIDENTIAL,"

27  "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE

28  CODE".

RC1/7715858.3/LB4                              - 2 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**2.6** <u>**Disclosure or Discovery Material**</u>: All items or information, regardless of the medium or manner in which they are generated, stored, or maintained (including but not limited to testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

**2.7** <u>**Document:**</u> "Document" and "documents" as used herein have the broadest possible meaning under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001, and include the broadest construction under those Rules of "electronically stored information," "writings," "recordings," or "photographs."

**2.8** <u>**Expert**</u>: A person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor, ==and (4) has no direct or monetary interest in the outcome of the litigation.==

==**2.9**== **"CONFIDENTIAL – ATTORNEYS' EYES ONLY"** **Information or Items**: Extremely sensitive "Confidential Information or Items," <u>representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs</u>, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means. ~~By definition, data designated as~~ ~~"CONFIDENTIAL ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL SOURCE~~ ~~CODE," will be encrypted by the Receiving Party and the Receiving Party shall provide the~~ ~~Producing Party a list of individuals who have had access to the data as part of this litigation. If~~ ~~additional individuals are given access to such data, the Receiving Party shall provide the~~ ~~Producing Party with a list of such individuals within ten (10) days of those individuals' access to~~ ~~the data.~~

**2.10** **"HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items**: Extremely sensitive "Confidential Information or Items" representing computer code and/or

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  associated comments and revision histories, formulas, engineering specifications, or schematics

2  that define or otherwise describe in detail the algorithms or structure of software or hardware

3  designs, disclosure of which to another Party or Non-Party would create a substantial risk of

4  serious harm that could not be avoided by less restrictive means. By definition, data designated

5  as "CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL - SOURCE

6  CODE," will be encrypted by the Receiving Party and the Receiving Party shall provide the

7  Producing Party a list of individuals who have had access to the data as part of this litigation. If

8  additional individuals are given access to such data, the Receiving Party shall provide the

9  Producing Party with a list of such individuals within ten (10) days of those individuals' access to

10  the data. Any SOURCE CODE produced in this litigation will be treated as "CONFIDENTIAL -

11  ATTORNEYS' EYES ONLY," until such time as designated otherwise by the Producing Party.

12  **2.11**  **In-House Counsel:** Attorneys who are employees of a party to this action. In-

13  House Counsel does not include Outside Counsel of Record or any other outside counsel.

14  **2.12**  **Non-Party**: Any natural person, partnership, corporation, association, or other

15  legal entity not named as a Party to this action.

16  **2.13**  **Outside Counsel of Record**: Attorneys who are not employees of a party to this

17  action but are retained to represent or advise a party to this action and/or have appeared in this

18  action on behalf of that party or are affiliated with a law firm which has appeared on behalf of

19  that party.

20  **2.14**  **Party**: Any party to this action, including all of its officers, directors, employees,

21  consultants, and retained experts. Except where otherwise specified, the term "Party" does NOT

22  include Outside Counsel of Record or their support staffs.

23  **2.15**  **Producing Party**: A Party or Non-Party that produces Disclosure or Discovery

24  Material in this action.

25  **2.16**  **Professional Vendors**: Persons or entities that provide litigation support services

26  (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and

27  organizing, storing, or retrieving data in any form or medium) and their employees and

28  subcontractors.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   **2.17**   <u>**Protected Material**</u>: Any Disclosure or Discovery Material that is designated as

2   "CONFIDENTIAL," "CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY

3   CONFIDENTIAL–SOURCE CODE."

4   **2.18**   <u>**Receiving Party**</u>: A Party that receives Disclosure or Discovery Material from a

5   Producing Party.

6   **3.**   **SCOPE**

7   The protections conferred by this Order cover not only Protected Material (as defined

8   above), but also (1) any information copied or extracted from Protected Material; (2) all copies,

9   excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations,

10  or presentations by Parties or their Counsel that might reveal Protected Material. The protections

11  conferred by this Stipulation and Order do not cover the following information: (a) any

12  information that is in the public domain at the time of disclosure to a Receiving Party or becomes

13  part of the public domain after its disclosure to a Receiving Party as a result of publication not

14  involving a violation of this Order, including becoming part of the public record when unsealed

15  or filed on the public docket by the Court, or through trial or otherwise; and (b) any information

16  known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the

17  disclosure from a source who obtained the information lawfully and under no obligation of

18  confidentiality to the Designating Party. In the event of a dispute as to the "public" status of

19  information, the burden shall be on the Designating Party ~~challenging the designation~~ to establish

20  that said information is ~~in the public domain and/or was known to the Receiving Party prior to~~

21  ~~disclosure by the Designating Party~~ entitled to protection. Any use of Protected Material at trial

22  shall be governed by a separate agreement or order.

23  **4.**   **DURATION**

24  Even after final disposition of this litigation, the confidentiality obligations imposed by

25  this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court

26  order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all

27  claims and defenses in this action, with or without prejudice; and (2) final judgment herein after

28  the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action,

1  including the time limits for filing any motions or applications for extension of time pursuant to

2  applicable law.

3  **5.    DESIGNATING PROTECTED MATERIAL**

4        **5.1    Exercise of Restraint and Care in Designating Material for Protection**. Each

5  Party or Non-Party that designates information or items for protection under this Order must take

6  care to limit any such designation to specific material that qualifies under the appropriate

7  standards.   To the extent it is practical to do so, the Designating Party must designate for

8  protection only those parts of material, documents, items, or oral or written communications that

9  qualify – so that other portions of the material, documents, items, or communications for which

10  protection is not warranted are not swept unjustifiably within the ambit of this Order. By

11  Designating a document, information, or item for protection as "CONFIDENTIAL," the

12  Designating Party avers that it can and would make a showing to the Court sufficient to justify

13  entry of a protective order covering that document or portion thereof under Rule 26(c) of the

14  Federal Rules of Civil Procedure.

15        (a) Mass, indiscriminate, or routinized designations are prohibited. Designations that are

16  shown to be clearly unjustified or that have been made for an improper purpose (e.g., to

17  unnecessarily encumber or retard the case development process or to impose unnecessary

18  expenses and burdens on other parties) expose the Designating Party to sanctions.

19        (b) If it comes to a Designating Party's attention that information or items that it

20  designated for protection do not qualify for protection at all or do not qualify for the level of

21  protection initially asserted, that Designating Party must promptly notify all other parties that it is

22  withdrawing the mistaken designation.

23        **5.2    Manner and Timing of Designations.** Except as otherwise provided in this Order

24  (see e.g., section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery

25  Material that qualifies for protection under this Order must be clearly so designated before the

26  material is disclosed or produced.

27        Designation in conformity with this Order requires:

28        (a)    ***For information in documentary form*** (e.g., paper or electronic

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the

2   Producing Party affix the legend "CONFIDENTIAL,"  "CONFIDENTIAL–ATTORNEYS' EYES

3   ONLY," or "HIGHLY CONFIDENTIAL–SOURCE CODE" to each page that contains protected

4   material, whenever possible prior to production. If only a portion or portions of the material on a

5   page qualifies for protection, the Producing Party also must clearly identify the protected

6   portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each

7   portion, the level of protection being asserted. If designation is not possible prior to the

8   production, the Producing Party shall make the designation within twenty (20) days after

9   disclosure. All documents produced with a Bates label shall be treated as at least

10  "CONFIDENTIAL" for the first fifteen (15) days after production by a Party.

11         (b)    A Party or Non-Party that makes original documents or materials available

12  for inspection need not designate them for protection until after the inspecting Party has indicated

13  which material it would like copied and produced. During the inspection and before the

14  designation, all of the materials made available for inspection shall be deemed

15  "**CONFIDENTIAL—ATTORNEYS'  EYES ONLY**." After the inspecting Party has identified

16  the documents it wants copied and produced, the Producing Party must determine which

17  documents, or portions thereof, qualify for protection under this Order. Then, before producing

18  the specified documents, the Producing Party must affix the appropriate legend

19  ("CONFIDENTIAL,"  "CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY

20  CONFIDENTIAL–SOURCE CODE") to each page that contains Protected Material. If only a

21  portion or portions of the material on a page qualifies for protection, the Producing Party also

22  must clearly identify the protected portion(s) (e.g., by making appropriate markings in the

23  margins) and must specify, for each portion, the level of protection being asserted.

24         (c)    ***For testimony given in deposition or in other pretrial or trial proceedings***,

25  that the Designating Party identify on the record, before the close of the deposition, hearing, or

26  other proceeding, all protected testimony and specify the level of protection being asserted. When

27  it is impractical to identify separately each portion of testimony that is entitled to protection and it

28  appears that substantial portions of the testimony may qualify for protection, the Designating

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  Party **may invoke on the record** (before the deposition, hearing, or other proceeding is

2  concluded) a right to have **up to** thirty (30) days <mark>after receipt of the transcript</mark> to identify the

3  specific portions of the testimony as to which protection is sought and to specify the level of

4  protection being asserted. Only those portions of the testimony that are appropriately designated

5  for protection within the thirty (30) days shall be covered by the provisions of this Order.

6  Alternatively, a Designating Party may specify, at the deposition or up to thirty (30) days after

7  receipt of the transcript afterwards if that period is properly invoked, that the entire transcript

8  shall be treated as "CONFIDENTIAL,"  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

9  ONLY."

10           (d)      Parties shall give the other parties notice if they reasonably expect a

11  deposition, hearing, or other proceeding to include Protected Material so that the other parties can

12  ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to

13  Be Bound" (Exhibit A) are present at those proceedings. **The use of a document as an exhibit at**

14  **a deposition shall not in any way affect its designation as "CONFIDENTIAL" or**

15  **"CONFIDENTIAL–ATTORNEYS' EYES ONLY."**

16           (e)      Transcripts containing Protected Material shall have an obvious legend on

17  the title page that the transcript contains Protected Material, and the title page shall be followed

18  by a list of all pages (including line numbers as appropriate) that have been designated as

19  Protected Material and the level of protection being asserted by the Designating Party. The

20  Designating Party shall inform the court reporter of these requirements. Any transcript that is

21  prepared after the 30-day period for designation has been invoked shall be treated during that

22  period as if it had been designated " CONFIDENTIAL–ATTORNEYS' EYES ONLY" in its

23  entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated

24  only as actually designated.

25      (f)      *For information produced in some form other than documentary and for any*

26  *other tangible items*, that the Producing Party affix in a prominent place on the exterior of the

27  container or containers in which the information or item is stored the legend "CONFIDENTIAL,"

28  " CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE

1   CODE."  If only a portion or portions of the information or item warrant protection, the

2   Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the

3   level of protection being asserted.

4   Source Code will be presumed "HIGHLY CONFIDENTIAL–SOURCE CODE"

5   CONFIDENTIAL–ATTORNEYS' EYES ONLY" until produced with a different designation and

6   encrypted in digital form as referenced by definition.  To the extent the Requesting Party requires

7   production of Source Code, upon or after Inspection, any production will be subject to the

8   Requesting Party proving a good faith basis for the print out of any portion of the Source Code.

9   Should Producing Party object to the production, prior to production the Producing Party shall

10  have fourteen (14) days to request judicial intervention of the objection as set forth below in

11  section 6.3, or withdraw its objection and produce the requested information.

12  **5.3    Inadvertent Failures to Designate**. Inadvertent failure to designate qualified

13  information or items does not, standing alone, waive the Designating Party's right to secure

14  protection under this Order for such material. To allow the parties to correct inadvertent failures

15  to designate, all documents produced with a Bates number shall be treated as at least

16  "CONFIDENTIAL" for the first fifteen (15) days after production by a Party. In the event a

17  Designating Party inadvertently fails to designate qualified material as "CONFIDENTIAL,"

18  "CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE

19  CODE" in accordance with the forgoing procedures, the Designating Party shall provide

20  supplemental written notice designating the material under the appropriate confidentiality

21  designation as soon as practicable.  Upon receipt of such supplemental written notice, the

22  Receiving Party must make reasonable efforts to assure that the material is treated in accordance

23  with the provisions of this Order.

24  **6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS**

25  **6.1    Timing of Challenges**. Any Party or Non-Party may challenge a designation of

26  confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality

27  designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic

28  burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  challenge a confidentiality designation by electing not to mount a challenge promptly after the

2  original designation is disclosed.

3      **6.2    Meet and Confer**. The Challenging Party shall initiate the dispute resolution

4  process consistent with Civil L.R. 37-1, by providing written notice of each designation it is

5  challenging and describing the basis for each challenge. To avoid ambiguity as to whether a

6  challenge has been made, the written notice must recite that the challenge to confidentiality is

7  being made in accordance with this specific paragraph of this Order. The parties shall attempt to

8  resolve each challenge in good faith and must begin the process by conferring directly (in voice to

9  voice dialogue; other forms of communication are not sufficient) within fourteen (14) days of the

10  date of service of notice. In conferring, the Challenging Party must explain the basis for its belief

11  that the confidentiality designation was not proper and must give the Designating Party an

12  opportunity to review the designated material, to reconsider the circumstances, and, if no change

13  in designation is offered, to explain the basis for the chosen designation. A Challenging Party

14  may proceed to the next stage of the challenge process only if it has engaged in this meet and

15  confer process first or establishes that the Designating Party is unwilling to participate in the meet

16  and confer process in a timely manner.

17      **6.3    Judicial Intervention**. The Challenging Party may file a motion challenging a

18  confidentiality designation at any time if there is good cause for doing so, including a challenge to

19  the designation of a deposition transcript or any portion thereof. Any motion brought pursuant to

20  this provision must be accompanied by a competent declaration affirming that the movant has

21  complied with the meet and confer requirements imposed by the preceding paragraph. The burden

22  of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous

23  challenges and those made for an improper purpose (e.g., to harass or impose unnecessary

24  expenses and burdens on other parties) may expose the Challenging Party to sanctions. All parties

25  shall continue to afford the material in question the level of protection to which it is entitled under

26  the   Producing   Party's   designation   until   the   Court   rules   on   the   challenge.

27  ///

28  ///

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**7.   ACCESS TO AND USE OF PROTECTED MATERIAL**

**7.1   Basic Principles**. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 16 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. ~~Data designated as "CONFIDENTIAL ATTORNEYS' EYES ONLY" and/or "HIGHLY CONFIDENTIAL SOURCE CODE," will be encrypted by the Receiving Party and the Receiving Party shall provide the Producing Party a list of individuals who have had access to the data as part of this litigation. If additional individuals are given access to such data, the Receiving Party shall provide the Producing Party with a list of such individuals within ten (10) days of their access to the data.   Any SOURCE CODE produced in this litigation will be treated as "CONFIDENTIAL ATTORNEYS' EYES ONLY," until such time as designated otherwise by the Producing Party.~~

**7.2   Disclosure of "CONFIDENTIAL" Information or Items**. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)   The Receiving Party's Outside Counsel of Record in this action, including support staff, paralegals, paralegal clerks, legal interns, and legal assistants, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b)   The officers, directors, and employees (including In-House Counsel and support staff, paralegals, paralegal clerks, legal interns, and legal assistants) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1      (c)     Experts (as defined in this Order) of the Receiving Party to whom

2  disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment

3  and Agreement to Be Bound" (Exhibit A);

4      (d)     The Court and its personnel;

5      (e)     Court reporters and their staff, professional jury or trial consultants, and

6  Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have

7  signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

8      (f)     During their depositions, witnesses in the action to whom disclosure is

9  reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound"

10  (Exhibit A).

11      During their depositions, witnesses to whom disclosure is reasonably necessary

12  and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless

13  otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed

14  deposition testimony or exhibits to depositions that reveal Protected Material must be separately

15  bound by the court reporter and may not be disclosed to anyone except as permitted under this

16  Order.

17      **(g)**     The author or recipient of a document containing the information or a

18  custodian or other person who otherwise possessed or knew the information.

19      **7.3     Disclosure of "CONFIDENTIAL–ATTORNEYS' EYES ONLY" and**

20  **"HIGHLY CONFIDENTIAL–SOURCE CODE" Information or Items**. Unless otherwise

21  ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may

22  disclose any information or item designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY"

23  or "HIGHLY CONFIDENTIAL–SOURCE CODE" only to:

24      (a)     The Receiving Party's Outside Counsel of Record in this action, including

25  support staff, paralegals, paralegal clerks, legal interns, and legal assistants, as well as employees

26  of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information

27  for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that

28  is attached hereto as Exhibit A;

RC1/7715858.3/LB4                           - 12 -

(b)     For "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information, but **not** "HIGHLY CONFIDENITIAL—SOURCE CODE": Designated In-House Counsel of the Receiving Party (1) who have no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed;

(c)     Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed;

(d)     The Court and its personnel;

(e)     Court reporters and their staff, professional jury or trial consultants,  and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(f)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

**7.4     Procedures for Approving or Objecting to Disclosure of "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE" Information or Items to Counsel or Experts**.

(a)     Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Counsel any information or item that has been designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated In-House Counsel and the city and state of his or her residence, and (2) describes the Designated In-House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if In-House Counsel is involved, or may become involved, in any competitive decision-making.

///

RC1/7715858.3/LB4                                  - 13 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1          (b)     Unless otherwise ordered by the Court or agreed to in writing by the

2    Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any

3    information or item that has been designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY"

4    **or** "HIGHLY CONFIDENTIAL–SOURCE CODE" pursuant to paragraph 7.3(c) first must make

5    a written request to the Designating Party that (1) identifies the general categories of

6    "CONFIDENTIAL–ATTORNEYS' EYES ONLY" **or** "HIGHLY CONFIDENTIAL–SOURCE

7    CODE" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets

8    forth the full name of the Expert and the city and state of his or her primary residence, (3)

9    attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5)

10   identifies each person or entity from whom the Expert has received compensation or funding for

11   work in his or her areas of expertise or to whom the expert has provided professional services,

12   including in connection with a litigation, at any time during the preceding five years[1], and (6)

13   identifies (by name and number of the case, filing date, and location of court) any litigation in

14   connection with which the Expert has offered expert testimony, including through a declaration,

15   report, or testimony at a deposition or trial, during the preceding five (5) years[2].A Party that

16   makes a request and provides the information specified in the preceding respective paragraphs

17   may disclose the subject Protected Material to the identified Counsel or Expert unless, within

18   fourteen (14) days of delivering the request, the Party receives a written objection from the

19   Designating Party. Any such objection must set forth in detail the grounds on which it is based. A

20   Party that receives a timely written objection must meet and confer with the Designating Party

21   (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven (7)

22   days of the written objection. If no agreement is reached, the Party seeking to make the disclosure

23   to Designated In-House Counsel or the Expert may file a motion as provided in Civil Local Rule

24   _____

25   [1] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the
     Expert shall provide whatever information the Expert believes can be disclosed without violating any confidentiality
26   agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating
     Party regarding any such engagement.
27   [2] It may be appropriate in certain circumstances to restrict the Expert from undertaking certain limited work prior to
     the termination of the litigation that could foreseeably result in an improper use of the Designating Party's
28   "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information.

RC1/7715858.3/LB4                              - 14 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the

2   Court to do so. Any such request must describe the circumstances with specificity, set forth in

3   detail the reasons why the disclosure to Designated In-House Counsel or the Expert is reasonably

4   necessary, assess the risk of harm that the disclosure would entail, and suggest any additional

5   means that could be used to reduce that risk. In addition, any such request must be accompanied

6   by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e.,

7   the extent and the content of the meet and confer discussions) and setting forth the reasons

8   advanced by the Designating Party for its refusal to approve the disclosure. In any such

9   proceeding, the Party opposing disclosure to Counsel or the Expert shall bear the burden of

10   proving that the risk of harm that the disclosure would entail (under the safeguards proposed)

11   outweighs the Receiving Party's need to disclose the Protected Material to its Designated In-

12   House Counsel or Expert.

13   Failure to object to a proposed outside Expert or consultant shall not preclude any party

14   from later objecting to continued access by that outside Expert or consultant where facts suggest a

15   basis for objecting could not have been discovered by the objecting party within the time for

16   making timely objection. If a later objection is made, no further Protected Matter shall be

17   disclosed to the designated outside Expert or consultant until the matter is resolved by the parties

18   through the meet and confer process, by the Court, or the objecting Party withdraws its objection.

19   **8.** **FOREIGN COLLECTION**

20   **8.1**   A Federal District Court having personal jurisdiction over a foreign national party

21   has the discretion to allow the employment of the Federal Rules of Civil Procedure or the Hague

22   Convention in conducting pre-trial discovery. *Societe Nationale Industrielle Aerospatiale v. U.S.*

23   *Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 544 (1987).  Both the discovery rules set forth

24   in the Federal Rules of Civil Procedure and the Hague Convention are the law of the United

25   States.  The Convention draws no distinction between evidence obtained from third parties and

26   that obtained from the litigants themselves, nor does it purport to draw any sharp line between

27   evidence that is "abroad" and evidence that is within the control of a party subject to the

28   jurisdiction of the requesting court. This Order assumes employment of the Federal Rule of Civil

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Procedure as modified to advance the goals of FRCP 1 and recognize the interests of Foreign

2    countries to protect their information.

3         **8.2**    *Aerospatiale* instructs the American courts to "exercise special vigilance to protect

4    foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place

5    them in a disadvantageous position." *Id.* at 546. "Judicial supervision of discovery should always

6    seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests.

7    When it is necessary to seek evidence abroad, however, the district court must supervise pretrial

8    proceedings particularly closely to prevent discovery abuses." *Id.*

9         **8.3**    There is pending an action with these same parties on similar or the same legal

10   claims now pending in the District Court of the Hague. (Case No. C 09-460412)  The issue of the

11   accused Source Code being exported outside of China was previously considered in the

12   Netherlands litigation. On May 12, 2014, the District Court of the Hague directed the Defendants

13   in this action to submit the Source code of ZWCAD+ 2012 and ZWCAD+ 2014, including the

14   build and master scripts, third party binary components and libraries. The Court appointed the

15   firm Autodesk had proposed, who has provided legal services to Autodesk in that region:

16         *Alvarez & Marsal Consulting (Shanghai) Limited, Beijing Branch Unit*

17         *1118-21, 11F China World Office I*

18         *No. 1 Jianguomenwai Ave., Chaoyang District*

19         *Beojing 100004, P.R. China*

20   The source code was deposited with Alvarez & Marsal by Defendants in May of 2014, and is

21   still retained there. Pursuant to this order, to advance the interests of judicial economy by

22   avoiding wasteful duplication of discovery specific to the Source Code that is at issue in both

23   actions, this Protective Order directs that the Source Code be maintained for Inspection in this

24   action as well. Access to the Source Code in the People's Republic of China ("PRC") is subject to

25   the Federal Rules of Civil Procedure.

26   ##

27   ##

28   ##

RC1/7715858.3/LB4                                    - 16 -

1    9.8.    **SOURCE CODE**

2        9.1<u>8.1</u>  To the extent production of source code becomes necessary in this case, a

3    Producing Party may designate source code as "HIGHLY CONFIDENTIAL-SOURCE CODE,"

4    if it comprises or includes confidential, proprietary or trade secret source code.

5        9.2<u>8.2</u>  Protected Material designated as "HIGHLY CONFIDENTIAL–SOURCE CODE"

6    shall be subject to all of the protections afforded to "CONFIDENTIAL–ATTORNEYS' EYES

7    ONLY" information, and may be disclosed only to the individuals to whom "CONFIDENTIAL–

8    ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 9.3 and

9    9.4.

10        9.3<u>8.3</u>  Any source code produced in discovery shall be made available for inspection, in a

11    format allowing it to be reasonably reviewed and searched, during normal business hours or at

12    other mutually agreeable times, at an office of the Producing Party's counsel or another mutually

13    agreed upon location.  The source code shall be made available for inspection on a secured

14    computer in a secured room <u>without Internet access or network access to other computers</u>, and the

15    Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto

16    any recordable media or recordable device.  <u>The Producing Party may visually monitor the</u>

17    <u>activities of the Receiving Party's representatives during any source code review, but only to</u>

18    <u>ensure that there is no unauthorized recording, copying, or transmission of the source code. The</u>

19    <u>Producing Party may not monitor audio or the display screens being reviewed as that may violate</u>

20    <u>the work product privilege</u>.

21        9.4<u>8.4</u>  The Receiving Party may request paper copies of limited portions of source code

22    that are ***reasonably necessary*** for the preparation of court filings, pleadings, expert reports, or

23    other papers, or for deposition or trial, but shall not request paper copies for the purposes of

24    reviewing the source code other than electronically as set forth in section 9.3 in the first instance.

25    The printed Source Code shall be labeled with "[PRODUCING PARTY'S NAME] HIGHLY

26    CONFIDENTIAL—SOURCE CODE—SUBJECT TO PROTECTIVE ORDER," <u>with relevant</u>

27    <u>Bates Numbering</u>.  Outside Counsel of Record for the Producing Party will keep the originals of

28

**Formatted:** Font: Not Bold

**Formatted:** Font: Not Bold

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

these printed documents. ~~The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedures outlined in Section 6 herein, and whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.~~ Within three (3) business days of the printing of any Source Code, the Producing Party shall either (i) provide copies of the printed Source Code for Outside Counsel of Record for the Receiving Party or (ii) object that the printed portions are excessive or not done for a permitted purpose. Printed portions which exceed ten (10) pages from any source code file, or which exceed five hundred (500) total pages in this action shall be presumed to be excessive and not done for a permitted purposed, although the parties will be reasonable in accommodating requests to print portions exceeding these limits upon a showing of good cause by the Receiving Party.

~~9.5~~8.5  If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Producing Party shall be entitled to seek the Court's resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose. While any objections to the printed Source Code are pending, the Producing Party shall make available the printed Source Code for inspection in the secure room where its Source Code Computer is located. If the Court overrules the Producing Party's objections to the printed Source Code, the Producing Party shall provide copies of the printed Source Code for Outside Counsel of Record for the Receiving Party on watermarked paper within twenty-four (24) hours of the Court's ruling.

~~9.6~~8.6  The Receiving Party's Outside Counsel of Record may make no more than five (5) additional paper copies of any portions of the Source Code received from a Producing Party, not including copies attached to court filings or used at depositions. In addition to other reasonable steps to maintain the security and confidentiality of Source Code, printed copies of Source Code maintained by the Receiving Party must be kept in a locked storage container when not being actively reviewed. No more than a total of ten (10) individuals identified by the Receiving Party, including all individuals who have access to the secure room as limited herein, shall have access

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    to the printed portions of Source Code (except insofar as such code appears in any filing with the

2    Court or expert report in this case). All paper copies of source code shall be securely destroyed if

3    they are no longer necessary in the litigation (e.g., extra copies at the conclusion of a deposition).

4    Copies of Source Code that are marked as deposition exhibits shall not be provided to the court

5    reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit

6    by its production numbers.

7        9.78.7  The Receiving Party shall maintain a record of any individual who has inspected

8    any portion of the source code in electronic or paper form. The Receiving Party also shall keep a

9    paper log indicating the names of any individuals inspecting paper copies of the Source Code and

10   the dates and times of inspection, and the names of any individuals to whom paper copies of

11   portions of Source Code are provided. The Receiving Party shall maintain all paper copies of any

12   printed portions of the Source Code in a secured, locked area. The Receiving Party shall not

13   create any electronic or other images of the paper copies and shall not convert any of the

14   information contained in the paper copies into any electronic format. The Receiving Party shall

15   only make additional paper copies if such additional copies are (1) necessary to prepare court

16   filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for

17   deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used

18   during a deposition shall be retrieved by the Producing Party at the end of each day and must not

19   be given to or left with a court reporter or any other individual.

20

21   10.    DATA FOR EXPORT INTO THE UNITED STATES

22        10.1   To the extent production of information from the PRC becomes necessary in this

23   case, a Producing Party may designate said information as "CONFIDENTIAL ATTORNEYS'

24   EYES ONLY," if it comprises or includes confidential, proprietary or trade secret information.

25        10.2   To the extent information is sought to be exported from outside of the PRC after

26   Inspection by the Receiving Party, the following protocol will be followed to minimize the cost of

27   litigation under FRCP 1. This procedure will also serve to recognize the sovereignty and national

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   interest of the PRC relating to the privacy of its citizens and state secrecy laws, and maintain the
2   ability of the Parties to identify information by inspection as may be needed in this action.

3       **10.3**   Data kept and maintained in the regular course of business by any party to this
4   action in the PRC will be collected and processed in the PRC. Throughout the process U.S.
5   counsel for the Producing Party will oversee the review of said data to be compliant and
6   responsive under the standard articulated under FRCP 26(b).  Having the information reviewed in
7   its native language will minimize cost and risk of export of irrelevant data that could potentially
8   violate PRC privacy or state secrecy laws.

9       **10.4**   After initial review, the responsive information shall be made available for
10   inspection on a secured computer in a secured room without Internet access or network access to
11   other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any
12   portion of the responsive information onto any recordable media or recordable device, pursuant to
13   FRCP 34(b)(2)(B).

14      **10.5**   The Producing Party may visually monitor the activities of the Receiving Party's
15   representatives during any review, but only to ensure that there is no unauthorized recording,
16   copying, or transmission of the information being reviewed.  The Producing Party may not
17   monitor audio or the display screens being reviewed to preserve work product privacy.

18      **10.6**   The Receiving Party will limit their request for the production of responsive
19   information from the PRC to only that information which is reasonably necessary for the
20   preparation of court filings, pleadings, expert reports, other papers, or for deposition or trial.

21      **10.7**   The Producing Party will have thirty (30) days from the Receiving Party's
22   identification of data necessary for export to advise its employees of potential disclosure of
23   information implicating PRC privacy laws.  Under Article 4 of the PRC Labor Contract Law of
24   the People's Republic of China, employers are required to announce to, or otherwise inform their
25   employees of, the rules and important events that are directly related to the interests of the
26   employees. Therefore, the Producing Party will be required to advise all employees as to any
27   email communications or other forms of information that implicate privacy issues that will be
28   provided in the U.S. litigation.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   **10.8**   The Producing Party will have ninety (90) days from the Receiving Party's

2   identification of data necessary for export to have any information that local counsel identifies as

3   sensitive information that requires clearance by the PRC authority for export.   According to

4   Article 5, the Administrations for the Protection of State Secrets are the law enforcement

5   government agencies that are charged of safeguarding state secrets. The National Administration

6   for the Protection of State Secrets (NAPSS) is a bureau under the State Council (the central

7   Chinese government), supervising and operating through local Administrations for the Protection

8   of State Secrets (APSS) at the provincial level, the prefecture level, and the county level.

9   Under Article 2 of the state secrets law, a "state secret" is defined a matters which has a

10   bearing on national security and interests, classified through legal procedures, and to which

11   access is granted to a limited number of persons for a certain period of time. The export of data

12   before it has been reviewed and cleared of sensitive information can violate the state secrets law

13   and subject the company and its attorneys to severe administrative and/or criminal sanctions.

14   Article 34 of the state secrets law articulates a mandatory security clearance and eligibility review

15   if an enterprise or public service unit intends to conduct business involving state secrets,

16   including but not limited to the production, reproduction, maintenance, and destruction of storage

17   media of state secrets, the integration of computer information systems involving state secrets,

18   and the scientific research and production of weapons and equipment.

19   **10.9**   If such clearance is not received by the PRC within the time frame referenced, the

20   parties will meet and confer in good faith to determine if the potentially sensitive aspect of the

21   information may be redacted to exclude any potential state secret. If redaction is not possible, the

22   parties will meet and confer in good faith to determine if a stipulation can be reached as to the

23   substance of the information, relevant to the pending action, to obviate the need to export the

24   data. Courts are less inclined to ignore a foreign state's concerns if the outcome of litigation "does

25   not stand or fall on the present discovery order," or if the evidence sought is cumulative.

26   *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992); *In re*

27   *Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007).

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  ~~**10.10**  If a dispute still remains as to the export of responsive information outside of the~~
2  ~~PRC, the parties will submit a joint letter to Magistrate Judge Grewal within five (5) days of a~~
3  ~~meet and confer, not to exceed five (5) pages: that certifies that counsel for both parties have met~~
4  ~~and conferred in person; that describes in general the nature of the information sought; states that~~
5  ~~counsel for the Producing Party certifies that the information qualifies for protection under the~~
6  ~~PRC law and reference the subject law; and that identifies why a stipulation as to the underlying~~
7  ~~facts is insufficient.~~

8  ~~11.~~9.   **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

9       If a Party is served with a subpoena or a court order issued in other litigation that compels

10  disclosure of any information or items designated in this action as "CONFIDENTIAL" or

11  "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE

12  CODE" that Party must:

13       (i)   promptly notify in writing the Designating Party. Such notification shall

14  include a copy of the subpoena or court order;

15       (ii)   promptly notify in writing the party who caused the subpoena or order to

16  issue in the other litigation that some or all of the material covered by the subpoena or order is

17  subject to this Protective Order. Such notification shall include a copy of this Order; and

18       (iii)   cooperate with respect to all reasonable procedures sought to be pursued by

19  the Designating Party whose Protected Material may be affected.

20       The purpose of imposing these duties is to alert any interested parties to the existence of

21  this Protective Order and to afford the Designating Party in this case an opportunity to try to

22  protect its confidentiality interests in the court from which the subpoena or order issued.

23       If the Designating Party timely seeks a protective order, the Party served with the

24  subpoena or court order shall not produce any information designated in this action as

25  "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY

26  CONFIDENTIAL–SOURCE CODE" before a determination by the court from which the

27  subpoena or order issued, unless the Party has obtained the Designating Party's permission. The

28  Designating Party shall bear the burden and expense of seeking protection in that court of its

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/7715858.3/LB4

- 22 -

1  confidential material – and nothing in these provisions should be construed as authorizing or

2  encouraging a Receiving Party in this action to disobey a lawful directive from another court.

3  ~~12.~~10. **A Non-Party's Protected Material Sought to be Produced in This**

4  **Litigation**

5  ~~12.1~~10.1      The terms of this Order are applicable to information produced by a Non-

6  Party in this action and designated as "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS'

7  EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE". Such information produced

8  by Non-Parties in connection with this litigation is protected by the remedies and relief provided

9  by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from

10  seeking additional protections.

11  ~~12.2~~10.2      In the event that a Party is required, by a valid discovery request, subpoena,

12  or order, to produce a Non-Party's confidential information in its possession, and the Party is

13  subject to an agreement with the Non-Party not to produce the Non-Party's confidential

14  information, then the Party shall:

15       (i)   promptly, ==and in no event more than ~~three~~ seven (7~~3~~) days after receipt of==

16  ==the request, subpoena, or order== notify in writing the Designating Party. Such notification shall

17  include a copy of the request, subpoena or order;

18       (ii)  promptly, ==and in no event more than ~~three~~ seven (7~~3~~) days after receipt of==

19  ==the request, subpoena, or order== notify in writing the party who caused the request, subpoena, or

20  order to issue in the other litigation that some or all of the material covered by the request,

21  subpoena or order is subject to this Protective Order. Such notification shall include a copy of this

22  Order; and

23       (iii) make the information requested available for inspection by the Non-Party;

24       (iv)  If the Non-Party fails to object or seek a protective order from this Court

25  within fourteen (14) days of receiving the notice and accompanying information, the Receiving

26  Party may produce the Non-Party's confidential information responsive to the request. If the Non-

27  Party timely seeks a protective order, the Receiving Party shall not produce any information in its

28  possession or control that is subject to the confidentiality agreement with the Non-Party before a

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   determination by the Court. The purpose of this provision is to alert the interested parties to the

2   existence of confidentiality rights of a Non-Party an opportunity to protect its confidentiality

3   interests in this court. Absent a court order to the contrary, the Non-Party shall bear the burden

4   and expense of seeking protection in this court of its Protected Material.

5   13.11.  UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

6          If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

7   Material to any person or in any circumstance not authorized under this Order, the Receiving

8   Party must immediately (a) notify in writing the Designating Party of the unauthorized

9   disclosures, (b) use its best efforts to retrieve and return all unauthorized copies of the Protected

10  Material and delete or otherwise destroy all copies, (c) inform the person or persons to whom

11  unauthorized disclosures were made of all of the terms of this Order, and (d) request such person

12  or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto

13  as Exhibit A.

14  14.12.  INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

15         14.112.1    Production of information that is privileged or otherwise immune from

16  discovery shall be entitled to the protections of Federal Rule of Civil Procedure 26(b)(5)(B) and

17  Federal Rule of Evidence 502. If information is produced in discovery that is subject to a claim of

18  privilege or of protection as trial-preparation material, the party making the claim may notify any

19  party that received the information of the claim and the basis for it. After being notified, a party

20  must promptly return or destroy the specified information and any copies it has and may not

21  sequester, use, or disclose the information until the claim is resolved. This includes a restriction

22  against presenting the information to the court for a determination of the claim. The party

23  asserting the privilege is not required to make a showing prior to the return of the designated

24  material.

25         14.212.2    The Receiving Party will return such inadvertently-produced item or

26  items of information and destroy copies thereof within ten (10) days of receiving a written

27  request for the return of such item or items of information. The party having returned such

28  inadvertently-produced item or items of information may thereafter, without asserting waiver

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    because of the inadvertent production, seek production of any such documents in accordance with

2    the Federal Rules of Civil Procedure.

3    ~~15.~~13.   **MISCELLANEOUS**

4           ~~15.1~~13.1       **Right to Further Relief.** Nothing in this Order abridges the right of any

5    person to seek its modification by the Court in the future.

6           ~~15.2~~13.2       **Right to Assert Other Objections**. By stipulating to the entry of this

7    Protective Order no Party waives any right it otherwise would have to object to disclosing or

8    producing any information or item on any ground not addressed in this Order. Similarly, no Party

9    waives any right to object on any ground to use in evidence of any of the material covered by this

10   Order.

11   ~~15.3       Privilege Logs. Counsel for a party may withhold documents from production as exempt~~

12   ~~from discovery because such documents are protected from disclosure under the attorney client~~

13   ~~privilege or work product doctrine of FRCP 26(b), or any other applicable privilege or immunity.~~

14   ~~For documents so withheld, the party withholding the documents shall prepare a log consistent~~

15   ~~with FRCP 26(b)(5) identifying each document withheld, the protection claimed, and the basis for~~

16   ~~the protection. Counsel for either party need not list in any such log any privileged documents or~~

17   ~~communications between their firm and their client created after the filing of this action.~~

18          ~~15.4~~13.3       **Filing Protected Material**. Without written permission from the

19   Designating Party or a court order secured after appropriate notice to all interested persons, a

20   Party may not file in the public record in this action any Protected Material. A Party that seeks to

21   file under seal any Protected Material must comply with Civil L.R. 79-5. Protected Material may

22   only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected

23   Material at issue. Pursuant to Civil L.R. 79-5, a sealing order will issue only upon a request

24   showing that the Protected Material at issue is privileged, protectable as a trade secret, or

25   otherwise entitled to protection under the law. If a Receiving Party's request to file Protected

26   Material under seal pursuant to Civil L.R. 79-5(d) is denied by the Court, then the Receiving

27   Party may file the Protected Material in the public record pursuant to Civil L.R. 79-5(e) unless

28   otherwise instructed by the Court.

**Formatted:** No bullets or numbering

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    ~~15.5~~13.4    This Protective Order shall be binding upon the parties and their attorneys,

2    successors, executors, personal representatives, administrators, heirs, legal representatives,

3    assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or

4    organizations over which they have control.

5    ~~15.6~~13.5    The party or parties receiving Protected Material shall not under any

6    circumstances sell, offer for sale, advertise, or publicize Protected Material or any information

7    contained therein.

8    ~~16.~~14.  **FINAL DISPOSITION**

9    Within 60 days after the final disposition of this action, as defined in paragraph 4, each

10   Receiving Party must return all Protected Material to the Producing Party or destroy such

11   material. As used in this subdivision, "all Protected Material" includes all copies, abstracts,

12   compilations, summaries, and any other format reproducing or capturing any of the Protected

13   Material. Whether the Protected Material is returned or destroyed, the Receiving Party must

14   submit a written certification to the Producing Party (and, if not the same person or entity, to the

15   Designating Party) by the 60-day deadline (1) identifies (by category, where appropriate) all the

16   Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not

17   retained any copies, abstracts, compilations, summaries or any other format reproducing or

18   capturing any of the Protected Material. Notwithstanding this provision, Outside Counsel of

19   Record are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition,

20   and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert

21   reports, attorney work product, and consultant and expert work product, but not an opposing or

22   third party's production, even if such materials contain Protected Material. Any such archival

23   copies that contain or constitute Protected Material remain subject to this Protective Order as set

24   forth in Section 4 (DURATION).

25   IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

26

27

28

1    Dated:  December 3, 2014           MORRISON & FOERSTER

2

3                                By:_____

4                                  MICHAEL A. JACOBS
                                    RICHARD S.J. HUNG

5                                  Attorneys for Plaintiff
                                  AUTODESK, INC.

6

7    Dated:  December 3, 2014           ROPERS, MAJESKI, KOHN & BENTLEY

8

9                                By:_____

10                                  LAEL D. ANDARA
                                  BROCK R. LYLE
                                  MARIE E SOBIESKI

11                                Attorneys for Defendants
                                  ZWCAD SOFTWARE CO., LTD. and

12                                  ZWCAD DESIGN CO., LTD.

13   Dated:  December 3, 2014           NASSIRI & JUNG LLP

14

15                                By:_____

16                                  CHARLES H. JUNG
                                  KENNETH M. WALCZAK

17                                  Attorneys for Defendants
                                  GLOBAL FORCE DIRECT, LLC

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# EXHIBIT A

### *ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND*

I, _____ [print or type full name], of _____ [print or type full address], declare **under penalty of perjury** that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on December __, 2014 in the case of **Autodesk, Inc. v. ZwCAD Software Co., Ltd., et al.,** Case No. 3:14-cv-01409-EDL.

I agree to comply with and to be bound by all the terms of the Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt.

I solemnly promise that I will not disclose in any manner any information or item that is subject to the Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of the Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of the Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

[*printed name*]

Signature: _____

[*signature*]

1   **IT IS SO ORDERED**

2   Dated: December _____, 2014          By:_____

3                                         HONORABLE EDWARD J. DAVILA
                                          UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/7715858.3/LB4                    - 29 -

# EXHIBIT C

1   MICHAEL A. JACOBS (CA SBN 111664)
    mjacobs@mofo.com
2   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone:     (415) 268-7000
5   Facsimile:     (415) 268-7522

6   Attorneys for Plaintiff
    AUTODESK, INC.
7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  AUTODESK, INC.,                        Case No. 14-cv-01409-EDL

13              Plaintiff,                 **AUTODESK, INC.'S FIRST SET OF
                                           REQUESTS FOR PRODUCTION TO**
14       v.                                **DEFENDANT GLOBAL FORCE
                                           DIRECT, LLC. d/b/a ZWCADUSA**
15  ZWCAD SOFTWARE CO., LTD. *et al.*,     **(NOS. 1-36)**

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Under Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Autodesk, Inc. ("Autodesk") asks that Defendant Global Force Direct, LLC. d/b/a ZwcadUSA ("ZwcadUSA") produce the following documents, electronically stored information, and things for inspection and copying at the offices of Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105-2482, within thirty (30) days of service of this request or at another mutually agreeable time and place.

## DEFINITIONS

As used below, the following terms have the meanings indicated:

1.      "Autodesk" refers to Plaintiff Autodesk, Inc., as well as any of its agents, directors, officers, employees, representatives, attorneys, past or present, and any and all predecessor or successor companies, joint ventures, partnerships, corporations, or business entities. "Autodesk" also refers to any division, company, corporation, or other business entity affiliated with or owned by Autodesk Inc., in whole or in part, and the agents, directors, officers, employees, consultants, and attorneys of any of them, including all persons subject to Autodesk, Inc.'s direction or control or who are acting or purporting to act on its behalf.

2.      "Source code" means computer instructions and data definitions, as well as associated documents, comments and revision histories, formulas, engineering specifications, or schematics, that define or otherwise describe in detail the algorithms or structure of software or hardware designs, expressed in a form suitable for input to an assembler, compiler, or other data translator or other data processing module. "Source code" may be written in any programming language or scripting language.

3.      "CAD" or "CAD product" refers to a software application for 2D and 3D computer-aided design and drafting that can create digital models and workflows that allow visualization, simulation, and analysis of designs before implementation. "CAD" or "CAD product" also refers to the source code or source code segments for such a product and its related scripts, libraries, and executables.

4.      "IntelliCAD" refers to any version of the CAD-software programming toolkit and API published by the IntelliCAD Technology Consortium ("ITC"). "IntelliCAD" also refers to

the source code or source code segments for this software and its related scripts, libraries, and executables.

5.     "AutoCAD" or "AutoCAD product" refers to any CAD product, component, system, and related software applications, tools, and add-ons that are designed, developed, produced, tested, or distributed by Autodesk and its affiliates under the AutoCAD mark or brand. "AutoCAD" or "AutoCAD product" includes AutoCAD 2006, AutoCAD 2007, AutoCAD 2008, AutoCAD 2009, AutoCAD 2010, AutoCAD 2011, AutoCAD 2012, AutoCAD 2013, and AutoCAD 2014.  "AutoCAD" or "AutoCAD product" also refers to the source code or source code segments for these products and their related scripts, libraries, and executables.

6.     "Global Force Direct," "ZWCADUSA," "you," or "your" refers to Defendant Global Force Direct, LLC. d/b/a ZwcadUSA, as well as any of its agents, directors, officers, employees, representatives, attorneys, past or present, and any and all predecessor or successor companies, joint ventures, partnerships, corporations, or business entities.  "Global Force Direct" "ZWCADUSA," "you," and/or "your" also refer to any division, company, corporation, or other business entity affiliated with or owned by Global Force Direct, LLC. in whole or in part, or that owns Global Force Direct, LLC. in whole or in part, and the agents, directors, officers, employees, consultants, and attorneys of any of them, including all persons subject to Global Force Direct, LLC.'s direction or control or who are acting or purporting to act on its behalf.

7.     "ZWSOFT" refers to Defendants ZWCAD SOFTWARE Co., Ltd. and ZWCAD DESIGN Co., Ltd., whether collectively or individually, as well as any of their agents, directors, officers, employees, representatives, attorneys, past or present, and any and all predecessor or successor companies, joint ventures, partnerships, corporations, or business entities.  "ZWSOFT" also refers to any division, company, corporation, or other business entity affiliated with or owned by ZWCAD SOFTWARE Co., Ltd. or ZWCAD DESIGN Co., Ltd. in whole or in part, or that owns ZWCAD SOFTWARE Co., Ltd. or ZWCAD DESIGN Co., Ltd. in whole or in part, and the agents, directors, officers, employees, consultants, and attorneys of any of them, including all persons subject to ZWCAD SOFTWARE Co., Ltd.'s or ZWCAD DESIGN Co., Ltd.'s direction or control or who are acting or purporting to act on their behalf.

8.      "ZWCAD" or "ZWCAD product" refers to any CAD product, component, system, and related software applications, tools, and add-ons that are produced, tested, or distributed by ZWSOFT, ZWCADUSA, or their affiliates under the ZWCAD mark or brand.  "ZWCAD" or "ZWCAD product" includes ZWCAD 2009, ZWCAD 2011, and ZWCAD 2012.  "ZWCAD" or "ZWCAD product" also refers to the source code or source code segments for the ZWCAD software and their related scripts, libraries, and executables.

9.      "ZWCAD+" or "ZWCAD+ product" refers to any CAD product, component, system, and related software applications, tools, and add-ons that are produced, tested, or distributed by ZWSOFT, ZWCADUSA, or their affiliates under the ZWCAD+ mark or brand. "ZWCAD+" or "ZWCAD+ product" includes ZWCAD+ 2012 and ZWCAD+ 2014. "ZWCAD+" or "ZWCAD+ product" also refers to the source code or source code segments for the ZWCAD software and their related scripts, libraries, and executables.

10.     "This Action" means Civil Action No. 14-cv-1409 in the U.S. District Court for the Northern District of California.

11.     "Complaint" means Autodesk's March 26, 2014 Complaint in this Action and any amended complaint.

12.     "Person" and "entity" mean individuals and entities, including, without limitation, all natural persons, businesses, firms, partnerships, associates, organizations, governmental units, joint ventures, corporations, and any other entities.

13.     "Reflect," "reflecting," "concern," "concerning," "refer to," "referring to," "relate to," and "relating to" mean identifying, referring to, concerning, evidencing, demonstrating, summarizing, reflecting, constituting, containing, embodying, mentioning, pertaining to, commenting upon, connected with, discussing, describing, analyzing, showing, comprising, relating to, responding to, supporting, contradicting or in any way relevant to a particular subject, in whole or in part, either directly or indirectly, as the context makes appropriate.

14.     "Documents" shall be construed as broadly as possible under Rules 26 and 34 and the relevant case law.

15.     "Communication" or "communications" means any exchange or transfer of information, whether oral or written, formal or informal, at any time, at any place, under any circumstances, and in any manner, whereby a statement of any nature is transmitted or transferred, and includes, without limitation, any documents and electronically stored information containing, constituting, reflecting, memorializing, or referring to any such contact.

16.     The terms "include" or "including" do not limit the scope of the request and shall be construed as meaning including, but not limited to, the particular subject matter identified.

17.     "And," "or," and "and/or" shall be construed as terms of inclusion and not of exclusion, and should be construed disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories any documents or responses that might be otherwise construed to be outside their scope.

18.     The use of a word in its singular form shall be deemed to include within its use the plural form; and the use of a word in its plural form shall be deemed to include within its use the singular form.

## INSTRUCTIONS

The following instructions apply to the requests below and should be considered part of each request.

1.     If you object to a request as allegedly vague or ambiguous, identify the language that you consider to be vague or ambiguous, state your reasonable interpretation of that language, and respond to the request using that interpretation.  By this instruction, Autodesk does not waive its right to seek a complete production in response to any request despite your proposed interpretation.

2.     If you object to a request for a reason besides its alleged vague or ambiguous nature, identify the specific aspect to which you are objecting, explain why that aspect is allegedly objectionable, and respond to the remainder of the request.  By this instruction, Autodesk does not waive its right to seek a complete production in response to any request despite your proposed interpretation.

3.      If you withhold any information based on the attorney-client privilege, work-product doctrine, or other privilege, doctrine, or immunity, you should provide a privilege log. The privilege log should list, as applicable:  (i) the information, document, electronically stored information, or communication alleged to be so protected by author, subject matter, and date; (ii) the names of all recipients of the information, document, electronically stored information, or communication, including blind copy recipients; and (iii) all bases, factual and legal, upon which such protection from discovery rests.

4.      These requests are continuing in nature and require prompt supplementation under Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents concerning ZWCAD SOFTWARE CO., LTD.

**REQUEST FOR PRODUCTION NO. 2:**

All documents concerning ZWCAD DESIGN CO., LTD.

**REQUEST FOR PRODUCTION NO. 3:**

All documents concerning ZWCAD.

**REQUEST FOR PRODUCTION NO. 4:**

All documents concerning ZWCAD+.

**REQUEST FOR PRODUCTION NO. 5:**

All communications with ZWSOFT and its officers, directors, owners, and employees.

**REQUEST FOR PRODUCTION NO. 6:**

All communications with actual or potential customers, purchasers, or licensees of any version of ZWCAD+.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to identify the identity and location of actual or potential customers, purchasers, or licensees of any version of ZWCAD+.

**REQUEST FOR PRODUCTION NO. 8:**

All documents that you have received or provided to ZWSOFT and its directors, officers, and employees, including technical documents, reports, and communications, relating to AutoCAD, ZWCAD, and ZWCAD+.

**REQUEST FOR PRODUCTION NO. 9:**

All documents concerning any potential, actual, or requested indemnification by or for ZwcadUSA, its officers, its directors, or its owners relating to this Action, ZWCAD, or ZWCAD+.

**REQUEST FOR PRODUCTION NO. 10:**

All documents relating to statements, announcements, and press releases discussing, describing, or relating to this Action.

**REQUEST FOR PRODUCTION NO. 11:**

All documents concerning Autodesk.

**REQUEST FOR PRODUCTION NO. 12:**

All documents concerning AutoCAD, including any version thereof.

**REQUEST FOR PRODUCTION NO. 13:**

Corporate organizational charts sufficient to identify your corporate structure generally and to show any interrelationship between any and all divisions, companies, joint ventures, partnerships, corporations, or other business entities affiliated with you or owned by you in whole or in part, or that own you in whole or in part.

**REQUEST FOR PRODUCTION NO. 14:**

Personnel organizational charts for 2012 through the present for any group, business unit, or division responsible for research, development, engineering, design, manufacturing, testing, assembly, purchasing, sourcing, packaging, maintenance, sales, importation, licensing, distribution, making available for downloading, marketing, and strategic planning of or relating to ZWCAD and ZWCAD+ and the zwcadusa.com website.

**REQUEST FOR PRODUCTION NO. 15:**

Documents sufficient to identify all entities, divisions, joint ventures, partnerships, corporations, or other business entities affiliated with you or owned by you in whole or in part, or that own you in whole or in part.

**REQUEST FOR PRODUCTION NO. 16:**

All documents, including contracts, licenses, and any other agreements, defining or describing your business relationship with ZWSOFT.

**REQUEST FOR PRODUCTION NO. 17:**

Documents concerning your business model with respect to ZWCAD and ZWCAD+, including any cost or revenue model, marketing strategies, distribution model, licensing strategies, and financial projections.

**REQUEST FOR PRODUCTION NO. 18:**

Documents concerning the marketing of ZWCAD and ZWCAD+, including product lists, brochures, videos, pamphlets, reports, press releases, market research, and demonstrations.

**REQUEST FOR PRODUCTION NO. 19:**

All documents relating to actual and projected unit sales, revenues, gross profits, operating profits, losses, expenses, and costs associated with ZWCAD and ZWCAD+ products separately for each month since ZWCAD and ZWCAD+'s first licensing, sale, offer for sale, distribution, or availability for downloading in the United States.

**REQUEST FOR PRODUCTION NO. 20:**

All documents relating to sales, offers for sale, orders, licenses, downloading, shipments, payments, or inventories of ZWCAD and ZWCAD+ products, including in Northern California and the United States.

**REQUEST FOR PRODUCTION NO. 21:**

All documents describing competition for CAD software in the United States.

**REQUEST FOR PRODUCTION NO. 22:**

All documents concerning any examination, evaluation, investigation, testing, or analysis of any AutoCAD, ZWCAD, or ZWCAD+ product.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to the circumstances under which you first learned about Autodesk's claims of copyright infringement and trade secret misappropriation concerning ZWCAD+ products and any subsequent actions that you took relating to Autodesk's claims, including any changes in your business practices and any related communications with ZWSOFT.

**REQUEST FOR PRODUCTION NO. 24:**

All documents relating to any copying of AutoCAD products.

**REQUEST FOR PRODUCTION NO. 25:**

Source code for each version and build of ZWCAD and ZWCAD+.

**REQUEST FOR PRODUCTION NO. 26:**

Executables for each version and build of ZWCAD and ZWCAD+.

**REQUEST FOR PRODUCTION NO. 27:**

ZWCAD and ZWCAD+ technical specifications and instructions.

**REQUEST FOR PRODUCTION NO. 28:**

A copy of the webpages on the www.zwcadusa.com website, including historical and current webpages.

**REQUEST FOR PRODUCTION NO. 29:**

All documents relating to the design, development, maintenance, and modification of the zwcadusa.com website, including the deletion of references to AutoCAD such as "the alternative that offers the closest AutoCAD experience."

**REQUEST FOR PRODUCTION NO. 30:**

All documents that support your statement in an April 28, 2010 press release that "most Auto[CAD] users can easily transition to ZWCAD and become productive in less than a day."

**REQUEST FOR PRODUCTION NO. 31:**

All documents that support your statement in a December 3, 2010 press release that "ZWCAD gives [users] the closest Autocad user experience."

1

**REQUEST FOR PRODUCTION NO. 32:**

2

All documents that support, refute, or relate to your statements in a September 24, 2013

3

press release that: (i) "[w]ith ZWCAD+2014, [ZWCAD engineers] have delivered on the promise

4

our R and D made when ZWCAD+ was first introduced in July 2012: the new core of ZWCAD+

5

will serve as the launching pad that will continue to transform new possibilities into realities and

6

will raise the bar higher for performance, functionality, and user experience"; (ii) "ZWCAD+ is

7

not just a new name for the next generation ZWCAD – the alternative that offers the closest

8

AutoCAD® experience and more"; and (iii) "ZWCAD+ was written from scratch with a

9

completely new core (kernel) and two years of intense development."

10

**REQUEST FOR PRODUCTION NO. 33:**

11

All documents reviewed in the course of preparing or relied upon, cited in, identified in,

12

or referred to by your initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil

13

Procedure and Civil Local Rule 16 and your responses to any interrogatories or requests for

14

admission propounded during this Action.

15

**REQUEST FOR PRODUCTION NO. 34:**

16

All documents that support or refute the allegations, denials, and defenses in your June 6,

17

2014 Answer and any amended or substitute answer in this Action.

18

**REQUEST FOR PRODUCTION NO. 35:**

19

All documents that you intend to use, refer to, or cite in any hearing or proceeding in this

20

Action, including trial.

21

22

23

24

25

26

27

28

1

**REQUEST FOR PRODUCTION NO. 36:**

2        All documents relating to your policies and procedures for the retention and destruction of

3    documents, including email, and compliance or noncompliance with such policies and

4    procedures.

5

6    Dated:  July 8, 2014                          MICHAEL A. JACOBS
                                                    RICHARD S.J. HUNG
7                                                   MORRISON & FOERSTER LLP

8
                                                    By: */s/ Richard S. J. Hung*
9                                                         RICHARD S.J. HUNG

10                                                  Attorneys for Plaintiff
                                                    AUTODESK, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California 94105-2482. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on July 8, 2014, I served a copy of:

**AUTODESK, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT GLOBAL FORCE DIRECT, LLC. D/B/A ZWCADUSA (NOS. 1-36)**

☐ **BY FACSIMILE, [Fed. Rule Civ. Proc. rule 5(b)]** by sending a true copy from Morrison & Foerster LLP's facsimile transmission telephone number 415.268.7522 to the fax number(s) set forth below, or as stated on the attached service list. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

I am readily familiar with Morrison & Foerster LLP's practice for sending facsimile transmissions, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be transmitted by facsimile on the same date that it (they) is (are) placed at Morrison & Foerster LLP for transmission.

☐ **BY U.S. MAIL [Fed. Rule Civ. Proc. rule 5(b)]** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 425 Market Street, San Francisco, California 94105-2482 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited with the United States Postal Service on the same date that it (they) is (are) placed at Morrison & Foerster LLP with postage thereon fully prepaid for collection and mailing.

dc-760163

☐ **BY OVERNIGHT DELIVERY [Fed. Rule Civ. Proc. rule 5(b)]** by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows, for collection by UPS, at 425 Market Street, San Francisco, California 94105-2482 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited in a box or other facility regularly maintained by UPS or delivered to an authorized courier or driver authorized by UPS to receive documents on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

☐ **BY PERSONAL SERVICE [Fed. Rule Civ. Proc. rule 5(b)]** by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth below.

I am readily familiar with Morrison & Foerster LLP's practice for the collection and processing of documents for hand delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be taken from Morrison & Foerster LLP's mailroom and hand delivered to the document's addressee (or left with an employee or person in charge of the addressee's office) on the same date that it is placed at Morrison & Foerster LLP's mailroom.

☒ **BY ELECTRONIC SERVICE [Fed. Rule Civ. Proc. rule 5(b)]** by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system to the e-mail address(es) set forth below, or as stated on the attached service list per agreement in accordance with Federal Rules of Civil Procedure rule 5(b).

Charles H. Jung
(charles@njfirm.com)
Kenneth M. Walczak
(ken@njfirm.com)
Nassiri & Jung LLP
47 Kearny Street, Suite 700
San Francisco, CA 94108

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California, this 8th day of July, 2014.

| Cyndi Knisely | Cyndi Knisely |
|---|---|
| (typed) | (signature) |

# EXHIBIT D

中心简介　　中心动态　　司法协助　　交流合作　　政策法规　　国际条约　　办事指南　　环球资讯

**领导介绍**

主　任：张毅

**机构设置**

综合处

司法协助事务处

交流培训事务处

翻译处

**部机关司局**

办公厅

政治部

监狱管理局

劳动教养管理局（戒毒管理局）

法制宣传司

律师公证工作指导司

法律援助工作司

基层工作指导司

社区矫正管理局

国家司法考试司

法制司

研究室

司法协助外事司

计财装备司

机关党委

驻部纪检组监察局

离退休干部局

机关服务中心

### 2010年度上半年中心办理司法协助案件统计

　　2010年上半年，中心协助部外司办理民商事司法协助文书送达案件1024起，调查取证案件37起，其他案件11起；办理刑事司法协助文书送达案件8起，调查取证案件68起，其他案件26起。

（责任编辑：秦静）

关于我们　联系我们　法律声明

中华人民共和国司法部　版权所有

Copyright © 2002 All Rights Reserved

---

## CERTIFICATE OF TRANSLATION

Bing Yan, being duly sworn, deposes and says:

I am fluent in both the English and Chinese languages, and am competent to translate from Chinese into English. I hereby certify that I have reviewed the document entitled Statistics of Judicial Assistance Requests Handled by the Center in First Half of 2010 in the Chinese language, and that the attached translation is a true and complete translation to the best of my knowledge, ability and belief.

Bing Yan
White & Case LLP

Sworn to before me this 17
day of May, 2011 in New
York, New York

NOTARY PUBLIC

**KATHRYN SWISHER**
Notary Public, State of New York
No. 01SW6212961
Qualified in New York County
Commission Expires Oct. 26, 2013

*http://www/moj.gov.cn/*

[Seal of the People's Republic of China]          **Judicial Assistance Center**

*[tabs – not translated]*

*[links in left-hand column – not translated]*

Statistics of Judicial Assistance Requests Handled by the Center in First Half of 2010

In the first half of 2010, the Center has provided assistance to the Foreign Affairs Department of the Ministry of Justice in respect of judicial assistance requests for civil and commercial cases including service of process for 1,024 cases, investigation and evidence collection for 37 cases and 11 other cases, and in respect of judicial assistance requests for criminal cases including service of process for 8 cases, investigation and evidence collection for 68 cases, and 26 other cases.

(Executive Editor：  Qin Jing)

**About Us      Contact Us      Legal Notice**

People's Republic of China Ministry of Justice    All Rights Reserved

Copyright © 2002 All Rights Reserved

# EXHIBIT E

LAEL D. ANDARA (SBN 217909)
BROCK R. LYLE (SBN 242690)
MARIE E SOBIESKI (SBN 278008)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone:      (650) 364-8200
Facsimile:      (650) 780-1701
Email:          lael.andara@rmkb.com
                brock.lyle@rmkb.com
                marie.sobieski@rmkb.com

Attorneys for Defendants
ZWCAD SOFTWARE CO., LTD and
ZWCAD DESIGN CO., LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTODESK, INC., | CASE NO. 3:14-cv-01409-EJD |
| Plaintiff, | **[PROPOSED] MODIFICATION TO PROTECTIVE ORDER FOR LITIGATION INVOLVING HIGHLY SENSITIVE CONFIDENTIAL INFORMATION AND/OR TRADE SECRETS** |
| v. | |
| ZWCAD SOFTWARE CO. LTD., ZWCAD DESIGN CO., LTD., and GLOBAL FORCE DIRECT, LLC. (doing business as ZWCADUSA), | |
| Defendants. | Judge: Honorable Edward J. Davila |

## PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the undersigned parties have stipulated and agreed to the terms and entry of, and the Court hereby orders the parties to abide by, this Protective Order. Information subject to this Protective Order may be used only for the purposes of this litigation.

**1.    PURPOSE**

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 14.3, below, that **this Stipulated Protective Order does not entitle them to file confidential information under seal**; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the Court to file material under seal.

**2.**    **DEFINITIONS**

**2.1**    **Challenging Party:** A Party or Non-Party that challenges the designation of information or items under this Order.

**2.2**    **"CONFIDENTIAL" Information or Items**: Information, documents, or portions of documents (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection because they contain sensitive personal information, trade secrets, or research, development, or commercial information, as defined under Federal Rule of Civil Procedure 26(c). Depending on the degree of protection warranted, "CONFIDENTIAL— ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—SOURCE CODE."

**2.3**    **Counsel** (without qualifier): Outside Counsel of Record and In-House Counsel (as well as their support staff, including paralegals, paralegal clerks, legal interns, and legal assistants).

**2.4**    **Designated In-House Counsel**: In-House Counsel who seek access to "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information in this matter.

**2.5**    **Designating Party**: A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE".

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**2.6**     **Disclosure or Discovery Material**: All items or information, regardless of the medium or manner in which they are generated, stored, or maintained (including but not limited to testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

**2.7**     **Document:** "Document" and "documents" as used herein have the broadest possible meaning under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001, and include the broadest construction under those Rules of "electronically stored information," "writings," "recordings," or "photographs."

**2.8**     **Expert**: A person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor, and (4) has no direct or monetary interest in the outcome of the litigation.

**2.9**     **"CONFIDENTIAL – ATTORNEYS' EYES ONLY"** **Information or Items**: Extremely sensitive "Confidential Information or Items," representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means. By definition, data designated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE," will be encrypted by the Receiving Party and the Receiving Party shall provide the Producing Party a list of individuals who have had access to the data as part of this litigation. If additional individuals are given access to such data, the Receiving Party shall provide the Producing Party with a list of such individuals within ten (10) days of those individuals' access to the data.

**2.10**     **"HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items**: Extremely sensitive "Confidential Information or Items" representing computer code and/or

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.  By definition, data designated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE," will be encrypted by the Receiving Party and the Receiving Party shall provide the Producing Party a list of individuals who have had access to the data as part of this litigation. If additional individuals are given access to such data, the Receiving Party shall provide the Producing Party with a list of such individuals within ten (10) days of those individuals' access to the data.  Any SOURCE CODE produced in this litigation will be treated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY," until such time as designated otherwise by the Producing Party.

2.11   **In-House Counsel:** Attorneys who are employees of a party to this action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.12   **Non-Party**: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.13   **Outside Counsel of Record**: Attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and/or have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.14   **Party**: Any party to this action, including all of its officers, directors, employees, consultants, and retained experts. Except where otherwise specified, the term "Party" does NOT include Outside Counsel of Record or their support staffs.

2.15   **Producing Party**: A Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.16   **Professional Vendors**: Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**2.17**   **Protected Material**: Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," "CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE CODE."

**2.18**   **Receiving Party**: A Party that receives Disclosure or Discovery Material from a Producing Party.

**3.**   **SCOPE**

The protections conferred by this Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. The protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record when unsealed or filed on the public docket by the Court, or through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  In the event of a dispute as to the "public" status of information, the burden shall be on the Party challenging the designation to establish that said information is in the public domain and/or was known to the Receiving Party prior to disclosure by the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

**4.**   **DURATION**

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action,

including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

**5.     DESIGNATING PROTECTED MATERIAL**

**5.1     Exercise of Restraint and Care in Designating Material for Protection**. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.   To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order. By Designating a document, information, or item for protection as "CONFIDENTIAL," the Designating Party avers that it can and would make a showing to the Court sufficient to justify entry of a protective order covering that document or portion thereof under Rule 26(c) of the Federal Rules of Civil Procedure.

(a) Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

(b) If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

**5.2     Manner and Timing of Designations**. Except as otherwise provided in this Order (see e.g., section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)     **_For information in documentary form_** (e.g., paper or electronic

Ropers Majeski Kohn & Bentley
*A Professional Corporation*
Redwood City

documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE CODE" to each page that contains protected material, whenever possible prior to production. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted. If designation is not possible prior to the production, the Producing Party shall make the designation within twenty (20) days after disclosure. All documents produced with a Bates label shall be treated as at least "CONFIDENTIAL" for the first fifteen (15) days after production by a Party.

(b)     A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the materials made available for inspection shall be deemed "**CONFIDENTIAL—ATTORNEYS' EYES ONLY**." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE CODE") to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(c)     *For testimony given in deposition or in other pretrial or trial proceedings*, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating

Party **may invoke on the record** (before the deposition, hearing, or other proceeding is concluded) a right to have **up to** thirty (30) days after receipt of the transcript to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the thirty (30) days shall be covered by the provisions of this Order. Alternatively, a Designating Party may specify, at the deposition or up to thirty (30) days after receipt of the transcript afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL,"  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

(d)      Parties shall give the other parties notice if they reasonably expect a deposition, hearing, or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. **The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "CONFIDENTIAL–ATTORNEYS' EYES ONLY."**

(e)      Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared after the 30-day period for designation has been invoked shall be treated during that period as if it had been designated " CONFIDENTIAL–ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(f)      *For information produced in some form other than documentary and for any other tangible items*, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," " CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

CODE." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

Source Code will be presumed "CONFIDENTIAL–ATTORNEYS' EYES ONLY" until produced with a different designation and encrypted in digital form as referenced by definition. To the extent the Requesting Party requires production of Source Code, upon or after Inspection, any production will be subject to the Requesting Party proving a good faith basis for the print out of any portion of the Source Code. Should Producing Party object to the production, prior to production the Producing Party shall have fourteen (14) days to request judicial intervention of the objection as set forth below in section 6.3, or withdraw its objection and produce the requested information.

**5.3     Inadvertent Failures to Designate**. Inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. To allow the parties to correct inadvertent failures to designate, all documents produced with a Bates number shall be treated as at least "CONFIDENTIAL" for the first fifteen (15) days after production by a Party. In the event a Designating Party inadvertently fails to designate qualified material as "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL–SOURCE CODE" in accordance with the forgoing procedures, the Designating Party shall provide supplemental written notice designating the material under the appropriate confidentiality designation as soon as practicable. Upon receipt of such supplemental written notice, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

**6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS**

**6.1     Timing of Challenges**. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

**6.2**    **Meet and Confer**. The Challenging Party shall initiate the dispute resolution process consistent with Civil L.R. 37-1, by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of this Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within fourteen (14) days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

**6.3**    **Judicial Intervention**. The Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portion thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph. The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. All parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge. ///
///

7. **ACCESS TO AND USE OF PROTECTED MATERIAL**

**7.1    Basic Principles**. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 16 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. **Data designated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY" and/or "HIGHLY CONFIDENTIAL–SOURCE CODE,"** will be encrypted by the Receiving Party and the Receiving Party shall provide the Producing Party a list of individuals who have had access to the data as part of this litigation. If additional individuals are given access to such data, the Receiving Party shall provide the Producing Party with a list of such individuals within ten (10) days of their access to the data.  Any SOURCE CODE produced in this litigation will be treated as "CONFIDENTIAL–ATTORNEYS' EYES ONLY," until such time as designated otherwise by the Producing Party.

**7.2    Disclosure of "CONFIDENTIAL" Information or Items**. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    The Receiving Party's Outside Counsel of Record in this action, including support staff, paralegals, paralegal clerks, legal interns, and legal assistants, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b)    The officers, directors, and employees (including In-House Counsel and support staff, paralegals, paralegal clerks, legal interns, and legal assistants) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     The Court and its personnel;

(e)     Court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)     During their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

During their depositions, witnesses to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

**(g)**     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

**7.3     Disclosure of "CONFIDENTIAL–ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL–SOURCE CODE" Information or Items**. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE" only to:

(a)     The Receiving Party's Outside Counsel of Record in this action, including support staff, paralegals, paralegal clerks, legal interns, and legal assistants, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

(b)     For "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information, but **not** "HIGHLY CONFIDENITIAL—SOURCE CODE": Designated In-House Counsel of the Receiving Party (1) who have no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed;

(c)     Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed;

(d)     The Court and its personnel;

(e)     Court reporters and their staff, professional jury or trial consultants,  and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(f)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

**7.4     Procedures for Approving or Objecting to Disclosure of "CONFIDENTIAL– ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE" Information or Items to Counsel or Experts**.

(a)     Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Counsel any information or item that has been designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated In-House Counsel and the city and state of his or her residence, and (2) describes the Designated In-House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if In-House Counsel is involved, or may become involved, in any competitive decision-making.

///

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

(b)      Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "CONFIDENTIAL–ATTORNEYS' EYES ONLY" **or** "HIGHLY CONFIDENTIAL–SOURCE CODE" pursuant to paragraph 7.3(c) first must make a written request to the Designating Party that (1) identifies the general categories of "CONFIDENTIAL–ATTORNEYS' EYES ONLY" **or** "HIGHLY CONFIDENTIAL–SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years[1], and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five (5) years[2].A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Counsel or Expert unless, within fourteen (14) days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based. A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven (7) days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to Designated In-House Counsel or the Expert may file a motion as provided in Civil Local Rule

---

[1] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert shall provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

[2] It may be appropriate in certain circumstances to restrict the Expert from undertaking certain limited work prior to the termination of the litigation that could foreseeably result in an improper use of the Designating Party's "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information.

7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the Court to do so. Any such request must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to Designated In-House Counsel or the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such request must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure. In any such proceeding, the Party opposing disclosure to Counsel or the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated In-House Counsel or Expert.

Failure to object to a proposed outside Expert or consultant shall not preclude any party from later objecting to continued access by that outside Expert or consultant where facts suggest a basis for objecting could not have been discovered by the objecting party within the time for making timely objection. If a later objection is made, no further Protected Matter shall be disclosed to the designated outside Expert or consultant until the matter is resolved by the parties through the meet and confer process, by the Court, or the objecting Party withdraws its objection.

**8.     FOREIGN COLLECTION**

**8.1**     A Federal District Court having personal jurisdiction over a foreign national party has the discretion to allow the employment of the Federal Rules of Civil Procedure or the Hague Convention in conducting pre-trial discovery. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 544 (1987).  Both the discovery rules set forth in the Federal Rules of Civil Procedure and the Hague Convention are the law of the United States.  The Convention draws no distinction between evidence obtained from third parties and that obtained from the litigants themselves, nor does it purport to draw any sharp line between evidence that is "abroad" and evidence that is within the control of a party subject to the jurisdiction of the requesting court. This Order assumes employment of the Federal Rule of Civil

Procedure as modified to advance the goals of FRCP 1 and recognize the interests of Foreign countries to protect their information.

**8.2**     *Aerospatiale* instructs the American courts to "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Id.* at 546. "Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Id.*

**8.3**     There is pending an action with these same parties on similar or the same legal claims now pending in the District Court of the Hague. (Case No. C-09-460412)  The issue of the accused Source Code being exported outside of China was previously considered in the Netherlands litigation. On May 12, 2014, the District Court of the Hague directed the Defendants in this action to submit the Source code of ZWCAD+ 2012 and ZWCAD+ 2014, including the build and master scripts, third party binary components and libraries. The Court appointed the firm Autodesk had proposed, who has provided legal services to Autodesk in that region:

> *Alvarez & Marsal Consulting (Shanghai) Limited, Beijing Branch Unit*
> *1118-21, 11F China World Office I*
> *No. 1 Jianguomenwai Ave., Chaoyang District*
> *Beijing 100004, P.R. China*

The source code was deposited with Alvarez & Marshal by Defendants in May of 2014, and is still retained there. Pursuant to this order, to advance the interests of judicial economy by avoiding wasteful duplication of discovery specific to the Source Code that is at issue in both actions, this Protective Order directs that the Source Code be maintained for Inspection in this action as well. Access to the Source Code in the People's Republic of China ("PRC") is subject to the Federal Rules of Civil Procedure.

///

///

///

1   **9.**     **SOURCE CODE**

2          **9.1**     To the extent production of source code becomes necessary in this case, a

3   Producing Party may designate source code as "HIGHLY CONFIDENTIAL-SOURCE CODE,"

4   if it comprises or includes confidential, proprietary or trade secret source code.

5          **9.2**     Protected Material designated as "HIGHLY CONFIDENTIAL–SOURCE CODE"

6   shall be subject to all of the protections afforded to "CONFIDENTIAL–ATTORNEYS' EYES

7   ONLY" information, and may be disclosed only to the individuals to whom "CONFIDENTIAL–

8   ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 9.3 and

9   9.4.

10         **9.3**     Any source code produced in discovery shall be made available for inspection, in a

11  format allowing it to be reasonably reviewed and searched, during normal business hours or at

12  other mutually agreeable times, at an office of the Producing Party's counsel or another mutually

13  agreed upon location.  The source code shall be made available for inspection on a secured

14  computer in a secured room **without Internet access or network access to other computers**,

15  and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source

16  code onto any recordable media or recordable device. The Producing Party may visually monitor

17  the activities of the Receiving Party's representatives during any source code review, but only to

18  ensure that there is no unauthorized recording, copying, or transmission of the source code. The

19  Producing Party may not monitor audio or the display screens being reviewed as that may violate

20  the work product privilege.

21         **9.4**     The Receiving Party may request paper copies of limited portions of source code

22  that are ***reasonably necessary*** for the preparation of court filings, pleadings, expert reports, or

23  other papers, or for deposition or trial, but shall not request paper copies for the purposes of

24  reviewing the source code other than electronically as set forth in section 9.3 in the first instance.

25  The printed Source Code shall be labeled with "[PRODUCING PARTY'S NAME] HIGHLY

26  CONFIDENTIAL—SOURCE CODE—SUBJECT TO PROTECTIVE ORDER," with relevant

27  Bates Numbering.  Outside Counsel of Record for the Producing Party will keep the originals of

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

these printed documents. The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedures outlined in Section 6 herein, and whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution. Within three (3) business days of the printing of any Source Code, the Producing Party shall either (i) provide copies of the printed Source Code for Outside Counsel of Record for the Receiving Party or (ii) object that the printed portions are excessive or not done for a permitted purpose. Printed portions which exceed ten (10) pages from any source code file, or which exceed five hundred (500) total pages in this action shall be presumed to be excessive and not done for a permitted purposed, although the parties will be reasonable in accommodating requests to print portions exceeding these limits upon a showing of good cause by the Receiving Party.

**9.5**     If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Producing Party shall be entitled to seek the Court's resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose. While any objections to the printed Source Code are pending, the Producing Party shall make available the printed Source Code for inspection in the secure room where its Source Code Computer is located. If the Court overrules the Producing Party's objections to the printed Source Code, the Producing Party shall provide copies of the printed Source Code for Outside Counsel of Record for the Receiving Party on watermarked paper within twenty-four (24) hours of the Court's ruling.

**9.6**     The Receiving Party's Outside Counsel of Record may make no more than five (5) additional paper copies of any portions of the Source Code received from a Producing Party, not including copies attached to court filings or used at depositions. In addition to other reasonable steps to maintain the security and confidentiality of Source Code, printed copies of Source Code maintained by the Receiving Party must be kept in a locked storage container when not being actively reviewed. No more than a total of ten (10) individuals identified by the Receiving Party, including all individuals who have access to the secure room as limited herein, shall have access

to the printed portions of Source Code (except insofar as such code appears in any filing with the Court or expert report in this case). All paper copies of source code shall be securely destroyed if they are no longer necessary in the litigation (e.g., extra copies at the conclusion of a deposition). Copies of Source Code that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

**9.7**     The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party also shall keep a paper log indicating the names of any individuals inspecting paper copies of the Source Code and the dates and times of inspection, and the names of any individuals to whom paper copies of portions of Source Code are provided. The Receiving Party shall maintain all paper copies of any printed portions of the Source Code in a secured, locked area. The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other individual.

**10.     DATA FOR EXPORT INTO THE UNITED STATES**

**10.1**     To the extent production of information from the PRC becomes necessary in this case, a Producing Party may designate said information as "CONFIDENTIAL–ATTORNEYS' EYES ONLY," if it comprises or includes confidential, proprietary or trade secret information.

**10.2**     To the extent information is sought to be exported from outside of the PRC after Inspection by the Receiving Party, the following protocol will be followed to minimize the cost of litigation under FRCP 1. This procedure will also serve to recognize the sovereignty and national

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    interest of the PRC relating to the privacy of its citizens and state secrecy laws, and maintain the

2    ability of the Parties to identify information by inspection as may be needed in this action.

3    **10.3**    Data kept and maintained in the regular course of business by any party to this

4    action in the PRC will be collected and processed in the PRC. Throughout the process U.S.

5    counsel for the Producing Party will oversee the review of said data to be compliant and

6    responsive under the standard articulated under FRCP 26(b).  Having the information reviewed in

7    its native language will minimize cost and risk of export of irrelevant data that could potentially

8    violate PRC privacy or state secrecy laws.

9    **10.4**    After initial review, the responsive information shall be made available for

10    inspection on a secured computer in a secured room without Internet access or network access to

11    other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any

12    portion of the responsive information onto any recordable media or recordable device, pursuant to

13    FRCP 34(b)(2)(B).

14    **10.5**    The Producing Party may visually monitor the activities of the Receiving Party's

15    representatives during any review, but only to ensure that there is no unauthorized recording,

16    copying, or transmission of the information being reviewed.  The Producing Party may not

17    monitor audio or the display screens being reviewed to preserve work product privacy.

18    **10.6**    The Receiving Party will limit their request for the production of responsive

19    information from the PRC to only that information which is reasonably necessary for the

20    preparation of court filings, pleadings, expert reports, other papers, or for deposition or trial.

21    **10.7**    The Producing Party will have thirty (30) days from the Receiving Party's

22    identification of data necessary for export to advise its employees of potential disclosure of

23    information implicating PRC privacy laws.  Under Article 4 of the PRC Labor Contract Law of

24    the People's Republic of China, employers are required to announce to, or otherwise inform their

25    employees of, the rules and important events that are directly related to the interests of the

26    employees. Therefore, the Producing Party will be required to advise all employees as to any

27    email communications or other forms of information that implicate privacy issues that will be

28    provided in the U.S. litigation.

**10.8**    The Producing Party will have sixty (60) days from the Receiving Party's identification of data necessary for export to have any information that local counsel identifies as sensitive information that requires clearance by the PRC authority for export.   According to Article 5, the Administrations for the Protection of State Secrets are the law enforcement government agencies that are charged of safeguarding state secrets. The National Administration for the Protection of State Secrets (NAPSS) is a bureau under the State Council (the central Chinese government), supervising and operating through local Administrations for the Protection of State Secrets (APSS) at the provincial level, the prefecture level, and the county level.

Under Article 2 of the state secrets law, a "state secret" is defined a matters which has a bearing on national security and interests, classified through legal procedures, and to which access is granted to a limited number of persons for a certain period of time. The export of data before it has been reviewed and cleared of sensitive information can violate the state secrets law and subject the company and its attorneys to severe administrative and/or criminal sanctions. Article 34 of the state secrets law articulates a mandatory security clearance and eligibility review if an enterprise or public service unit intends to conduct business involving state secrets, including but not limited to the production, reproduction, maintenance, and destruction of storage media of state secrets, the integration of computer information systems involving state secrets, and the scientific research and production of weapons and equipment.

**10.9**    If such clearance is not received by the PRC within the sixty (60) day time frame referenced, the parties will meet and confer in good faith to determine if the potentially sensitive aspect of the information may be redacted to exclude any potential state secret. If redaction is not possible, the parties will meet and confer in good faith to determine if a stipulation can be reached as to the substance of the information, relevant to the pending action, to obviate the need to export the data. Courts are less inclined to ignore a foreign state's concerns if the outcome of litigation "does not stand or fall on the present discovery order," or if the evidence sought is cumulative. *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1475 (9th Cir. 1992); *In re Rubber Chems. Antitrust Litig.,* 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007).

1    **10.10**  If a dispute still remains as to the export of responsive information outside of the

2    PRC, the parties will submit a joint letter to Magistrate Judge Grewal within five (5) days of a

3    meet and confer, not to exceed five (5) pages: that certifies that counsel for both parties have met

4    and conferred in person; that describes in general the nature of the information sought; states that

5    counsel for the Producing Party certifies that the information qualifies for protection under the

6    PRC law and reference the subject law; and that identifies why a stipulation as to the underlying

7    facts is insufficient.

8    **11.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

9        If a Party is served with a subpoena or a court order issued in other litigation that compels

10   disclosure of any information or items designated in this action as "CONFIDENTIAL" or

11   "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE

12   CODE" that Party must:

13       (i)    promptly notify in writing the Designating Party. Such notification shall

14   include a copy of the subpoena or court order;

15       (ii)    promptly notify in writing the party who caused the subpoena or order to

16   issue in the other litigation that some or all of the material covered by the subpoena or order is

17   subject to this Protective Order. Such notification shall include a copy of this Order; and

18       (iii)    cooperate with respect to all reasonable procedures sought to be pursued by

19   the Designating Party whose Protected Material may be affected.

20       The purpose of imposing these duties is to alert any interested parties to the existence of

21   this Protective Order and to afford the Designating Party in this case an opportunity to try to

22   protect its confidentiality interests in the court from which the subpoena or order issued.

23       If the Designating Party timely seeks a protective order, the Party served with the

24   subpoena or court order shall not produce any information designated in this action as

25   "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY

26   CONFIDENTIAL–SOURCE CODE" before a determination by the court from which the

27   subpoena or order issued, unless the Party has obtained the Designating Party's permission. The

28   Designating Party shall bear the burden and expense of seeking protection in that court of its

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/7715858.4/LB4                                    - 22 -

confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

## 12.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

**12.1**   The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL," "CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL–SOURCE CODE". Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

**12.2**   In the event that a Party is required, by a valid discovery request, subpoena, or order, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(i)   promptly, and in no event more than three (3) days after receipt of the request, subpoena, or order notify in writing the Designating Party. Such notification shall include a copy of the request, subpoena or order;

(ii)   promptly, and in no event more than three (3) days after receipt of the request, subpoena, or order notify in writing the party who caused the request, subpoena, or order to issue in the other litigation that some or all of the material covered by the request, subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Order; and

(iii)   make the information requested available for inspection by the Non-Party;

(iv)   If the Non-Party fails to object or seek a protective order from this Court within fourteen (14) days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court. The purpose of this provision is to alert the interested parties to the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

existence of confidentiality rights of a Non-Party an opportunity to protect its confidentiality interests in this court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

**13.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve and return all unauthorized copies of the Protected Material and delete or otherwise destroy all copies, (c) inform the person or persons to whom unauthorized disclosures were made of all of the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

**14.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

**14.1**     Production of information that is privileged or otherwise immune from discovery shall be entitled to the protections of Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502. If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return or destroy the specified information and any copies it has and may not sequester, use, or disclose the information until the claim is resolved. This includes a restriction against presenting the information to the court for a determination of the claim. The party asserting the privilege is not required to make a showing prior to the return of the designated material.

**14.2     The Receiving Party will return such inadvertently-produced item or items of information and destroy copies thereof within ten (10) days** of receiving a written request for the return of such item or items of information. The party having returned such inadvertently-produced item or items of information may thereafter, without asserting waiver because of the

inadvertent production, seek production of any such documents in accordance with the Federal Rules of Civil Procedure.

**15.    MISCELLANEOUS**

    **15.1    Right to Further Relief**. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

    **15.2    Right to Assert Other Objections**. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Order.

    **15.3    Privilege Logs**. Counsel for a party may withhold documents from production as exempt from discovery because such documents are protected from disclosure under the attorney-client privilege or work product doctrine of FRCP 26(b), or any other applicable privilege or immunity. For documents so withheld, the party withholding the documents shall prepare a log consistent with FRCP 26(b)(5) identifying each document withheld, the protection claimed, and the basis for the protection. Counsel for either party need not list in any such log any privileged documents or communications between their firm and their client created after the filing of this action.

    **15.4    Filing Protected Material**. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil L.R. 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil L.R. 79-5, a sealing order will issue only upon a request showing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil L.R. 79-5(d) is denied by the Court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil L.R. 79-5(e) unless otherwise instructed by the Court.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    **15.5** This Protective Order shall be binding upon the parties and their attorneys,

2    successors, executors, personal representatives, administrators, heirs, legal representatives,

3    assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or

4    organizations over which they have control.

5    **15.6** The party or parties receiving Protected Material shall not under any circumstances

6    sell, offer for sale, advertise, or publicize Protected Material or any information contained therein.

7    **16.   FINAL DISPOSITION**

8    Within 60 days after the final disposition of this action, as defined in paragraph 4, each

9    Receiving Party must return all Protected Material to the Producing Party or destroy such

10   material. As used in this subdivision, "all Protected Material" includes all copies, abstracts,

11   compilations, summaries, and any other format reproducing or capturing any of the Protected

12   Material. Whether the Protected Material is returned or destroyed, the Receiving Party must

13   submit a written certification to the Producing Party (and, if not the same person or entity, to the

14   Designating Party) by the 60-day deadline (1) identifies (by category, where appropriate) all the

15   Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not

16   retained any copies, abstracts, compilations, summaries or any other format reproducing or

17   capturing any of the Protected Material. Notwithstanding this provision, Outside Counsel of

18   Record are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition,

19   and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert

20   reports, attorney work product, and consultant and expert work product, but not an opposing or

21   third party's production, even if such materials contain Protected Material. Any such archival

22   copies that contain or constitute Protected Material remain subject to this Protective Order as set

23   forth in Section 4 (DURATION).

24   IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   Dated:  December 19, 2014                MORRISON & FOERSTER

2

3                                           By:_____
                                                MICHAEL A. JACOBS
4                                               RICHARD S.J. HUNG
                                                Attorneys for Plaintiff
5                                               AUTODESK, INC.

6
    Dated:  December 19, 2014                ROPERS, MAJESKI, KOHN & BENTLEY
7

8
                                            By: _____
9                                               LAEL D. ANDARA
                                                BROCK R. LYLE
10                                              MARIE E SOBIESKI
                                                Attorneys for Defendants
11                                              ZWCAD SOFTWARE CO., LTD. and
                                                ZWCAD DESIGN CO., LTD.
12

13  Dated:  December 19, 2014                NASSIRI & JUNG LLP

14

15                                          By: _____
                                                CHARLES H. JUNG
16                                              KENNETH M. WALCZAK
                                                Attorneys for Defendants
17                                              GLOBAL FORCE DIRECT, LLC

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# EXHIBIT A

## *ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND*

I, _____ [print or type full name], of

_____ [print or type full address], declare *under penalty of perjury* that I

have read in its entirety and understand the Stipulated Protective Order that was issued by the

United States District Court for the Northern District of California on December __, 2014 in the

case of *Autodesk, Inc. v. ZwCAD Software Co., Ltd., et al.,* Case No. 3:14-cv-01409-EDL.

I agree to comply with and to be bound by all the terms of the Stipulated

Protective Order and I understand and acknowledge that failure to so comply could expose me

to sanctions and punishment in the nature of contempt.

I solemnly promise that I will not disclose in any manner any information or

item that is subject to the Stipulated Protective Order to any person or entity except in strict

compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for

the Northern District of California for the purpose of enforcing the terms of the Stipulated

Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of

_____ [print or type full address and telephone

number] as my California agent for service of process in connection with this action or any

proceedings related to enforcement of the Stipulated Protective Order.

Date: _____

City and State where sworn and signed:   _____

Printed name: _____
                        [*printed name*]

Signature:   _____
                        [*signature*]

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

**IT IS SO ORDERED**

2

Dated: December _____, 2014          By: _____

3

HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28