LAEL D. ANDARA (SBN 217909)
BROCK R. LYLE (SBN 242690)
MARIE E SOBIESKI (SBN 278008)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone:   (650) 364-8200
Facsimile:   (650) 780-1701
Email:       lael.andara@rmkb.com
             brock.lyle@rmkb.com
             marie.sobieski@rmkb.com

Attorneys for Defendants
ZWCAD SOFTWARE CO., LTD and
ZWCAD DESIGN CO., LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTODESK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ZWCAD SOFTWARE CO. LTD., ZWCAD DESIGN CO., LTD., and GLOBAL FORCE DIRECT, LLC. (doing business as ZWCADUSA),<br><br>Defendants. | CASE NO. 3:14-cv-01409-EDL<br><br>**DECLARATION OF LAEL D. ANDARA IN SUPPORT OF DEFENDANTS' ZWCAD SOFTWARE CO., LTD. AND ZWCAD DESIGN CO., LTD.'S MOTION TO ADOPT OF THE HAGUE CONVENTION TO OBTAIN FOREIGN DISCOVERY, OR IN THE ALTERNATIVE, TO MODIFY THE PROTECTIVE ORDER TO AVOID CONFLICTS WITH FOREIGN LAW**<br><br>Judge: Honorable Edward J. Davila |

I, Lael D. Andara, hereby declare as follows:

1. I am a partner in the law firm of Ropers Majeski Kohn & Bentley, counsel for defendants ZWCAD SOFTWARE CO. LTD. and ZWCAD DESIGN CO., LTD., in this action. I am a member in good standing of the California State Bar and this Court. I have personal knowledge of the facts stated here and am familiar with the documents referred to below.

RC1/7726642.2/LB4

DECLARATION OF LAEL D. ANDARA IN SUPPORT OF
ZWSOFT'S MOTION FOR ENTRY OF A PROTECTIVE ORDER
– CASE NO. 3:14-CV-01409-EDL

2. If called as a witness, I would competently testify to the following facts, all of which are within my own personal knowledge.

3. On **October 7, 2014**, ZWCAD Software Co., Ltd. and ZWCAD Design Co., Ltd. filed respective Waivers of the Service of Summons.

4. On **October 21, 2014**, the case was reassigned to Judge Hon. Edward J. Davila and Magistrate Judge Paul Singh Grewal.

5. On or about **November 25, 2014**, I received a call from counsel for Autodesk, Diana Kruze. I mentioned on that call my concern over the production of my clients source code and business data being exported from the People's Republic of China ("PRC") as they had previously expressed to Autodesk, in on almost identical case pending in the District Court of the Hague. I indicated that I would be amending the Protective Order previously entered before my client was a party to this action to address this issue and language relating to the encryption of the data. I indicated I was making efforts to coordinate a trip to the PRC to investigate the information necessary to conduct a Rule 26 (f) conference and the ESI local rules and hoped to be prepared to proceed with such a meeting at the end of January.

6. On **December 3, 2014**, my law partner Brock Lyle sent Autodesk the [Proposed] Amended Protective Order for review and comment. *Attached hereto as **Exhibit A** is a true and correct copy of the [Proposed] Amended Protective Order sent on December 3, 2014.*

7. In the proposed Protective Order I specifically laid out a proposed protocol under section 10 to balance the interests and policies of the Federal Rules of Civil Procedure and the risks of disclosure of data potentially barred by the PRC blocking statutes.

8. On **December 5, 2014**, the parties decided that a conference call to discuss the [Proposed] Amended Protective Order would be needed.

9. On **December 5, 2014**, at or about 11:48 a.m., I sent an electronic communication to counsel for Autodesk with the following request: *"we would request Autodesk agree to stipulate that data being sought from China will follow the Hague Convention protocol and not the FRCP."*

1    10.    On **December 10, 2014**, I was forwarded an email sent by counsel for Autodesk, but not addressed or CC's to me directly, that attached Autodesk's redline of the [Proposed] Amended Protective Order. *Attached hereto as* **Exhibit B** *is a true and correct copy of Autodesk's redline of the [Proposed] Amended Protective Order received on December 10, 2014.*

11.    Autodesk had relined all my additions directed to Encryption to maintain the security of produced data (as referenced on pages 3, 4 and 11) and completely deleted section 10 devoted to balancing the interests of the PRC to the needs of this litigation:

   10    DATA FOR EXPORT INTO THE UNITED STATES

   *10.1    To the extent production of information from the PRC becomes necessary in this case, a Producing Party may designate said information as "CONFIDENTIAL–ATTORNEYS' EYES ONLY," if it comprises or includes confidential, proprietary or trade secret information.*

   *10.2    To the extent information is sought to be exported from outside of the PRC after Inspection by the Receiving Party, the following protocol will be followed to minimize the cost of litigation under FRCP 1. This procedure will also serve to recognize the sovereignty and national interest of the PRC relating to the privacy of its citizens and state secrecy laws, and maintain the ability of the Parties to identify information by inspection as may be needed in this action.*

   *10.3    Data kept and maintained in the regular course of business by any party to this action in the PRC will be collected and processed in the PRC. Throughout the process U.S. counsel for the Producing Party will oversee the review of said data to be compliant and responsive under the standard articulated under FRCP 26(b). Having the information reviewed in its native language will minimize cost and risk of export of irrelevant data that could potentially violate PRC privacy or state secrecy laws.*

   *10.4    After initial review, the responsive information shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the responsive information onto any recordable media*

or recordable device, pursuant to FRCP 34(b)(2)(B).

10.5   The Producing Party may visually monitor the activities of the Receiving Party's representatives during any review, but only to ensure that there is no unauthorized recording, copying, or transmission of the information being reviewed.  The Producing Party may not monitor audio or the display screens being reviewed to preserve work product privacy.

10.6   The Receiving Party will limit their request for the production of responsive information from the PRC to only that information which is reasonably necessary for the preparation of court filings, pleadings, expert reports, other papers, or for deposition or trial.

10.7   The Producing Party will have thirty (30) days from the Receiving Party's identification of data necessary for export to advise its employees of potential disclosure of information implicating PRC privacy laws.  Under Article 4 of the PRC Labor Contract Law of the People's Republic of China, employers are required to announce to, or otherwise inform their employees of, the rules and important events that are directly related to the interests of the employees. Therefore, the Producing Party will be required to advise all employees as to any email communications or other forms of information that implicate privacy issues that will be provided in the U.S. litigation.

10.8   The Producing Party will have ninety (90) days from the Receiving Party's identification of data necessary for export to have any information that local counsel identifies as sensitive information that requires clearance by the PRC authority for export.  According to Article 5, the Administrations for the Protection of State Secrets are the law enforcement government agencies that are charged of safeguarding state secrets. The National Administration for the Protection of State Secrets (NAPSS) is a bureau under the State Council (the central Chinese government), supervising and operating through local Administrations for the Protection of State Secrets (APSS) at the provincial level, the prefecture level, and the county level.  Under Article 2 of the state secrets law, a "state secret" is defined a matters which has a bearing on national security

*and interests, classified through legal procedures, and to which access is granted to a limited number of persons for a certain period of time. The export of data before it has been reviewed and cleared of sensitive information can violate the state secrets law and subject the company and its attorneys to severe administrative and/or criminal sanctions. Article 34 of the state secrets law articulates a mandatory security clearance and eligibility review if an enterprise or public service unit intends to conduct business involving state secrets, including but not limited to the production, reproduction, maintenance, and destruction of storage media of state secrets, the integration of computer information systems involving state secrets, and the scientific research and production of weapons and equipment.*

10.9 *If such clearance is not received by the PRC within the time frame referenced, the parties will meet and confer in good faith to determine if the potentially sensitive aspect of the information may be redacted to exclude any potential state secret. If redaction is not possible, the parties will meet and confer in good faith to determine if a stipulation can be reached as to the substance of the information, relevant to the pending action, to obviate the need to export the data. Courts are less inclined to ignore a foreign state's concerns if the outcome of litigation "does not stand or fall on the present discovery order," or if the evidence sought is cumulative. Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1475 (9th Cir. 1992); In re Rubber Chems. Antitrust Litig., 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007).*

10.10 *If a dispute still remains as to the export of responsive information outside of the PRC, the parties will submit a joint letter to Magistrate Judge Grewal within five (5) days of a meet and confer, not to exceed five (5) pages: that certifies that counsel for both parties have met and conferred in person; that describes in general the nature of the information sought; states that counsel for the Producing Party certifies that the information qualifies for protection under the PRC law and reference the subject law; and that identifies why a stipulation as to the underlying facts is insufficient.*

12. On or about **November 5, 2014**, I received a copy of AUTODESK, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT GLOBAL FORCE DIRECT, LLC. d/b/a ZWCADUSA (NOS. 1-36). *Attached hereto as **Exhibit C** is a true and correct copy of AUTODESK, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT GLOBAL FORCE DIRECT, LLC. d/b/a ZWCADUSA (NOS. 1-36).*

13. On **December 10, 2014**, the parties held a telephonic conference to discuss the [Proposed] Amended Protective Order. Autodesk, Inc. was represented by Diana Kruze and Jason Bartlett; Global Force Direct, LLC. was represented by Kenneth Walczak; and ZWCAD Software Co., Ltd. and ZWCAD Design Co., Ltd. were represented by myself and an Marie Sobieski.

14. During the conversation, ZWSoft requested that Autodesk agree to stipulate that data being sought from the People's Republic of China (the "PRC") would follow the Hague Convention protocol and not the FRCP. Autodesk declined.

15. The conversation then shifted to the applicability of the [Proposed] Amended Protective Order. Autodesk indicated that they would object to having to go to the PRC to inspect data. We discussed the fact that the District Court of the Hague had ordered the accused source code and related information to be deposited for review with a firm identified and vouched for by Autodesk in the PRC. We discussed that the Source Code and related information were in fact currently being held at that location and could be used in this litigation. Autodesk objected to being required to only having the Source Code in the PRC and indicated that it should also be produced in the United States. Autodesk asserted that having to review the Source Code only in China would be a substantial burden. I indicated that to have two copies of the source code would by definition make it less secure, and furthermore as we had referenced in our Motion to Dismiss, the accused Source Code had functionality not found in the Autodesk product and therefore we should not presume the whole of the Source Code would be subject to review. A discussion was then had as to the practicality of breaking up the code.

16. Ultimately the December 10, 2014, call ended without agreement as to the Hague Convention or the [Proposed] Amended Protective Order. The Parties agreed that this was an issue that should be brought to the Court's attention as soon as practicable.

1       17.     In reviewing the relevant case of Tiffany (NJ) LLC et al v. Andrew et al I pulled
2   and reviewed docket 24 and exhibits. *Attached hereto as **Exhibit D** is a true and correct copy of*
3   *Exhibit C to the Declaration of Dwight A. Healy .*
4       18.     For purposes of the Motion to which this declaration is in support of I have made
5   one substantive change to the [Proposed] Amended Protective Order originally sent to Autodesk
6   on December 3, 2014.  The change impacts sections 10.8 and 10.9 as it further limits it from the
7   proposed 90 days to 60 days:

> 10.8    *The Producing Party will have* ~~ninety (90)~~ *sixty (60) days from the Receiving Party's identification of data necessary for export to have any information that local counsel identifies as sensitive information that requires clearance by the PRC authority for export.  According to Article 5, the Administrations for the Protection of State Secrets are the law enforcement government agencies that are charged of safeguarding state secrets. The National Administration for the Protection of State Secrets (NAPSS) is a bureau under the State Council (the central Chinese government), supervising and operating through local Administrations for the Protection of State Secrets (APSS) at the provincial level, the prefecture level, and the county level.  Under Article 2 of the state secrets law, a "state secret" is defined a matters which has a bearing on national security and interests, classified through legal procedures, and to which access is granted to a limited number of persons for a certain period of time. The export of data before it has been reviewed and cleared of sensitive information can violate the state secrets law and subject the company and its attorneys to severe administrative and/or criminal sanctions. Article 34 of the state secrets law articulates a mandatory security clearance and eligibility review if an enterprise or public service unit intends to conduct business involving state secrets, including but not limited to the production, reproduction, maintenance, and destruction of storage media of state secrets, the integration of computer information systems involving state secrets, and the scientific research and production of weapons and equipment.*

*10.9     If such clearance is not received by the PRC within the ~~time frame~~ <u>sixty (60) day time frame</u> referenced, the parties will meet and confer in good faith to determine if the potentially sensitive aspect of the information may be redacted to exclude any potential state secret. If redaction is not possible, the parties will meet and confer in good faith to determine if a stipulation can be reached as to the substance of the information, relevant to the pending action, to obviate the need to export the data. Courts are less inclined to ignore a foreign state's concerns if the outcome of litigation "does not stand or fall on the present discovery order," or if the evidence sought is cumulative. Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1475 (9th Cir. 1992); In re Rubber Chems. Antitrust Litig., 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007).*

Attached hereto as **Exhibit E** *is a clean copy of the [Proposed] Amended Protective Order with the change referenced in paragraph 17 above.*

I declare under the penalty of perjury under federal law that the following is true and correct, and that I executed this Declaration on December 19, 2014, Redwood City, California.

*[signature]*
LAEL D. ANDARA