LAEL D. ANDARA (SBN 217909)
BROCK R. LYLE (SBN 242690)
MARIE E SOBIESKI (SBN 278008)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone:    (650) 364-8200
Facsimile:    (650) 780-1701
Email:        lael.andara@rmkb.com
              brock.lyle@rmkb.com
              marie.sobieski@rmkb.com

Attorneys for Defendants
ZWCAD SOFTWARE CO., LTD and
ZWCAD DESIGN CO., LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTODESK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ZWCAD SOFTWARE CO. LTD.,<br>ZWCAD DESIGN CO., LTD., HK<br>ZWCAD SOFTWARE LTD., and<br>GLOBAL FORCE DIRECT, LLC. (doing business as ZWCADUSA),<br><br>Defendants. | CASE NO. 3:14-cv-01409-EJD<br><br>**REPLY IN SUPPORT OF REQUEST OF ADOPTION OF THE HAGUE CONVENTION TO OBTAIN FOREIGN INFORMATION, OR IN THE ALTERNATIVE, TO MODIFY THE PROTECTIVE ORDER TO AVOID CONFLICT WITH FOREIGN LAW**<br><br>Date:      February 10, 2015<br>Time:      10:00 a.m.<br>Judge:     Hon. Paul Singh Grewal<br>Courtroom: 5 |

This is a case about copying source code. The key information, as admitted in Autodesk's Opposition, *is* the source code: "*ensuring timely source code production is the best means available to precipitate the efficient resolution of this dispute*." Opposition at 13. ZWSoft agrees. It merely asks that the security of that proprietary information be considered, as well as the reality that the source code is already available in Beijing. The Court of the Hague created the framework for a single location for source code review, and under which Autodesk selected both the location and the firm to act as a repository. Yet Autodesk is unwilling to review it there, even though ZWSoft has agreed to allow access for purposes of this case.

RC1/7758693.3/RS — 1 — REPLY IN SUPPORT OF REQUEST OF ADOPTION OF THE HAGUE CONVENTION CASE NO. 3:14-CV-01409 EJD

In addition to source code, Autodesk will seek peripheral documents, including emails and marketing information. That information does not have the same importance as the source code. Discovery of such information cannot be weighted equally, and greater care should be taken before removing it from the People's Republic of China ("PRC"), when evaluating its importance against the burden on ZWSoft. In addition, a significant portion of information in the PRC has already been produced by co-defendant Global Force Direct, Inc., who does business within the United States. As such, ZWSoft has proposed a proportional structure that balances the importance of the information with the burden on ZWSoft and potential risk associated with PRC blocking statutes.

Despite having intellectual property attorneys in its offices in Beijing and Shanghai[1], Autodesk claims extreme hardship to review and copy information in the PRC. Autodesk accuses the defendants of delay by addressing these issues at the outset of the litigation. *See Declaration of Lael D. Andara,* at ¶ 9-11 ("Andara Decl.").

## I. MERIT OF PLAINTIFFS CLAIMS AS RELEVANT TO DISCOVERY CONCERNS

ZWSoft brought its Motion to Dismiss [Docket 48] because Autodesk has failed to state a claim upon which relief can be granted, with the goal of broad exploration into the proprietary information of a competitor with the aim of finding evidence of copying after the fact. In order to allow ZWSoft to adequately prepare a defense, plaintiff must, at some point, specifically disclose the elements of source code it believes were copied and prove that those elements were protected by law. While helpful, Autodesk's initial list of non-literal element in the form of errors, esoteric commands, and typos is wholly insufficient to put ZWSoft on notice of its alleged infringement of specific source code. *Atari Games Corp. v. Nintendo of Am.*, 1993 U.S. Dist. LEXIS 8183, *11-12. (N.D. Cal. Apr. 15, 1993). *See also Design Data Corp. v. Unigate Enter., Inc.,* 2014 U.S. Dist. LEXIS 108632, (N.D. Cal. Aug. 6, 2014. It is a unreasonable to allow Autodesk unfettered discovery of a competitor without first identifying what specific software source code is at issue.

---

[1] Morrison & Foerster's website lists "Intellectual Property and Litigation" as one of the "Key Practice Areas" for attorneys in its PRC offices. http://www.mofo.com/practices/services/international/china

Much like two sentences can convey the same information yet be written with different words, source code can be drafted differently to provide the same functions. *Declaration of Wang Guojin in Support of the Motion to Dismiss*, ¶6. Functions across programs may be coded similarly without copying, which may in turn give rise to similar bugs, quirks, and other idiosyncrasies. *Id.* To assume that similarities must evidence copying is erroneous. *Id.* at ¶8. Further, while the source code may be protectable, the results rendered to the user are not.

ZWSoft does not believe they are guilty until proven innocent, yet Autodesk is asserting a presumption of guilt. Plaintiffs have the burden to show infringement, but instead have only generally alleged what has been infringed and demand an unlimited license for discovery: "*And if there really were some innocent explanation for why ZWCAD+ has the same bugs, errors, and typos as AutoCAD 2007 and 2008, then its source code production would allow ZWSOFT to exonerate itself.*" Opposition at 13.

Autodesk conflates literal (i.e. source code) and non-literal (i.e. error screens, outward appearance) elements of computer programs, and in doing so, hopes to support an argument for misappropriation of literal elements based exclusively on unmoored non-literal examples. Autodesk has not specifically cited a single protected literal element of the AutoCAD program that has been infringed, and instead will rely on overbroad discovery requests in hopes of finding elements to support its claims. Such a fishing license should take into consideration and compare the risks and burdens imposed on both parties.

## II.     INSPECTION OF DOCUMENTS IN THE PEOPLE'S REPUBLIC OF CHINA

Autodesk clearly and repeatedly indicates it will serve discovery as soon as possible. The Federal Rules of Civil Procedure ("FRCP") do not require document production in the form Autodesk demands. Rather, they allow for inspection of the documents:

> (a) In General: A party may serve on any other party a request within the scope of Rule 26(b):
>
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>
> (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts,

RC1/7758693.3/RS       - 3 -       **REPLY IN SUPPORT OF REQUEST OF ADOPTION OF THE HAGUE CONVENTION CASE NO. 3:14-CV-01409 EJD**

> photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
>
> (B) any designated tangible things;

FRCP 34. The Federal Civil Rules Handbook summarizes:

> **Inspection, Not Copying**
>
> The producing party is not required to make copies of the documents, just make them available for inspection.[2] The requesting party is entitled to inspect, copy, test, or sample discoverable documents.

Federal Civil Rules Handbook, *Rule 34*. Westlaw, 2013. There is no qualifying statement, and nothing that says inspection must be in the United States. While it requires a requesting party to specify a reasonable location for inspection (Rule 34(b)(1)(B)), it does not require a responding party to produce the documents at whatever location the requestor specifies. Rule 34 permits a responding party to object to the location at which a requestor seeks to have the documents produced, and ZWSoft has done so by offering to produce them where they are created and maintained in the normal course of business. *See Petro v. Lighting Serv.*, 2009 U.S. Dist. LEXIS 55096 (S.D. Ohio June 29, 2009)(Defendant's response that it will produce the documents in the manner in which and at the place where they are kept in the ordinary course of its business is a valid response.)(*See also* Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d at § 2213); *Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 611, 620 (D. Kan. 2005) (stating that "under Rule 34, a responding party need only make requested documents available for inspection and copying; it need not pay the copying costs[,]" and requiring plaintiffs to reimburse defendant for reasonable copying and shipping costs); *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 297 (W.D.N.Y. 1996) ("Rule 34 allows the plaintiff 'to inspect and copy' relevant documents and does not require a responding party to pay for copying costs of voluminous materials."); *Monarch Ins. Co. v. Spach*, 281 F.2d 401, 413 n.30 (5th Cir. 1960) ("Ordinarily, [Rule 34] does not require the adversary to furnish copies."); *see generally* Moore's Federal

---

[2] *Mezu v. Morgan State University*, 775 F.Supp.2d 801 (D.Md. 2011).

- 4 -  REPLY IN SUPPORT OF REQUEST OF ADOPTION OF THE HAGUE CONVENTION
CASE NO. 3:14-CV-01409 EJD

RC1/7758693.3/RS

1  Practice - Civil § 34.14.6 ("A party producing documents will ordinarily not be put to the expense
2  of making copies for the requesting party.")).

3  **III.    ZWSOFT SEEKS TO COMPLY WITH THE FRCP**

4      Autodesk is heavy handed, claiming the Court is being asked to give up all judicial
5  authority: *"it invites this Court to abdicate its authority to compel discovery in this U.S. litigation
6  [...] to the Supreme Court of the People's Republic of China."* Opposition at 1. Autodesk further
7  asserts, contrary to case law, that "[s]uch restrictions on discovery are incompatible with the
8  Federal Rules and the timely, orderly, and just resolution of this dispute." *Id*. Such is hardly the
9  case. *See e.g. Tiffany (NJ) LLC v.Qi Andrew*, 276 F.R.D. 143 (S.D.N.Y. 2011)**.**

10     Rather, ZWSoft requests the Court consider the burden of production imposed and allow
11 additional safeguards to ensure that evidence is produced in accordance with the laws of both
12 governments. Andara Decl., ¶ 9-11. While Autodesk states its does not *believe* ZWSoft will face
13 stiff and severe government penalties for cross-border production, Autodesk cannot make any
14 such guarantee and has not provided convincing evidence as to why the proposed method should
15 not be permitted. Autodesk has casually dismissed the first four factors of the Restatement
16 analysis (importance of the documents to the litigation, degree of specificity of the request, origin
17 of the information, and availability of alternative means of securing the information), yet to
18 cooperation in the context of discovery requires a consideration of the full context of the disputed
19 issue. ZWSoft has already addressed the origin and specificity of the results in initial moving
20 papers. However, the two most important factors are discussed again below.

21      **A.    Importance of the Documents or Information Requested**

22     The ZWCAD+ source code is already available in Beijing under order of the Court of the
23 Hague. For judicial economy, it should be reviewed in the same location, and ZWSoft has already
24 indicated it will agree to have it available for this purpose. Autodesk argues that "*there may be*
25 *related motion practice required [... and] it would be far more burdensome for the parties to ship*
26 *their lawyers and experts back and forth from the United states to Beijing than it would be to*
27 *simply ship the source code here*." This negates the reality that many of ZWSoft's experts,
28 particularly those who have already spoken on ZWSoft's behalf before the Court of the Hague,

are located in the PRC. Autodesk has extensive local infrastructure near to this Court, Beijing, and Guangzhou. By comparison, ZWSoft has the undersigned counsel retained for this matter.[3]

### B. Availability of Alternative Means of Securing the Information

ZWSoft's proposal and motion does not cause delay, but attempts to facilitate the goals of FRCP 1 by addressing this issue at the outset. The proposal provides a checks and balances required in litigation with foreign defendants who are unfamiliar and untrusting of the United States legal system, who have to pay a premium for the types of e-discovery services that are commonplace in the United States but foreign elsewhere, and who risk severe penalties in failing to consider blocking statutes of their government. Contrary to Autodesk's assertion that ZWSoft has failed "*to show that producing the data in the United States would cause specific prejudice or harm,*" there is a clear a present danger that application of the PRC blocking statutes could expose ZWSoft to civil and criminal penalties. Opposition at 11. While Autodesk may be correct that the chances of prosecution are small, the potential consequences are severe, generally taking the form of incarceration, and cannot simply be dismissed as irrelevant. As an example, Rebiya Kadeer was sentenced to eight years in prison in 2000 for sending Chinese newspaper clippings to her husband in the United States.[4] The proposed protocol sets specific limits as to time, and safeguards the abilities of both parties to obtain information necessary in this litigation. The protocol set reasonable time limits to obtain clearance of information sought, and provides to obviate blocking statute issues by use of redaction or by stipulation.

Autodesk requests "*[a]t very least, it would have **alleged** that its source code contains Chinese state secrets*." Opposition at 1. The crux, however, is that ZWSoft is uncertain as to what the PRC considers state secrets, as even Autodesk admits, the governance is vague and can be

---

[3] Autodesk has offices in Beijing, Guangzhou, and five other PRC cities, and its counsel, Morrison & Foerster, has an office in Beijing and two others in the PRC. ZWSoft has only one office in the United States, located in Florida, which only develops ZW3D software not relevant to this litigation. All other ZWSoft offices are in the PRC, and its counsel has only a single foreign affiliated office, located in Hong Kong.
http://usa.autodesk.com/adsk/servlet/item?siteID=123112&id=304529; http://www.mofo.com/offices; http://www.zwsoft.com/zwcad/contact-us/; http://www.rmkb.com/index.cfm/locations/.

[4] People have been jailed in the PRC for sending seemingly mundane information abroad. The Chicago Tribune, April 27, 2000. http://articles.chicagotribune.com/2000-04-27/news/0004270268_1_xinjiang-radio-free-asia-rebiya-kadeer.

1   determined retroactively. The inherent risk to ZWSoft is the ambiguity in the PRC's state secrecy
2   laws, making it unclear when and how they can be applied. ZWSoft cannot allege what it cannot
3   know, and therefore seeks only the Court's discretion and consideration to finding alternative
4   means of production to safeguard both parties. The proposed protocol is reasonable given the
5   risks and benefits discussed.

### C. Accidental Refusal of Service and Subsequent Waiver

Refusal of service was unintentional, and subsequent waiver of service is evidence thereof. Andara Decl., ¶3-8; *Declaration of Ye Qianyi in Support of the Request*, ¶1 ("Ye Decl."). It was the intention of both United States and PRC counsel to accept service, and the mistakes of a receptionist are being proffered as evidence of a company's unwillingness to proceed. Ye Decl., ¶1.

In its letter of September 11, 2014, Autodesk stated, " [i]f your company agrees to waive service within fourteen (14) days of the date of this letter, Autodesk will agree that your company may file its answer or a motion under Rule 12 of the Federal Rules of Civil Procedure forty-five (45) days later." ZWSoft subsequently prepared and filed the necessary waivers. Though Autodesk now asserts that "*ZWSoft ignored that condition and **unilaterally** filed waiver forms omitting that requirement*," (emphasis in original) that requirement was dictated by FRCP 12. Opposition at 4. ZWSoft used the time to prepare and file two motions with this Court it feels were and are necessary to protect its interests.

### D. Protective Order

Autodesk glosses over the fact that ZWSoft had no meaningful involvement in the currently operative Protective Order, as the two companies were not even in the case until October 7, 2014, while the Protective Order was entered into on September 29, 2014 [Docket 34]. ZWSoft is simply requesting additional considerations taking into account a foreign litigant whose interest was not previously represented. Furthermore, given this litigation allows for the direct access into highly proprietary data of a competitor, there is a real risk that a protective order is not the panacea for all risks associated with disclosure. *LifeScan Scot., LTD v. Shasta Techs.,* LLC, 2013 U.S. Dist. LEXIS 159177 (N.D. Cal. Nov. 6, 2013) and *Apple, Inc. v.*

1 *Samsung Elecs. Co., Ltd.*, 2014 U.S. Dist. LEXIS 11778 (N.D. Cal. Jan. 29, 2014).

## IV. CONCLUSION

Autodesk alleges in numerous ways that ZWSoft has not and will not produce source code, but has no evidence to establish these assertions. A defendant's lawful appeals to the Court for full protection before turning over its most valuable resource to its chief competitor, who dwarfs it in both manpower and resources, is not reason for admonishment.

If Autodesk believes there is no risk to exporting the data, then Autodesk may inspect the documents in the PRC and remove them to the United States for litigation. That is the heart of ZWSoft's request. Autodesk asserts, "shipping ZWSoft data here is almost free," but only when the parties gloss over all of the "normally"ies and "I am not aware of"s in their Expert's Declaration, disregarding the very real and potentially sever consequences possible when dealing with vague and amorphous PRC regulations. Opposition at 11, Zhang Decl. at 3, 4.

Autodesk has brought this action against a foreign defendant previously unfamiliar with the United States laws, particularly those governing discovery, and insist that everything proceed with utmost haste, void of context. By taking steps through motion practice to articulate their concerns is an example of the value of the United States court system, not a demonstration of bad faith. Rather, it evidences the very real risks ZWSoft faces and puts forward a proposal to allow both parties to access the documents for litigation in a safe and efficient way at the outset of this litigation.

Dated: January 23, 2015                     ROPERS, MAJESKI, KOHN & BENTLEY


By: */s/ Lael D. Andara*
    LAEL D. ANDARA
    BROCK L. LYLE
    MARIE E. SOBIESKI
    Attorneys for Defendants
    ZWCAD SOFTWARE CO., LTD. and
    ZWCAD DESIGN CO., LTD.