LAEL D. ANDARA (SBN 217909)
BROCK R. LYLE (SBN 242690)
MARIE E SOBIESKI (SBN 278008)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone:     (650) 364-8200
Facsimile:     (650) 780-1701
Email:     lael.andara@rmkb.com
              brock.lyle@rmkb.com
              marie.sobieski@rmkb.com

Attorneys for Defendants
ZWCAD SOFTWARE CO., LTD,
ZWCAD DESIGN CO., LTD, and
HK ZWCAD SOFTWARE LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTODESK, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>ZWCAD SOFTARE CO. LTD., ZWCAD DESIGN CO., LTD., HK ZWCAD SOFTWARE LTD., and GLOBAL FORCE DIRECT, LLC. (doing business as ZWCADUSA),<br><br>                    Defendants. | CASE NO.  3:14-cv-01409-EJD<br><br>**DEFENDANTS' REPLY TO AUTODESK'S OPPOSITION TO ZWSOFT'S MOTION FOR CLARIFICATION OF COURT'S ORDER OF MARCH 27, 2015 REGARDING THE APPLICATION OF RULE 34 TO FOREIGN LITIGANTS**<br><br>**Date:        May 12, 2015**<br>**Time:        10:00 a.m.**<br>**Courtroom: 5, 4th Floor**<br>**Judge:      Hon. Paul S. Grewal** |

## I.    INTRODUCTION

ZWSoft seeks clarification that the Court intends to modify Federal Rule of Civil

Procedure 34's right to make the responsive information available for inspection at the location

where the information was created, maintained, and stored. Fed. R. Civ. P. 34 (b)(1)(B). ZWSoft

does not read the Court's March 27, 2015 Order as modifying the application of Rule 34 away

from allowing inspection in the place where the records are kept. Nor does ZWSoft read the

Order as implying foreign litigants are held to a different standard than United States litigants as

to Rule 34's application.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   As argued at the hearing but not addressed in the Order, if ZWSoft made the responsive

2   information available for inspection in Guangzhou, Autodesk may simply send an agent to copy

3   the information and return with it to the United States. This minimizes the burden on ZWSoft to

4   relocate their current database to the United States while simultaneously allowing ZWSoft to

5   avoid what it perceives as a real and tangible risk of government reprisal which Autodesk asserts

6   is entirely absent – specifically, removing this information from the People's Republic of China

7   (the "PRC"). While the risk may be insufficient to reach to the level of protection sought by

8   ZWSoft but denied by the Court, ZWSoft should be allowed to mitigate the risk by shifting the

9   cost for the agent's time and travel, ignoring Autodesk's significant presence in the PRC. If

10  Autodesk claims production must be made in the United States, ZWSoft requests it be allowed to

11  pay for such a trapeze net, even if the chances of falling are 0.0001%.

## II.   **ARGUMENT**

13      In the immortal words of Paul Harvey: "*and now… for the rest of the story*." Autodesk's

14  opposition to ZWSoft's motion for clarification liberally edits the Order to get the "explicit"

15  decision it wants. Opp. at 5:17. While it asserts that "[t]he Court explicitly 'denie[d] ZWSoft's

16  request that the court… require examination of its source code and related documents in China,"

17  Autodesk has stripped out the context and the sections. In full, the Order states: "Because ZWSoft

18  has not shown that good cause exists for the additional procedures outlined in its amended

19  protective order, the court also denies ZWSoft's request that the court amend the protective order

20  and require examination of its source code and related documents in China." Docket 81, 5:17 –

21  6:3 (emphasis added).

22      Autodesk's citations of the Court's Order imply that the Court may modify Rule 34 as it

23  relates to source code by requiring inspection to take place in the United States. However,

24  ZWSoft does not read this to necessarily extend to peripheral business records relating to the

25  marketing, sale, and development of the accused software, as both parties have repeatedly

26  emphasized that source code is the most important evidence in this case. ZWSoft would also

27  assert that the same good cause factor that was the basis of the denied motion is equally

28  applicable to the modification of 34 Autodesk is advocating.

DEFENDANTS' REPLY TO AUTODESK'S
OPPOSITION TO MOTION FOR CLARIFICATION OF
COURT'S ORDER - CASE NO. 3:14-CV-01409 EJD

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Autodesk's opposition further artfully represents the Courts order as follows:

| **Autodesk Opposition at 2:25 to 3:3:** | **Court Order at 14: 5-14 [Docket 81]** |
|---|---|
| The Court Explained: | <u>Autodesk asserts that it intends to use local attorneys and experts to examine the source code in the United States and that multiple rounds of source code examination as well as motion practice related to the adequacy of the initial deposit of source code are likely.[74]</u> |
| *Requiring Autodesk's attorneys and experts to travel to Beijing every time they need to examine the source code would be more burdensome and expensive than sending the source code to the United States ….* | *Requiring Autodesk's attorneys and experts to travel to Beijing every time they need to examine the source code would be more burdensome and expensive than sending the source code to the United States.* |
| | <u>ZWSoft is correct that as a large multinational company with multiple offices in China, Autodesk is more able than ZWSoft to shoulder burdens imposed by onerous or expensive discovery.[75]</u> But, as explained above, *ZWSoft* |
| *ZWSoft has not shown tha[t] a sovereign interest or other factor justifies the additional expense and burden that examination of the source code in China imposes on Autodesk. (Id. at 14)* | *has not shown than a sovereign interest or other factor justifies the additional expense and burden that examination of the source code in China imposes on Autodesk.* |

Autodesk's assertion as to burden is based on the argument and assumption of unlimited time to review the code, neither of which are substantiated in a manner to create "good cause" to modify the application of Rule 34. Much like oral argument, Autodesk's discussion as to burden is focused on itself to the exclusion of ZWSoft, as illustrated above.

Contrary to Autodesk's assertion, founded on an inaccurate representation of ZWSoft's

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 3 -

DEFENDANTS' REPLY TO AUTODESK'S
OPPOSITION TO MOTION FOR CLARIFICATION OF
COURT'S ORDER - CASE NO. 3:14-CV-01409 EJD

brief,[1] ZWSoft *does* dispute that transferring the database from the eDiscovery vendor in China to California as "almost free." So does its vendor, who has indicated that it will costs tens of thousands of dollars to covert the database onto a secure online review platform allowing for United States production.

Autodesk's overly simplistic view of eDiscovery implies one could simply go to Best Buy and purchase a hard drive, press a few buttons to collect and copy the information, and stick it in a padded envelope to ship to the other side.[2] ZWSoft is aware of no practitioners, save Autodesk, who would agree that the cost of transferring digital information is less than the paper productions of twenty years ago, or that foreign collection is less expensive than collection in the United States. Yet that is the bedrock of Autodesk's argument, seemingly anchored in denying the burdens placed on ZWSoft.

The inherent flaw in Autodesk's argument is its assumption that the Protective Order allows for unlimited source code review, or allows for multiple discrete reviews of the same code. This interpretation does not track with the policy of the FRCP limiting discovery in all other matters, such as permitting only seven hours for deposition of a witness or service of twenty-five interrogatories per party. There is no rational basis to presume source code should be treated differently. ZWSoft has repeatedly objected to Autodesk's loose interpretation, particularly as it was neither involved in drafting or agreeing to the Protective Order, nor had its interests advocated-for at the time these obligations were cast.[3] Yet ZWSoft must nevertheless bear the significant cost and expense in having to now meet a higher standard than it would have faced if

---

[1] ZWSoft Reply Brief (Docket 71 at 8:7-12): *If Autodesk believes there is no risk to exporting the data, then Autodesk may inspect the documents in the PRC and remove them to the United States for litigation. That is the heart of ZWSoft's request. Autodesk asserts, "shipping ZWSoft data here is almost free," but only when the parties gloss over all of the "normally"ies and "I am not aware of"s in their Expert's Declaration, disregarding the very real and potentially severe consequences possible when dealing with vague and amorphous PRC regulations.* Opposition at 11, *Zhang Decl.* at 3, 4.

[2] *An eDiscovery Market Size Mashup for 2012 to 2017*, Rob Robinson (Indicating that the eDiscovery software and services market is expected to grow from 2012 to 2017 from $5.53 billion to $9.81 billion per year. http://www.complexdiscovery.com/info/2013/06/20/an-ediscovery-market-size-mashup-2013-2017-worldwide-software-and-services-overview/

[3] The Court does not agree. 03/27/15 Order at 16: 5-14 [Docket 81]: *Similarly, ZWSoft's contentions that it was not meaningfully involved in the current protective order because it was not in the case when the order was entered and that this case allows Autodesk access into the "highly proprietary data of a competitor" do not identify specific prejudice or harm that will result if the current protective order is not amended.*

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    it had been involved in drafting the initial Protective Order.

2            ZWSoft has offered to make ZWSoft's source code available for review in the PRC,

3    which Autodesk has rejected. ZWSoft has offered to allow Autodesk to inspect the source code

4    for a forty-hour period, equivalent to more than five witness depositions. If Autodesk needs

5    additional time to review this source code, ZWSoft should not be forced to bear the cost and

6    expense of maintaining the secured room. To be clear, ZWSoft does not object to allowing

7    Autodesk additional time, but believes Autodesk should carry the cost. As of filing, Autodesk

8    would not agree.

9            Other than source code, Autodesk cast a large discovery net for emails, computer files,

10   chat messages, and other miscellany. While the source code is a discrete quantity of information,

11   Autodesk's broad discovery captures an expansive array of information which must be reviewed

12   before inspection due to ZWSoft's obligations as privacy and privilege in the jurisdiction it

13   operates, just as it would be if it were based in the United States. That corpus of processed

14   business data is currently being reviewed in Guanzhou on an air gap computer, and is

15   considerably larger than the source code data, which fits on a single flash drive.

16           The parties agree that the secondary business information has less value to the merits of

17   the litigation than the source code. Autodesk nonetheless denies defendant's proportionality

18   analysis. This is both in light of the reality that business information is a magnitude larger than

19   the source code, and that most relevant material has already been produced by ZWSoft's co-

20   defendant and United States software distributer, Global Force Direct, LLC.

21           Rule 34 allows ZWSoft to make this greater volume of data available for inspection in

22   Guangzhou. ZWSoft voluntarily put forth a compromise in which both parties' source code

23   would be deposited at one location in the United States for comparison by a Court-appointed

24   expert, but Autodesk declined.

25   **A.      Fed. R. Civ. P. 34 Presumption of Inspection at the Location of the Data**

26           The Court rejected ZWSoft's proposed use of the Hague convention and the proposed

27   Amended Protective Order. That much is clear. What is unclear, however, is if the Court found

28   good cause to modify the operation of Rule 34 and its allowance for inspection of documents

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

where they were created, maintained, and kept in the ordinary course of business. *Superior Communications v. Earhugger, Inc.*, 257 F.R.D. 215, 220 (C.D. Cal. 2009) and *Williams v. Taser Intern., Inc.*,  2006 U.S. Dist. LEXIS 47255, *21 citing *Moore's Federal Practice* - Civil § 34.14.6 ("A party producing documents will ordinarily not be put to the expense of making copies for the requesting party.").

Under Rule 34, the assumption of inspection is the default. As set forth in this motion, the upcoming Amendments to the Federal Rules[4] actually reinforce the presumption of inspection. ZWSoft has articulated to the Court that its primary concern relates to PRC blocking statutes and potential criminal penalties for export of sensitive information. Autodesk has made clear it believes there is no such rick, and therefore review and copy ZWSoft's information for transport and use outside of the PRC. Therefore the risk is borne by Autodesk and both parties concerns are judiciously alleviated.

ZWSoft reads the Court's order to affirm Autodesk's right to inspect information in the PRC and subsequently copy and export the information it deems necessary and relevant to its case. Autodesk nevertheless demands production served up on a silver platter and delivered to its United States doorstep for naught more than its ease and convenience, shifting all costs to ZWSoft.

**B.     ZWSoft Burden of Production**

Autodesk's argument is one of burden. It asks ZWSoft and the Court to believe inspection under Rule 34 applies only to parties within very limited distances of one another, despite no indication of this limitation in the Rule itself. Otherwise, it claims, Autodesk would be placed under unnecessary hardship in traveling for inspection. This ignores the disparity of the parties as to both size and resources, and the fact that Autodesk and its counsel have offices and staff near Guangzhou.

Autodesk claims "ZWSoft provides no support for its assertion that Rule 34 permits it to make documents available for inspection in a foreign country, where doing so would impose an

---

[4] On September 16, 2014, the Judicial Conference officially approved the proposed amendments to the Federal Rules of Civil Procedure. The rules are now pending before the Supreme Court, and provided they are adopted, will be submitted to Congress by May 1, 2015.

1  undue burden on the requesting party without reducing the burden on the producing party."

2  Docket 81 at 4:7-9. ZWSoft's beliefs have been made repeatedly in previous moving papers, and

3  are further supported by the very real costs associated with making information available for

4  production, a far cry from merely "shipping hard drives to San Francisco." (Docket 86 at 5:1)

**III.   CONCLUSION**

6       ZWSoft's previous motion was intended to prevent any information from leaving the

7  PRC. ZWSoft understands and does not seek reconsideration that the Court's order means that the

8  information is not limited to the PRC, but ZWSoft does not read that to mean that it must be the

9  one to remove it. Under Rule 34, ZWSoft can make the information available for Autodesk's

10  inspection and copying at the location where this information is maintained, and Autodesk can

11  review and export any information it deems necessary.  Autodesk's request that documents be

12  produced to their offices in the United States is irrelevant in the face of Rule 34, which allows for

13  inspection of documents where they have been maintained in the ordinary course of business.

14  ZWSoft asks the Court to clarify if it intended to amend Rule 34's presumption of inspection and

15  to order the parties to produce in the United States.

Dated: April 17, 2015                    ROPERS, MAJESKI, KOHN & BENTLEY


                                         By: /s/ Lael D. Andara
                                            LAEL D. ANDARA
                                            BROCK R. LYLE
                                            MARIE E. SOBIESKI
                                            Attorneys for Defendants
                                            ZWCAD SOFTWARE CO., LTD and
                                            ZWCAD DESIGN CO., LTD

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City