UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AUTODESK, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ZWCAD SOFTWARE CO., LTD., et al.,<br><br>    Defendants. | Case No. 5:14-cv-01409-EJD<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 48 |

Plaintiff Autodesk, Inc. ("Autodesk" or the "Plaintiff") brings this action for copyright infringement and trade secret misappropriation against Defendants Global Force Direct, LLC ("Global Force Direct"), ZWCAD Software Co., Ltd., ZWCAD Design Co., Ltd., and HK ZWCAD Software Ltd. (collectively, "ZWSoft" or the "Defendants"). Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for failure to identify the specific copyrights or trade secrets Plaintiff alleges were copied. Docket Item No. 48. Plaintiff opposes the motion. Dkt. No. 61.

The Court has subject matter jurisdiction over Autodesk's copyright and trade secret misappropriation claims under 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(a). The Court has considered the briefing and the oral argument presented at the hearing on April 30, 2015. For the reasons discussed below, the Motion to Dismiss is DENIED.

1

Case No.: 5:14-cv-01409-EJD
ORDER DENYING MOTION TO DISMISS

## I. FACTUAL BACKGROUND

Autodesk provides computer-aided design software which "create[s] digital models and workflows that allow visualization, simulation and analysis of designs before implementation." Dkt. No. 62 at ¶ 1. AutoCAD is Autodesk's "flagship product" and largest revenue-generating product. See id. at ¶¶ 12, 15. Over one hundred registered U.S. copyrights cover AutoCAD, including Registration Nos. TX0006576172, TX0006586280, and TX0006589381, which specifically cover AutoCAD 2008's source code and other protectable elements. See Dkt. No. 1 at ¶ 15; see also Dkt. No. 75 at 3.

Based in Guangzhou, China, ZWSoft released their first CAD products in 2002, approximately 20 years after AutoCAD was released. See Dkt. No. 1 at ¶¶ 10, 16. Until 2012, ZWSoft based its relevant products on the IntelliCAD software platform, licensing code from a third party. Id. at ¶ 18. In 2012, however, Autodesk alleges that ZWSoft announced a "new" direction with an internally designed codebase called "ZWCAD+." Id. at ¶ 19.

Autodesk alleges that despite ZWSoft's claim that its software was developed internally, ZWCAD+ shares not only the same interfaces and commands as AutoCAD, but also performs identically to prior versions of Autodesk's software in unmistakable ways. Id. at ¶ 22. Specifically, Autodesk alleges that ZWSoft engaged in wholesale copying of "large portions of Autodesk source code" in order to create its software program ZWCAD+. See Dkt. No. 62 at ¶¶ 21-24.

Autodesk further alleges that ZWSoft emphasized their copying in marketing materials as a way to entice customers to purchase their products. See Dkt. No. 1 at ¶¶ 17, 21. For example, in product brochures and press releases, ZWSoft touted their products as "offer[ing] a working environment almost identical to AutoCAD." Id. at ¶ 17.

Autodesk also alleges that ZWCAD+ products display identical idiosyncrasies and bugs that could have been introduced only through the wholesale copying of significant portions of misappropriated Autodesk code. Id. at ¶¶ 22, 23, 24. As one example, ZWCAD+ products display the same software bug as AutoCAD 2007 and 2008 when "coloring in" or "shading"

2
Case No.: 5:14-cv-01409-EJD
ORDER DENYING MOTION TO DISMISS

certain geometries. Id. at ¶ 24.

The screenshots below show an unusual error that occurs when a user selects a "pick point" (i.e., a specific point within the drawing) away from the clover and flower petals. Id. Instead of properly coloring in both the clover and the petals, both AutoCAD 2007 and ZWCAD+ 2012 color in only the petals – not the clover:



Autodesk alleges that ZWCAD+ 2012 and 2014 also display an identical error to AutoCAD 2007 and 2008 when "trimming" certain shapes, i.e., deleting a portion of the shape that falls on one side of an "edge." Id. As shown in the screenshots below, a user of AutoCAD 2007 and 2008 was not able to trim away certain lines where two overlapping shapes had relatively close radiuses. ZWCAD+ 2012 and 2014 contain the same bug:



Autodesk further alleges that ZWCAD+ "share[s] similar interfaces and commands," and "performs identically to prior versions of AutoCAD" in "crucial and unmistakable ways." Id. at ¶ 22. In sum, based on these similarities, Autodesk alleges that Defendants have committed copyright infringement and trade secret misappropriation. Id. at ¶ 31.

3

Case No.: 5:14-cv-01409-EJD
ORDER DENYING MOTION TO DISMISS

## II. PROCEDURAL BACKGROUND

In 2014, Autodesk filed suit against ZWSoft and its United States-based distributor GFD in the Northern District of California, San Francisco Division for copyright infringement and trade secret misappropriation. See Dkt. No. 1 at ¶¶ 4, 32-48. Autodesk later amended its complaint to add Hong Kong-based corporation HK ZWCAD Software Ltd. as a defendant. See Dkt. No. 62 at ¶ 4.

Autodesk also initiated summary proceedings against ZWSoft before the Hague District Court in the Netherlands. See Dkt. No. 68-3 at ¶ 9. ZWSoft opposed discovery of its source code outside of China, and the parties ultimately agreed that ZWSoft could produce its source code in China for the purposes of the Dutch action. See id. at ¶ 10. The Dutch court then ordered ZWSoft to produce its source code to a custodian in China. See Docket No. 68-7 at §§ 4.15, 4.16; Docket No. 68-8 at §§ 3.2, 3.3.

Meanwhile, in the Northern District of California, GFD answered the complaint, and the parties entered into a stipulated protective order. See Dkt. Nos. 22, 34. After ZWSoft appeared in the case, the case was reassigned to the San Jose division for all further proceedings. See Dkt. Nos. 40, 44. ZWSoft then moved to dismiss the case and also asked Autodesk to stipulate to follow Hague Convention procedures with regard to the data being sought from China or to amend the protective order to allow for examination of ZWSoft's data in China. See Dkt. No. 52-1 at ¶¶ 6-9.

On December 19, 2014, ZWSoft moved the Court to require Autodesk to conduct all discovery against ZWSoft solely pursuant to the Hague Convention rather than the Federal Rules to mitigate the risk that discovery of its data and documents outside of China may subject it to liability under Chinese state secret and privacy laws. Dkt. No. 52. The motion was then referred to Magistrate Judge Grewal. Dkt. No. 53. The court denied ZWSoft's motion because it agreed with Autodesk that ZWSoft has not shown that a genuine risk of liability under Chinese law or other factors justify the additional protective measures it seeks. Dkt. No. 81. Further, because ZWSoft has not shown that good cause exists for the additional procedures outlined in its amended

4

Case No.: 5:14-cv-01409-EJD
ORDER DENYING MOTION TO DISMISS

1  protective order, the court also denied ZWSoft's request that the court amend the protective order
2  and require examination of its source code and related documents in China.  See id.
3      On March 27, 2015, ZWSoft moved the Court to appoint an expert for the limited purpose
4  of source code review and comparison, or in the alternative, motion for a protective order.  Dkt.
5  No. 82.  That motion is set for hearing on May 5, 2015 before Magistrate Judge Grewal.

### III.    LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint is construed in the light most favorable to the non-moving party, and all material allegations in the complaint are taken to be true.  Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986); see Fed. R. Civ. P. 12(b)(6).  This rule does not apply to legal conclusions - "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  While a complaint does not need detailed factual allegations to survive a 12(b)(6) motion, plaintiffs must provide grounds demonstrating their entitlement to relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, the plaintiff must allege sufficient factual allegations "to raise a right to relief above the speculative level."  Id. This threshold is reached when the complaint contains sufficient facts to allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Finally, even if a court should find that an operative complaint is lacking in specificity, leave to amend to cure any such deficiencies should be freely granted.  Fed. R. Civ. P. 15(a); see also Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

### IV.    DISCUSSION

**A.    Whether Autodesk Adequately Pled A Claim For Copyright Infringement**

ZWSoft moves to dismiss Autodesk's Complaint for failure to identify the specific copyrights or trade secrets Autodesk alleges were copied.  Dkt. No. 48.  Specifically, ZWSoft asserts that Autodesk has failed to specify which portions of its source code it alleges the Defendants copied.  See Dkt. No. 75 at 7.  Further, ZWSoft argues that Autodesk's allegations appear to concern only surface similarities between the ZWSOFT and AutoCAD interfaces, yet

Autodesk does not allege that those visual aspects of AutoCAD are copyrighted, or protected as trade secrets. See id. The Court disagrees that these arguments require dismissal.

A plaintiff seeking to establish copyright infringement must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[1] Thus, to state a claim, Plaintiff must set forth sufficient facts alleging that Plaintiff owned a valid copyright for AutoCAD, and that Defendants violated Plaintiff's exclusive rights under the Copyright Act by copying original elements of the work.

For the first element, the Complaint states that Autodesk "owns well over a hundred registered U.S. copyrights relating to its AutoCAD products," and gave three illustrative registration numbers, which cover AutoCAD 2008's source code and other protectable elements. See Dkt. No. 1. at ¶ 15. Here, Plaintiff has sufficiently alleged ownership of valid copyrights.[2] Autodesk further alleged that ZWSoft committed copyright infringement via its incorporation of "significant portions of Autodesk's proprietary source code" from AutoCAD 2007 and 2008 into Defendants' ZWCAD+ 2012 and 2014 products. See id. at ¶¶ 22, 24-30.

However, ZWSoft argues that it has no way of knowing which of "well over a hundred copyrights are at issue." See Dkt. No. 48 at 8:10-11. ZWSoft further argues that "the titles, contents, and relationship of these three copyrights remain unspecified." See id. at 8:8. Therefore, ZWSoft contends that "Autodesk's infringement should be dismissed" because "Autodesk has failed to identify a single aspect of source code or a specifically infringed registered copyright." See id. at 6:25-28.

Despite ZWSoft's argument that Autodesk must identify specific copyright registrations at issue, the Court is unable to find any case requiring that a plaintiff produce that information or face dismissal under 12(b)(6).[3] Moreover, Autodesk has specifically alleged that it "owns well over a hundred registered U.S. copyrights relating to its AutoCAD products," including the three

---

[1] Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361 (1991).
[2] U.S. Copyright Registration Nos. TX0006576172, TX0006586280, and TX0006589381
[3] Imageline, Inc. v. CafePress.com. Inc., No. CV 10-9794 PSG, 2011 U.S. Dist. LEXIS 39828, at *7-8 (C.D. Cal. Apr. 6, 2011); see also Adobe Systems v. My Choice Software LLC, No. 14-cv-02150-BLF, 2014 U.S. Dist. LEXIS 161059, at *7 (N.D. Cal. Nov. 14, 2014).

6
Case No.: 5:14-cv-01409-EJD
ORDER DENYING MOTION TO DISMISS

1   registration numbers.  See Dkt. No. 1 at ¶ 15.  To the extent that Defendants contend that not all of
2   the identified registration numbers actually relate to AutoCAD, that is a factual challenge to the
3   Complaint that is not appropriately raised in the context of a Rule 12(b)(6) motion.[4]

For the second element, ZWSoft's marketing of the similarities between the two product lines is relevant and circumstantial evidence of copying.[5]  Moreover, "the determination of whether a work is sufficiently original to be protected is 'a factual issue that is inappropriate for determination on a motion to dismiss.'"[6]  The fact that the precise scope of Defendants' misconduct - if any - remains to be fleshed out in discovery does not render the Complaint inadequate.

"In reviewing the sufficiency of a complaint, '[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248 (9th Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  Further, the plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence supporting the allegation."  Twombly, 550 U.S. 544, 556 (2007).  Accordingly, taking Plaintiff's allegations of material fact as true and construing them in the light most favorable to Plaintiff, the court finds that the claim of copyright infringement is plausible.  Thus, Plaintiff's Complaint sufficiently states a claim upon which relief may be granted.  Defendants' Motion to Dismiss Plaintiff's cause of action for copyright infringement is DENIED.

**B.   Whether Autodesk Adequately Pled A Claim For Trade Secret Misappropriation**

The California Uniform Trade Secrets Act prohibits misappropriation of trade secrets,

---

[4] See Adobe Systems, No. 14-cv-02150-BLF, 2014 U.S. Dist. LEXIS 161059, at *3 (N.D. Cal. Nov. 14, 2014).
[5] See JBJ Fabrics, Inc. v. Mark Indus., Inc., No. 86-4881 FFF, 1987 U.S. Dist. LEXIS 13445, at *33 (C.D. Cal. Nov. 4, 1987) (defendant's admission of similarity weighed in favor of finding of infringement)
[6] See FragranceNet.com, Inc. v. FragranceX.com, Inc., 679 F. Supp. 2d 312, 320 (E.D.N.Y. 2010); see also Dkt. No. 61 at 11.

United States District Court
Northern District of California

1  which it defines as:

2  (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
3  (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
4      (A) Used improper means to acquire knowledge of the trade secret; or
5      (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
6          (i) Derived from or through a person who had utilized improper means to acquire it;
7          (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
8          (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
9      (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Cal. Civ. Code § 3426.1(b). "Improper means" include the "breach or inducement of a breach of a duty to maintain secrecy." Cal. Civ. Code § 3426.1(a).

To state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act, a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff. Nexsales Corp. v. Salebuild, Inc., 11–CV–3195, 2012 WL 216260 at *2 (N.D. Cal. Jan. 24, 2012). ZWSoft moves to dismiss the Complaint on the grounds that Autodesk fails to sufficiently allege the first and second elements – ownership and misappropriation.

### i. Trade Secret Ownership

ZWSoft argues that Autodesk's allegation that the "plaintiff has a secret process is a bare legal conclusion" and that Autodesk "should describe the subject matter of the trade secret with sufficient particularity." See Dkt. No. 48 at 11.

A plaintiff need not "spell out the details of the trade secret," but must minimally provide "reasonable notice of the issues which must be at the time of trial and […] provide reasonable guidance in ascertaining the scope of appropriate discovery."[7]

---

[7] Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 251 (1968); see also Brocade Commc'ns Sys.,

8

Case No.: 5:14-cv-01409-EJD
ORDER DENYING MOTION TO DISMISS

1 Here, Autodesk alleged that the "source code which comprises AutoCAD 2007 and 2008 is a trade secret, including those portions of code that underlie the commands, interfaces and program files associated with the dozens of specific features which were wrongfully acquired and used in Defendants' ZWCAD+ 2012 and 2014 programs." See Dkt. No. 1 at ¶¶ 14, 22-31, 42. Autodesk further alleged that "its source code is not publicly known, and that Autodesk goes to great lengths to keep its most valuable asset protected, including depositing the code only in secure source code repositories, and restricting access to only a few select individuals, all of whom are required to sign iron-clad non-disclosure agreements." Id. at ¶¶ 14, 42.

Moreover, courts are "in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets."[8] As such, Autodesk has identified its alleged trade secrets with sufficient particularity to survive a Rule 12 motion.

### ii. Misappropriation

ZWSoft argues that Autodesk has not identified "the impermissible manner in which ZWSoft acquired" the AutoCAD trade secrets to support a misappropriation claim. See Dkt. No. 48 at 14.

Under the California Uniform Trade Secret Act, misappropriation can be established through wrongful acquisition or use without consent. Cal. Civ. Code § 3426.1. Here, Autodesk has adequately alleged that ZWCAD+ was "built by someone with improper and illegal access to AutoCAD source code," that its code had been "stolen," and that, without Autodesk's consent, "Defendants acquired, disclosed and/or used" Autodesk's trade secret information "through improper means." See Dkt. No. 1 at ¶¶ 22, 24, 29, 43.

Moreover, there is no requirement that Autodesk plead exactly how Defendants

---

Inc. v. A10 Networks, Inc., 873 F. Supp. 2d 1192 (N.D. Cal. 2012) (finding software optimization, hardware optimization and customer contact list all sufficiently identified and cognizable as trade secrets).
[8] Leucadia, Inc. v. Applied Extrusion Techs., Inc., 755 F. Supp. 635, 636 (D. Del. 1991); see also SD Prot., Inc. v. Del Rio, 498 F. Supp. 2d 576, 576 (E.D.N.Y. 2007).

9
Case No.: 5:14-cv-01409-EJD
ORDER DENYING MOTION TO DISMISS

"improperly obtained [or used] the alleged trade secret."[9] Again, as "discovery has not yet commenced," "it would be unreasonable to require" a plaintiff to demonstrate "the precise ways in which Defendants may have used [their] trade secrets, given that Defendants are the only ones who possess such information."[10]

In sum, Autodesk identified its trade secrets (such as the AutoCAD 2007 and 2008 source code, the code's associated algorithms, and its architecture) and adequately alleged the wrongful acquisition or use necessary to support a misappropriation claim with sufficient particularity to survive a Rule 12 motion. Therefore, the Court DENIES Defendants' Motion to Dismiss Plaintiff's cause of action for trade secret misappropriation.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss Autodesk's first and second cause of action in its Complaint.

**IT IS SO ORDERED.**

Dated: May 13, 2015

_____
EDWARD J. DAVILA
United States District Judge

---

[9] Gaetano Assocs., Ltd. v. Artee Collections, Inc., No. 05 CIV. 3329 (DLC), 2006 U.S. Dist. LEXIS 77144, at *7 (S.D.N.Y. Oct. 25, 2006).
[10] Vinyl Interactive, LLC v. Guarino, No. C 09-0987 CW, 2009 U.S. Dist. LEXIS 41498, at *21-22 (N.D. Cal. May 1, 2009).

10
Case No.: 5:14-cv-01409-EJD
ORDER DENYING MOTION TO DISMISS