```
 1                  UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                       SAN JOSE DIVISION


 3
        AUTODESK, INC.,
 4
                  PLAINTIFF,            CASE NO.  CV-14-1409-EJD
 5
           VS.                          SAN JOSE, CALIFORNIA
 6
        ZWCAD SOFTWARE COMPANY LIMITED,  MAY 5, 2015
 7      ET AL.,
                                         PAGES 1 - 32
 8                DEFENDANTS.

 9

10

11                   TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE PAUL S. GREWAL
12           UNITED STATES DISTRICT MAGISTRATE JUDGE

13
                     A-P-P-E-A-R-A-N-C-E-S
14

15      FOR THE PLAINTIFF:   MORRISON & FOERSTER
                             BY:  RICHARD S.J. HUNG
16                                BARBARA BARATH
                             425 MARKET STREET
17                           SAN FRANCISCO, CALIFORNIA 94105

18
        FOR THE DEFENDANTS:  ROPERS, MAJESKI, KOHN & BENTLEY
19                           BY:  LAEL D. ANDARA
                                  MARIE SOBIESKI
20                           1001 MARSHALL STREET, SUITE 300
                             REDWOOD CITY, CALIFORNIA 94063
21

22      OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR
                                   CERTIFICATE NUMBER 8074
23

24         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
        TRANSCRIPT PRODUCED WITH COMPUTER.
25
```

```
1        SAN JOSE, CALIFORNIA                      MAY 5, 2015

2                       P R O C E E D I N G S

3            (COURT CONVENED.)

4                THE CLERK:  CALLING AUTODESK, INC., VERSUS ZWCAD

5        SOFTWARE COMPANY LIMITED, ET AL., CASE NUMBER CV-14-1409-EJD.

6            COUNSEL, PLEASE STATE YOUR APPEARANCES.

7                MR. ANDARA:  GOOD MORNING, YOUR HONOR.  LAEL ANDARA

8        FOR THE ZWCAD, AND I HAVE MARIE SOBIESKI WITH ME ALSO.

9                THE COURT:  GOOD MORNING AS WELL TO YOU.

10               MR. HUNG:  GOOD MORNING, YOUR HONOR.  RICHARD HUNG

11       FROM MORRISON & FOERSTER FOR AUTODESK AND WITH ME TODAY IS

12       BARBARA BARATH.

13               THE COURT:  GOOD MORNING TO EACH OF YOU AS WELL.

14       ALL RIGHT.

15           WELL, AS I UNDERSTAND IT WE HAVE GOT A GRAND TOTAL OF FOUR

16       MOTIONS IN THIS MATTER.  AND WITH YOUR INDULGENCE, I'D LIKE TO

17       JUST BEGIN WITH MY MOTION FOR CLARIFICATION WHICH DEALS WITH MY

18       EARLIER ORDER.  I THOUGHT 17 PAGES WAS ENOUGH, BUT APPARENTLY

19       IT WASN'T.

20           MR. ANDARA, WHY DON'T YOU TELL ME WHAT YOU HAVE IN MIND.

21       I WILL JUST PUT OUT THERE, I SURE THOUGHT I WAS SAYING THAT YOU

22       HAVE TO BRING THIS STUFF TO THE U.S.  TELL ME WHY YOU READ MY

23       ORDER DIFFERENTLY AND WHY I SHOULD READ MY ORDER DIFFERENTLY.

24               MR. ANDARA:  I DIDN'T SEE ANY PART IN THE

25       ORDER WHERE YOU HAD -- YOU INDICATED THERE WAS NOT GOOD CAUSE
```

```
 1        TO MODIFY THE PROTECTIVE ORDER.  BUT I DID NOT SEE ANY

 2        DISCUSSION THAT THERE WAS GOOD CAUSE TO MODIFY RULE 34 SO THAT

 3        WE WERE NOT -- NO LONGER ALLOWED TO MAKE THE INFORMATION

 4        AVAILABLE FOR INSPECTION WHERE THE DATA IS LOCATED.

 5            I ANTICIPATE BASED ON THE ORDER THAT YOU WOULD LIKELY

 6        ORDER THAT THE SOURCE CODE BE PRODUCED IN THE U.S., AND I HAVE

 7        PREPARED MY CLIENT FOR THAT EVENTUALITY.  BUT ONE OF THE THINGS

 8        THAT WAS BROUGHT UP AT THE PREVIOUS HEARING IS THAT THERE WAS A

 9        SIGNIFICANT DIFFERENCE BETWEEN THE SOURCE CODE INFORMATION AND

10        THE BUSINESS DATA AND IN DETERMINING PROPORTIONALITY, THERE

11        SHOULD BE SOME, SOME EXPLANATION OR GOOD CAUSE AS TO WHY THAT

12        BURDEN SHOULD BE, YOU KNOW, PLACED ON US.

13            AS THE PAPERS WITH ALL OF THE MOTIONS HAVE BEEN PRESENTED

14        TO THE COURT HAVE ILLUSTRATED, WE'RE TALKING ABOUT SALES OF THE

15        ACCUSED PRODUCTS OF APPROXIMATELY $50,000.  WE WERE TALKING

16        ABOUT THE INTERROGATORY RESPONSES WE'VE PROVIDED INDICATED THAT

17        THE SALES OF THE ACCUSED PRODUCT IS ROUGHLY $50,000.

18            WHEN YOU TAKE INTO CONSIDERATION THAT THE DECLARATION THAT

19        THE E-DISCOVERY PROVIDER SHOWED THAT WE'D ALREADY SPENT

20        $150,000 JUST FOR THE E-DISCOVERY VENDOR, THAT HAS NOTHING TO

21        DO WITH THE WORK IN TERMS OF THE REVIEW OR MY TIME.  I THINK

22        IT'S IMPORTANT THAT WE HAVE A DISCUSSION AS TO PROPORTIONALITY.

23        AT LEAST AS TO THE BUSINESS, THAT I GET THE BUSINESS SOURCE

24        DATA, THAT MAKES PERFECT SENSE TO ME.  BUT MY CLIENT WOULD WANT

25        IT IN AN ORDER THAT SPECIFICALLY DIRECTED THEM TO DO SO AND
```

1    THEY'LL BE HAPPY TO DO SO IF SO ORDERED.

2            THE COURT:  MR. ANDARA, MAY I ASK YOU A QUESTION

3    ABOUT THE LOGISTICS OR PRACTICALITY OF ALL OF THIS.  IF I WERE

4    TO PERMIT AN INSPECTION UNDER RULE 34, IS IT ANY DIFFERENT FOR

5    THE NONSOURCE CODE DOCUMENTS THAN FOR THE SOURCE CODE?

6        I MEAN, AND WE HAVE ALREADY HAD A LENGTHY TRIAL, I GUESS

7    IS THE RIGHT WORD, ABOUT HOW MUCH OF PAIN AND SUFFERING THERE

8    IS OF HAVING TO TRAVEL BACK AND FORTH TO CHINA JUST TO LOOK AT

9    STUFF.

10       DOES IT MATTER THAT THE STUFF IS BUSINESS DOCUMENTS AS

11   OPPOSED TO SOURCE CODE?

12           MR. ANDARA:  IT DOES BECAUSE --

13           THE COURT:  TELL ME WHY.

14           MR. ANDARA:  SURE.  THE SOURCE CODE, WHEN YOU'RE

15   TALKING ABOUT SOURCE CODE, YOU HAVE A VERY DISCRETE VOLUME.

16       OUR SOURCE CODE IS APPROXIMATELY 3.8 MILLION LINES OF

17   CODE.  SO YOU'RE TALKING PROBABLY MEGABYTES, GIGABYTES OF DATA.

18       WHEN YOU'RE TALKING ABOUT THE BUSINESS DATA, YOU'RE

19   TALKING ABOUT GIGABYTES, PROBABLY TENS IF NOT HUNDREDS OF

20   GIGABYTES.  AND THE ISSUE THERE IS THAT THE MAJORITY OF THAT

21   INFORMATION THAT WE'RE BEING REQUESTED TO MAKE AVAILABLE FOR

22   INSPECTION HAS ALREADY BEEN PRODUCED BY GFD, WHO IS OUR

23   DISTRIBUTOR IN THE U.S. BECAUSE -- AND THAT WAS ALL DONE BY

24   E-MAILS.  AND SO THE MAJORITY OF THE DOCUMENTATION IS GOING TO

25   BE DUPLICATIVE.

1          AND I APPRECIATE THAT IN OUR DISCUSSIONS WITH COUNSEL THAT

2     ESSENTIALLY WHAT THEY WOULD LIKELY DO IS JUST SEND SOMEONE TO

3     INSPECT THE DATA IN OUR LOCATION IN GUANGZHOU AND GET A COPY OF

4     IT ON HARD DRIVE AND THEN TAKE IT OUT OF THE COUNTRY.  AND

5     THAT'S THE WHOLE POINT, WHICH IS I UNDERSTAND THAT WE HAVEN'T

6     REACHED OUR BURDEN AS TO MODIFYING THE PROTECTIVE ORDER AS TO

7     THE RISK, BUT GIVEN THE FACT THAT INSPECTION IS ALLOWED UNDER

8     RULE 34 AND THAT THE RISK WOULD BE TAKEN BY AUTODESK TO TAKE IT

9     OUT OF THE COUNTRY, THERE'S A MECHANISM THAT ADDRESSES BOTH

10    PARTIES'S CONCERNS AND IS ALLOWED UNDER THE RULES.

11          THE COURT:  SO YOU'RE SAYING THEN THAT THE ATTORNEY

12    FOR AUTODESK, OR ATTORNEYS, PLURAL, PERHAPS WOULD BE FREE TO

13    COME TO GUANGZHOU, LOOK AT WHATEVER THEY WANTED TO LOOK AT IN

14    SOME TYPE OF CONFERENCE ROOM OR OTHER PROTECTED AREA?

15          MR. ANDARA:  RIGHT.

16          THE COURT:  COPY WHATEVER THEY WANTED TO COPY ON A

17    HARD DRIVE AND PACK IT UP IN THEIR BAG AND TAKE IT BACK WITH

18    THEM?

19          MR. ANDARA:  CORRECT.  THAT'S EXACTLY RIGHT.

20          THE COURT:  OKAY.

21          MR. ANDARA:  AND THE OTHER PART THAT I JUST WANTED

22    TO FOLLOW UP WITH IS THAT THE E-DISCOVERY VENDOR, THERE WILL BE

23    A BURDEN BECAUSE THIS IS ALL IN AIR GAP SYSTEMS IN GUANGZHOU.

24    IF WE'RE GOING TO PRODUCE IT IN THE U.S., THEN IT GETS PUT UP

25    TO THE NEW X DATABASE THAT IS GOING TO BE ACCESSED THROUGH THE

1    WEB BUT THAT'S BASICALLY A DUPLICATIVE COST BECAUSE NOW WE'VE

2    GOT TO REFOCUS.  IT'S NOT SIMPLY GOING TO BEST BUY AND BUYING A

3    HARD DRIVE AND GIVING IT TO OPPOSING COUNSEL.  IT'S NOT THAT

4    SIMPLE.

5         BUT THE LONG AND THE SHORT OF IT IS WE ANTICIPATE THAT THE

6    SOURCE CODE WOULD BE REQUIRED TO BE PRODUCED IN THE U.S., AND I

7    UNDERSTAND THE COURT'S REASONING BASED ON THE PREVIOUS ORDER

8    BUT THERE WAS NO ORDER THAT SPECIFICALLY STATED THAT FROM MY

9    READING.  IF I'M INCORRECT, I APOLOGIZE FOR THAT.

10        BUT THE SECOND PART OF THAT IS THAT WE DO BELIEVE THAT

11   DOING A PROPORTIONALITY ANALYSIS, THE BUSINESS DATA SHOULD NOT

12   BE TREATED THE SAME AS THE SOURCE CODE.

13             THE COURT:  ALL RIGHT.  I'LL GIVE YOU A CHANCE AT

14   REBUTTAL IF YOU NEED IT AT THIS POINT.

15        MR. HUNG, GO AHEAD, SIR.

16             MR. ANDARA:  GOOD MORNING, YOUR HONOR.

17             THE COURT:  GOOD MORNING.

18             MR. HUNG:  CANDIDLY, I ALSO READ THE COURT'S ORDER

19   THE SAME WAY.  AND IT WAS A 17-PAGE ORDER.  AT PAGE 14 OF THAT

20   ORDER YOUR HONOR ADDRESSED THE ISSUE OF WHETHER IT MADE SENSE

21   THAT THEY WERE PROPOSING TO HAVE AND HAVING THE REVIEW OCCUR IN

22   CHINESE AND THEN TRANSLATION OCCUR IN CHINA.  AND YOUR HONOR

23   SAID THAT DOESN'T MAKE ANY SENSE.  IT STILL DOESN'T MAKE SENSE

24   TO US NOW.

25        I REFER THE COURT TO A DECISION THAT WE'VE PREVIOUSLY

```
1     IDENTIFIED EARLIER.  IT'S THE HEIM DECISION FROM 1990 BY JUDGE

2     HENDERSON.  SIMILAR FACTS.  IT WAS A SWISS DEFENDANT.  AND

3     JUDGE HENDERSON, -LET'S BE REASONABLE.  THIS IS A FOREIGN

4     CORPORATION AND THEY'RE TAKING DISCOVERY OF OUR CLIENT,

5     AUTODESK, RIGHT HERE IN THE NORTHERN DISTRICT OF CALIFORNIA,

6     AND WE'RE IN SAN FRANCISCO, AND THEY'RE IN THE BAY AREA.  WHY

7     FORCE US TO FLY ALL OF THE WAY TO CHINA TO GET THESE DOCUMENTS?

8          I WANT TO NOTE THAT ZWCAD SOFTWARE IS KIND OF PLAYING THIS

9     BOTH WAYS.  WHEN IT WAS A LARGE VOLUME OF SOURCE CODE, THEIR

10    ARGUMENT WAS BECAUSE IT'S A LARGE VOLUME OF SOURCE CODE YOU

11    SHOULD HAVE TO GO TO CHINA.

12         NOW THAT THEY'RE SAYING IT'S NOT A LARGE VOLUME OF

13    DOCUMENTS, THEY ARE SAYING YOU STILL HAVE TO GO TO CHINA.  IT

14    DOESN'T MAKE SENSE.  IF THE DOCUMENTS ARE FEWER, IT MAKES SENSE

15    FOR THEM TO JUST BE ABLE TO SEND IT TO US.

16         ON THE HARD DISK ISSUE, YOUR HONOR, I KNOW YOUR HONOR HAS

17    BEEN INVOLVED WITH DISCOVERY AD NAUSEAM.  PEOPLE SEND HARD

18    DISKS ALL OF THE TIME.  AND THEIR REFERENCE TO AIR GAPS, ET

19    CETERA, WE'RE NOT ASKING THEM TO COMPLICATE THIS PROCESS BY

20    HAVING AN AIR GAP COMPUTER WITH A VPN INTO THE U.S.  WE'RE NOT

21    ASKING FOR THAT.  I DON'T UNDERSTAND WHY THEY JUST CAN'T PUT IT

22    ON A HARD DRIVE AFTER THEY'VE REVIEWED IT AND SEND IT LIKE MOST

23    PEOPLE.

24              THE COURT:  AND YOU'LL TAKE IT FROM THERE?

25              MR. HUNG:  AND WE'LL TAKE IT FROM THERE.  JUST A
```

```
1     COUPLE MORE POINTS, YOUR HONOR.

2          MR. ANDARA DID NOTE THAT WE HAD A CONFERENCE WITH

3     JUDGE DAVILA LAST WEEK AND HE ALSO NOTED THEN THAT HE EXPECTED

4     TO LOSE THIS MOTION.  I THINK YOUR HONOR'S ORDER WAS QUITE

5     CLEAR.

6          BUT JUST TWO THINGS FOR YOUR HONOR TO THINK ABOUT.  HE'S

7     GOING TO HAVE TO REVIEW HIS OWN CLIENT'S DOCUMENTS AT SOME

8     POINT IN THIS CASE.  SO IF YOU FOLLOW HIS LOGIC, HIS

9     REQUIREMENT WOULD BE THAT I JUMP ON A PLANE AND GO TO

10    GUANGZHOU.

11              THE COURT:  WELL, MAYBE NOT YOU, MR. HUNG, BUT ONE

12    OF YOUR COLLEAGUES.

13              MR. HUNG:  THE WONDERFUL MS. BARATH, SOMEONE FLIES

14    TO CHINA TO GET THAT DOCUMENT AND FLIES BACK HERE.  AND

15    MR. ANDARA IS STILL GOING TO HAVE TO LOOK AT HIS OWN CLIENT'S

16    DOCUMENTS AT SOME POINT, AND THOSE DOCUMENTS WILL BE

17    TRANSFERRED FROM CHINA TO HERE.

18         SO ON THE BURDEN POINT HE'S SAYING HE'S NOT TRYING TO

19    MODIFY RULE 34.  AND RULE 34 SAYS THE PLAINTIFFS CAN SPECIFY A

20    REASONABLE PLACE AND TIME AND THAT REASONABLE PLACE AND TIME IS

21    SAN FRANCISCO AND IT'S ALSO THE COURT'S DISCRETION.

22         I'M HAPPY TO KEEP ON GOING, BUT I THINK YOUR HONOR'S PRIOR

23    ORDER IS QUITE CLEAR.

24              THE COURT:  I THINK I HAVE IT, MR. HUNG.

25         MR. ANDARA, ANY BRIEF REBUTTAL ON THIS ONE?
```

1           MR. ANDARA:  WELL, I DIDN'T HEAR ANY CITATION WHERE

2     WE MADE ANY DISTINCTION AS TO THE VOLUME OF SOURCE CODE AND IN

3     TERMS OF THE LARGE VOLUME.  THAT WAS NEVER THE DISCUSSION.

4        THE DISCUSSION WAS THE CLIENT'S CONCERN RELATING TO THE

5     BLOCKING STATUTES.

6        THE OTHER PART OF THIS IS THAT, YES, I WOULD HAVE TO GO TO

7     GUANGZHOU TO REVIEW THE DOCUMENTS BUT THE HUGE DISTINCTION

8     THERE IS WHEN YOU LOOK AT ALL OF THE REQUESTS, AND THEY'VE BEEN

9     SUBMITTED TO THE COURT IN THIS MOTION, THE CORPUS OF

10    INFORMATION THAT IS GOING TO BE RESPONSIVE, I WOULD NOT BE

11    TAKING TO DEFEND THIS CASE IN THE U.S.  WE'RE TALKING ABOUT

12    SOME SMALL -- I MEAN, WHEN YOU GET IN FRONT OF A JURY, YOU'RE

13    NOT TALKING ABOUT THOUSANDS OF EXHIBITS, YOU'RE TALKING ABOUT

14    SEVERAL HUNDRED.

15        SO THERE'S A HUGE DISTINCTION IN TERMS OF THE VOLUME.  AND

16    IF HE'S WILLING TO STIPULATE THAT WHATEVER DOCUMENTS I BRING

17    BACK WITH ME FOR MY CASE IN CHIEF WE'LL PRODUCE, I'M HAPPY TO

18    DO THAT BUT I DON'T THINK HE'D BE PLEASED WITH THAT SMALL

19    VOLUME.

20           THE COURT:  I THINK THAT MUCH WE CAN ALL AGREE ON.

21    ALL RIGHT.

22        WELL, ON THIS PARTICULAR ISSUE, I'M GOING TO I SUPPOSE

23    IT'S GRANT THE MOTION FOR CLARIFICATION BUT CLARIFY THAT I WANT

24    THE DOCUMENTS PRODUCED ON HARD DRIVE SHIPPED OVER TO AUTODESK.

25    I THINK THAT'S REASONABLE GIVEN THE CIRCUMSTANCES AND GIVEN THE

1    RELATIVE BURDENS.

2         LET'S TURN NEXT TO THIS VERY INTERESTING ISSUE OF THE

3    NEUTRAL EXPERT.  MR. ANDARA, THIS IS YOUR MOTION AS WELL SO

4    I'LL START WITH YOU, SIR.  TELL ME WHAT YOU HAVE IN MIND HERE.

5    I DON'T SEE THESE VERY OFTEN.

6              MR. ANDARA:  SURE.  ONE OF THE OTHER CONCERNS WE'VE

7    HAD AND IT WAS ARTICULATED IN THE PREVIOUS MOTION WAS THAT

8    WE'RE GOING TO NEED UNLIMITED TIME TO REVIEW SOURCE CODE.

9    THAT'S NOT REASONABLE OR NECESSARY.  SOURCE CODE HAS A DISCRETE

10   VOLUME, AND THERE'S A SPECIFIC AMOUNT OF INFORMATION THAT'S

11   GOING TO BE REVIEWED.  AND, CANDIDLY, YOU'RE GOING TO BE USING

12   TOOLS THAT IS GOING TO MAKE THIS PROCESS EVEN MORE EFFICIENT,

13   WHICH IS LIKELY GOING TO TAKE A COUPLE WEEKS OR MAYBE A COUPLE

14   OF WEEKS OR A COUPLE OF DAYS UP TO A COUPLE OF WEEKS.  AND I

15   HAVE A DECLARATION FROM AN EXPERT AT EXPONENTS WHO COULD SERVE

16   IN THE ROLE AS A NEUTRAL EXPERT WHO SAID AS MUCH.

17        THE ARGUMENTS THAT THEY MAKE NOW THAT THIS PROCESS WOULD

18   BE INEFFICIENT AND IT'S GOING TO DELAY THE PROCESS IS

19   COMPLETELY INCONSISTENT WITH THE STATEMENT THAT THEY MADE TO

20   THE COURT AT THE HAGUE WHERE THEY TALKED ABOUT HOW -- AND THIS

21   IS DOCUMENT 82-2 AT PAGE 7 OF 79.  I BELIEVE THIS IS AN EXHIBIT

22   TO MR. -- HOLD ON.  THIS IS ACTUALLY EXHIBIT A TO MY

23   DECLARATION.    BUT THEY -- AUTODESK IS ARGUING AND

24   EXPLAINING TO THE COURT ALL OF THE BENEFITS AND THE

25   EFFICIENCIES IN HAVING A NEUTRAL EXPERT.  IT WILL ALLOW THE

1    CODE TO BE REVIEWED MUCH MORE EFFICIENTLY THAN HAVING TWO

2    SEPARATE EXPERTS.  IT WILL ALLOW THE PARTIES TO EVALUATE WHAT

3    CLAIMS AND WHAT POTENTIAL SETTLEMENTS THEY CAN HAVE.

4         ALL OF THOSE REASONS ARE EQUALLY APPLICABLE HERE.  EVEN IF

5    THE LAW THAT IS APPLIED IN THAT JURISDICTION IS DIFFERENT,

6    THOSE REASONS ARE EQUALLY APPLICABLE.

7              THE COURT:  SO I APOLOGIZE IF I'M MISSING AN OBVIOUS

8    OR A FUNDAMENTAL POINT HERE.  I'M STILL STRUGGLING TO

9    UNDERSTAND, WHAT WOULD BE THE CHARGE OR THE DIRECTION GIVEN TO

10   THE EXPERT?  WHAT IS HIS OR HER ASSIGNMENT GOING INTO THE

11   SOURCE CODE REPOSITORY?

12             MR. ANDARA:  SURE.  SO HE'S GOING TO TAKE THE SOURCE

13   CODE THAT AUTODESK PROVIDES AS THE ORIGINAL AND HE'S GOING TO

14   TAKE THE COPY AND COMPARE THE TWO AND SEE WHETHER THEY'RE THE

15   SAME CODE OR SIMILAR AND THEN HE'S GOING TO CREATE A REPORT AND

16   SAY HERE'S WHERE IT'S THE SAME OR SIMILAR.

17        AND THEN THE PARTIES ARE GOING TO HAVE THEIR OWN EXPERTS

18   TALK ABOUT WHETHER OR NOT THAT WAS PROTECTABLE COPYRIGHT,

19   WHETHER OR NOT THAT WAS FROM A THIRD PARTY.

20             THE COURT:  THE USUAL FIGHTS.

21             MR. ANDARA:  EXACTLY.  BUT THE ONE DISCRETE ACTIVITY

22   IS VERY SMALL AND THE REASON WHY THAT IS NECESSARY IN THIS CASE

23   IS BECAUSE, AS COUNSEL INDICATED, WE WERE IN FRONT OF

24   JUDGE DAVILA LAST WEEK AND WE TALKED -- OR THE ISSUE IN THE

25   MOTION TO DISMISS.

1          THE COURT:  I'M NOT SURE HE'D APPRECIATE BEING

2    DESCRIBED AS CONFRONTATIONAL.  I TAKE YOUR POINT, YOU WERE IN

3    FRONT OF HIM AND HE WEIGHED IN ON SOME OF THESE ISSUES.

4          MR. ANDARA:  EXACTLY.  AND WHAT THE ISSUE IS AND

5    WHAT HAS GENERATED THIS MOTION FOR A COURT APPOINTED EXPERT IS

6    THAT WE TAKE ISSUE WITH THE FACT OF WE HAVEN'T BEEN TOLD WHAT

7    COPYRIGHT WE INFRINGE OR WHAT TRADE SECRET WE INFRINGE.

8          THERE'S BEEN THIS GENERAL ALLEGATION THAT THERE HAS BEEN

9    HUNDREDS OF COPYRIGHTS THAT THEY OWN AND ONE OF WHICH WE MAY

10   HAVE INFRINGED.

11         THEY MAKE REFERENCE TO THREE SPECIFIC COPYRIGHTS WHICH ARE

12   ALL DIFFERENT ITERATIONS AND DIFFERENT VERSIONS OF AUTOCAD 2008

13   BUT THEY NEVER IDENTIFY THE SPECIFIC COPYRIGHT.

14         AND SPECIFICALLY WE ASKED IN DISCOVERY WHAT SPECIFIC

15   COPYRIGHT HAVE WE INFRINGED.  AND THEY RESPONDED AFTER THE

16   PARTIES HAVE PRODUCED SOURCE CODE AND ANALYZED WHICH PORTIONS

17   OF AUTOCAD SOURCE CODE ZWCAD COPIED, THEN AUTODESK WILL PRODUCE

18   DOCUMENTS SUFFICIENT TO EVIDENCE THAT SUCH SOURCE CODE IS THE

19   SUBJECT OF A REGISTERED COPYRIGHT.

20         AND THE POINT BEING IS THAT WE BELIEVE THAT SHOULD HAVE

21   BEEN ALLEGED IN THE COMPLAINT SO WE KNOW WHAT WE'RE DEFENDING

22   AGAINST.

23         BUT RATHER THAN, YOU KNOW, PROLONG THIS, WE'RE SAYING ONE

24   OF THE WAYS TO DEAL WITH THIS ISSUE IS THAT WE WOULD HIRE A

25   COURT APPOINTED EXPERT AND THEN AT THE RISK OF US DISCLOSING

1    ALL OF OUR PROPRIETARY TRADE SECRETS AND LET THEM GO ON AN

2    UNFETTERED FISHING EXPEDITION IT WOULD BE BALANCED.

3              THE COURT:  YOU'RE SAYING IT WOULD BE ONE THING IF

4    YOU WERE GIVEN A VERY SPECIFIC AND DISCRETE LISTING OF

5    REGISTRATIONS AND CITATIONS TO PARTICULAR CONTENTS WITHIN THE

6    REGISTRATION AND THE CASE PROCEEDED ALONG THOSE LINES, BUT

7    THAT'S NOT WHAT HAS HAPPENED HERE.

8              MR. ANDARA:  WELL, AND ALSO THE ALLEGATIONS OF

9    COPYRIGHT INFRINGEMENT WOULD NOT NECESSARILY IMPLICATE ALL

10   THREE MILLION LINES OF CODE.  THEY MAY BE TEN THOUSAND LINES OF

11   CODE.  THEY'RE NOT ENTITLED TO SEE EVERY FUNCTIONALITY WE HAVE,

12   ESPECIALLY WHEN SOME OF OUR FUNCTIONALITY IS NOT INCLUDED IN

13   THEIR PRODUCT.

14      THE GREATER RISK WE HAVE IS THAT WE HAVE A SITUATION HERE

15   WHERE AUTODESK HAS REACHED OUT TO AN EX-EMPLOYEE SPECIFICALLY

16   TRYING TO GET OUR SOURCE CODE.

17             THE COURT:  THIS IS MR. X.

18             MR. ANDARA:  CORRECT.  WHICH HAS NEVER BEEN SECRET,

19   MR. ZHOU.  AND THEY CLEARLY HAVE AN INTENT TO OBTAIN OUR TRADE

20   SECRET OUTSIDE OF COUNSEL.  AND SO THAT'S ANOTHER REASON WHY

21   HAVING A NEUTRAL WOULD PROTECT OUR INTEREST.

22      THE BENEFIT OF ALLOWING 3.8 MILLION LINES OF CODE TO BE

23   REVIEWED BY THEM DOES NOT OUTWEIGH THE RISK TO US AND THEM

24   LOOKING AT, YOU KNOW, MILLIONS OF LINES OF CODE THAT ARE

25   COMPLETELY IRRELEVANT TO THIS CURRENT COPYRIGHT DISPUTE AND

1     TRADE SECRET DISPUTE.

2              THE COURT:  ALL RIGHT.  I'LL GIVE YOU A CHANCE AT

3     REBUTTAL ON THIS ONE AS WELL.  MR. HUNG.

4              MR. HUNG:  YOUR HONOR, WE ARE NOW 14 MONTHS INTO

5     THIS CASE.  WE HAVE NOT RECEIVED A SINGLE PRODUCTION OF ANY

6     SORT FROM ZWCAD SOFTWARE.

7         EVERY MOTION THAT THIS COURT HAS SEEN, JUDGE DAVILA'S

8     MOTION, ALL OF THE MOTIONS THAT THE COURT HAS SEEN ARE TO

9     PREVENT US FROM GETTING ANY FORM OF DISCOVERY.

10        THIS IS THE LATEST MOTION TO TRY -- WE ONLY HAVE

11    FIVE MONTHS LEFT, YOUR HONOR.  ALL WE HAVE IS FIVE MONTHS LEFT

12    IN THIS CASE FOR DISCOVERY.

13        THEIR LATEST PROPOSAL, YOUR HONOR, IS TO HAVE AN

14    INDEPENDENT EXPERT REVIEW THE CODE AND BASICALLY USURP THE

15    FUNCTION OF THE JURY, DECIDE WHETHER COPYING HAS OCCURRED AND

16    THEN AND ONLY THEN CAN AUTODESK COME IN AND REVIEW IT.  IT JUST

17    DOESN'T MAKE SENSE UNDER THE AMERICAN SYSTEM OF DISCOVERY.

18        ON THE DUTCH ISSUE, YOUR HONOR, THE DUTCH ISSUE WAS A HUGE

19    WIN FOR US BECAUSE IT'S AN INQUISITORIAL SYSTEM.  IT'S NOT AN

20    ADVERSARIAL SYSTEM.  WE HAD TO BEG THAT JURISDICTION TO LET US

21    HAVE AN EXPERT REVIEW THE CODE IN THE FIRST PLACE.

22        THEY'RE TURNING IT UPSIDE-DOWN.  THEY'RE SAYING THE FACT

23    THAT HE USED A NEUTRAL EXPERT THERE OR GOT A NEUTRAL EXPERT

24    MEANS THAT'S ALL YOU'RE ENTITLED TO HERE.

25              THE COURT:  SO I'M CURIOUS, MR. HUNG, IN THE DUTCH

```
1      PROCEEDINGS IS THE JUDGE LITERALLY DOING THE SOURCE CODE

2      INSPECTION ANALYSIS?

3                    MR. HUNG:  NO, BUT THE JUDGE IS THE FACT FINDER.

4                    THE COURT:  AND THEY'RE SOME APPOINTED EXPERT OR

5      MASTER THAT HELPS THE COURT, AS FAR AS YOU KNOW, PERFORM THAT

6      FUNCTION?

7                    MR. HUNG:  AND THAT'S WHAT WE HAVE PROPOSED IN THAT

8      CASE.

9                    THE COURT:  I SEE.

10                   MR. HUNG:  IT'S NOT THE NORMAL COURSE IN THE

11     INQUISITORIAL SYSTEM.

12          JUST, YOUR HONOR, MORE BACKGROUND HERE.  IN OUR COMPLAINT

13     WE PROVIDE THE 13 CATEGORIES, NOT EXAMPLES, 13 CATEGORIES OF

14     COPYING, 30 EXAMPLES IN THE COMPLAINT.  WE EXPLAIN THAT, FOR

15     EXAMPLE, THEY TOOK A TEXT FILE AND THEY JUST RIP OUT THE

16     AUTODESK C COPYRIGHT, AND THEY DISTRIBUTED IT TO THEIR

17     CUSTOMERS.  THIS IS WHOLESALE COPYING.

18          IN TERMS OF THE BURDEN TO COLLECT, WE HAVE ALREADY

19     COLLECTED THE SOURCE CODE FOR AUTODESK.  IT'S NOT GOING TO TAKE

20     THEM HOURS OR WEEKS TO COLLECT THESE EIGHT MILLION LINES, THREE

21     MILLION LINES.

22                   THE COURT:  SO, MR. HUNG, I APOLOGIZE IF YOU HAVE

23     ALREADY TOLD ME THIS IN A PREVIOUS HEARING OR IN YOUR PAPERS.

24     CAN YOU JUST LAY OUT FOR ME THE BASIC TAXONOMY OF WHAT PRODUCT

25     AND VERSIONS WE'RE TALKING ABOUT HERE?
```

1          MR. HUNG:  YES, YOUR HONOR.  THE PRODUCT AT ISSUE WE

2   BELIEVE IS AUTOCAD 2008.  IT'S CAD SOFTWARE.  SO IF YOUR HONOR

3   WERE DESIGNING THIS MICROPHONE, IT WOULD USE IT.

4          THE COURT:  I'M FAMILIAR WITH IT.

5          MR. HUNG:  ALL FORTUNE 100 COMPANIES USE IT.

6   IT'S THEIR FLAGSHIP PRODUCT.

7          THE COURT:  BUT IT'S JUST THE 2008 VERSION?

8          MR. HUNG:  THERE ARE SUBVERSIONS.  WE IDENTIFIED

9   THOSE COPYRIGHTS ALSO IN OUR COMPLAINT AND THE SPECIFIC

10  COPYRIGHT NUMBERS.

11      THE ISSUE HERE, YOUR HONOR, IS THAT THERE'S AN LT VERSION.

12  IT'S KIND OF LIKE A MICROSOFT WORKS, YOU MIGHT SAY.  THERE'S A

13  DEFEATURE VERSION.  BUT IT'S ALL THE SAME SOURCE CODE BASE FOR

14  LACK OF A BETTER WORD.

15          THE COURT:  UH-HUH.

16          MR. HUNG:  SO WE IDENTIFY THOSE THREE SPECIFIC

17  COPYRIGHTS IN OUR COMPLAINT.  WE'RE PREPARED TO MAKE THAT --

18  THE ENTIRE BODY OF SOURCE CODE AVAILABLE FOR THEM.

19          THE COURT:  AND THAT'S REALLY MY QUESTION.  SO HAS

20  YOUR OFFER OR PRODUCTION BEEN COMMENSURATE IN SCOPE WITH THE

21  SPECIFIC COPYRIGHT REGISTRATIONS THAT YOU'RE RELYING UPON?

22          MR. HUNG:  ABSOLUTELY, YOUR HONOR.  WE ARE PREPARING

23  AND WE HAVE SITTING IN A VAULT AT MORRISON & FOERSTER, AND I'M

24  NOT GOING TO SAY WHICH OFFICE BECAUSE WE'RE ON THE RECORD, BUT

25  WE HAVE SECURED OUR --

```
1              THE COURT:  YOU HAVE VAULTS AT MORRISON & FOERSTER?

2              MR. HUNG:  YES, WE HAVE SAFES, YOUR HONOR.  WITH THE

3     AUTOCAD 2008 THE ENTIRETY OF THE SOURCE CODE.  AND WE EITHER

4     HAVE RIGHT NOW OR ARE PREPARING TO OBTAIN THE 2007.  WE MAY

5     ACTUALLY HAVE THEM ALREADY TWO FULL VERSIONS THAT WE'RE GOING

6     TO RELY ON FOR THEIR VIEW IN THIS ESCROW SERVICE.

7          SO IT'S NOT LIKE WE'RE NOT BEING PROPORTIONATE IN TERMS OF

8     OUR DISCLOSURE.  ONE NOTE, YOUR HONOR, ON RULE 706, IF YOU LOOK

9     AT THE VERY LAST LINE OF RULE 706, RULE 706 EXPRESSLY STATES

10    "THIS RULE DOES NOT LIMIT A PARTY IN CALLING ITS OWN EXPERTS."

11         SO, AGAIN, WHAT THEY'RE TRYING TO DO IS TO CREATE YET

12    ANOTHER GATING MECHANISM WHERE THEY HAVEN'T PRODUCED A SINGLE

13    DOCUMENT IN THIS CASE AND THERE'S ONLY FIVE MINUTES LEFT TO OUR

14    REVIEW OF THE SOURCE CODE.  WE JUST WANT TO GET IN, YOUR HONOR

15         I'M HAPPY TO KEEP ON GOING, YOUR HONOR.  THERE ARE SOME

16    SPECIFIC ISSUES WITH RESPECT TO THE ESCROW THAT I'D LIKE TO

17    RAISE THAT MR. ANDARA AND I DID DISCUSS.  I CAN DISCUSS THOSE

18    NOW OR I CAN DISCUSS THOSE LATER.

19              THE COURT:  WHY DON'T YOU GO AHEAD AND LAY THAT OUT

20    BECAUSE I THINK IT IS IMPORTANT.

21              MR. HUNG:  I KNOW YOUR HONOR DEALS WITH PATENT CASES

22    AD NAUSEAM AND THOSE PATENT CASES AD NAUSEAM THE REVIEW EITHER

23    OCCURS -- IT'S NOT LIMITED IN TERMS OF HOURS.  IT OCCURS TO THE

24    LAST DAY OF FACT DISCOVERY OR THE LAST DATE OF EXPERT

25    DISCOVERY.  THERE'S NO 40-HOUR LIMIT WHICH THEY'RE PROPOSING
```

1   HERE.

2         THEY'VE ALSO PROPOSED A LIMIT ON THE NUMBER OF REVIEWERS.

3   THEY'VE IDENTIFIED SEVERAL REVIEWERS AS HAVE WE.  THE ROOM IS

4   ONLY SO BIG.  WE'RE NOT GOING TO PUT 15 PEOPLE IN THAT ROOM.

5   THE CURRENT PROTECTIVE ORDER ONLY ALLOWS 10 INDIVIDUALS FOR

6   REVIEW OF THE SOURCE CODE PRINTOUTS.  AND I DON'T SEE WHY WE

7   HAVE TO LIMIT THAT TO TWO PEOPLE WHICH IS WHAT THEY PROPOSE.

8         WHEREAS IF YOU HAVE EVEN TWO OF OUR REVIEWERS AND THEN

9   MS. BARATH AND ME IN THE ROOM, WE SOMEHOW EXCEEDED THE BALANCE

10  THAT WE WANT.

11        THE LAST POINT, YOUR HONOR, IS TOOLS.  AND WE PROPOSED

12  THAT CERTAIN TOOLS BE PLACED ON THE MACHINE.  ONE EXAMPLE IS A

13  PLAGIARISM SOFTWARE BY PROFESSOR STANFORD KNOWN AS THE MOSS

14  TOOL.  IT'S WHAT THEY USE TO CATCH ACADEMIC CHEATING.

15        BUT IF THAT'S NOT THE TOOL THEY WANT TO USE, IT KIND OF

16  DOESN'T MATTER THE TOOLS THAT EITHER PARTY WANTS TO USE BECAUSE

17  WE'RE GETTING IN A SECURE ESCROW ENVIRONMENT.

18        EITHER EXPERT SHOULD BE ABLE TO PUT ANY TOOLS THAT THEY

19  WANT TO PERFORM THEIR WORK PRODUCT TO DO THEIR ANALYSIS.  THEY

20  SHOULDN'T JUST BE ABLE TO SAY NO.

21        I'M JUST TEEING THIS UP, YOUR HONOR, BECAUSE, AGAIN, WE'RE

22  14 MONTHS INTO THIS CASE AND HAVEN'T SEEN A SINGLE ITEM OF

23  PRODUCTION FROM THEM.  WE ALL AGREE SOURCE CODE IS A GATED

24  ITEM.  WE'RE TRYING TO BE REASONABLE.

25        AT THE VERY START, WHEN WE MEET AND CONFERRED I SAID I'M

1    NOT TRYING TO DRIVE UP YOUR COSTS AND I AM NOT GOING TO BEAT

2    YOU UP ON UNNECESSARY E-MAILS AND THE LIKE BECAUSE SOURCE CODE

3    IS THE MOST IMPORTANT.  AND WITH FIVE MONTHS LEFT WE KIND OF

4    HAVE TO START THAT NOW, YOUR HONOR.

5         BUT IT JUST MAKES SENSE, LET'S GET INTO THE SOURCE CODE

6    AND LET OUR EXPERTS USE THE TOOLS THAT THEY WANT AND THEY

7    IDENTIFIED AN EXPERT THAT USES A PRODUCT CALLED CODE SWEEP, AND

8    THAT'S FINE IF THAT'S WHAT THEY WANT TO USE.

9         OUR EXPERT SHOULD BE ENTITLED TO USE WHATEVER THEY WANT ON

10   THIS NON-NETWORK SECURED ESCROW COMPUTER.

11             THE COURT:  AND I TAKE IT, MR. HUNG, YOUR EXPERTS

12   ARE READY TO GO?

13             MR. HUNG:  OUR EXPERTS ARE READY TO GO.

14             THE COURT:  THANK YOU.  MR. ANDARA, GO AHEAD.

15             MR. ANDARA:  WELL, WE'RE IGNORING THE COSTS HERE.  I

16   MEAN, THERE IS A COST TO SETTING UP A CLEAN ROOM AS ATTACHED TO

17   MY EXHIBIT.  THE ESTIMATES I'VE BEEN GIVEN ARE UP TO $5,000 A

18   DAY.  WHO GETS TO PAY FOR THAT COST?

19             MR. HUNG:  WE'RE GOING TO BE HOSTING A CLEAN ROOM TO

20   REVIEW OUR SOURCE CODE FOR AN UNLIMITED AMOUNT OF TIME.  AGAIN,

21   THERE'S A CONTEXT HERE.  WE HAVE 50,000 IN SALES OF THE ACCUSED

22   PRODUCT, AND WE'RE GOING TO BEAT THAT UP IN 10 DAYS.

23        I DON'T THINK 40 HOURS IS UNREASONABLE.  AND, LISTEN, IF

24   THEY CAN ARTICULATE GOOD CAUSE, KEEP IN MIND WE'RE USING TOOLS

25   HERE.  IT'S NOT A LINEAR REVIEW OF EVERY LINE OF SOURCE CODE.

1      AND THE PROTOCOL THAT I GOT THIS MORNING FROM OPPOSING

2   COUNSEL'S OFFICE IS A LITTLE DIFFERENT THAN WHAT MR. HUNG IS

3   REPRESENTING.  HE'S INDICATING IT'S NOT JUST AUTOCAD 2008.

4   IT'S GOING TO BE AUTOCAD 2007 AND 2008.

5      AND HE ALSO INDICATES THAT BOTH PARTIES ARE GOING TO BE

6   REQUIRED TO BRING TWO COMPUTERS FOR THE ESCROW SERVICE AND THAT

7   WE'RE GOING TO BE REQUIRED TO HAVE 24 DIFFERENT SOFTWARE

8   APPLICATIONS WHICH INCLUDE SOME OF THE TOOLS THAT HE JUST

9   REFERENCED.  AND IT HAS TO HAVE 8 TERABYTES OF DATA.  THERE'S A

10  REAL COST TO ALL OF THOSE THINGS THAT ARE BEING DEMANDED HERE.

11     WHEN YOU HAVE A NEUTRAL EXPERT WHO HAS ONE MACHINE WITH

12  BOTH PIECES OF SOFTWARE AND WHATEVER TOOLS HE WANTS TO USE, ALL

13  OF THOSE COSTS ARE REDUCED.  HE'S ON A SET TIMELINE TO DO THE

14  REVIEW AND THIS ISN'T SOMETHING WHERE THEY NEED TO GO IN DAY IN

15  AND DAY OUT.  IT'S EITHER THE SAME OR IT'S NOT.  IT'S EITHER

16  SIMILAR OR IT'S NOT.  AND THE FACT THAT WE'RE IGNORING THESE

17  COSTS THAT MY CLIENT IS GOING TO HAVE TO PAY FOR, I JUST THINK

18  THAT'S INHERENTLY UNFAIR.

19     THE OTHER ISSUE IS THAT THERE'S BEEN A WILLFUL IGNORANCE

20  OF THE FACT THAT BOTH OF THESE PRODUCTS COME FROM THE SAME

21  LINEAGE.  BOTH OF THEM ARE BUILT ON INTELLICAD, WHICH IS THE

22  SOFTWARE THAT IS GOING TO HAVE SIMILARITIES IN THE CODE AND

23  SIMILARITIES IN THE GLITCHES.

24     IN OUR EXHIBIT I TO MY DECLARATION ARE INTERROGATORIES,

25  PAGE 21 AT 109, DOCKET 82-3, THEY MAKE A BIG DEAL ABOUT THESE

1    HASH ERRORS.  WELL, WE'VE GOT SCREEN SHOTS THAT SHOW AUTOCAD,

2    ZWCAD, INTELLICAD, BRICSCAD, DRAFTSIGHT, NANOCAD.  AND THEY ALL

3    HAVE THE SAME ERRORS BECAUSE IT'S ALL FROM THE SAME LINEAGE.

4    THAT DOESN'T JUSTIFY UNLIMITED REVIEW OF OUR SOURCE CODE AND

5    APPOINTING AN EXPERT IS GOING TO NOT ONLY BE MORE EFFICIENT AND

6    MORE COST EFFECTIVE, IT'S GOING TO PROTECT US FROM THE RISK OF

7    DISCLOSING OUR SOURCE CODE TO OUR BIGGEST COMPETITOR.

8            THE COURT:  ALL RIGHT.  I THINK I'VE GOT IT.

9        MR. HUNG, IF YOU WANT ONE LAST WORD ON THIS AND THEN WE

10    WILL TURN TO YOURS AS WELL.

11            MR. HUNG:  I'M HAPPY, YOUR HONOR.  IF I COULD MAKE A

12    FEW COMMENTS?

13            THE COURT:  SURE.

14            MR. HUNG:  WE'VE PROPOSED TWO SERVICES.  WE'VE

15    PROPOSED EXPONENTS AND IT EMBARRASSES ME TO SAY THAT FOUR YEARS

16    AGO I ARGUED AN ESCROW MOTION BEFORE YOU AND YOU TOLD US TO

17    APPOINT SOMEONE AND WE USED IRON MOUNTAIN.  SO IN THE

18    APPLE/SAMSUNG CASE WE USED IRON MOUNTAIN.

19        WE APPEARED TO BE IN AGREEMENT.  AND YESTERDAY HE SAID

20    IRON MOUNTAIN IS NOT GOING TO WORK AND USE EXPONENTS.  AND OUR

21    VIEW IS IRON MOUNTAIN IS CHEAPER BECAUSE YOU JUST SET UP AND

22    HOST AND THEN YOU PAY WHEN YOU VISIT.  WE'RE HAPPY TO PAY FOR

23    EVERY DAY THAT WE HAVE TO VISIT IF THEY'RE NOT VISITING.

24        BUT, YOUR HONOR, THINK ABOUT WHAT IS REALLY HAPPENING

25    HERE.  IF WE'RE RIGHT AND THEY'RE THE COPYIST, THEY HAVE NO

1    DESIRE TO PERFORM A TRUE INSPECTION TO DETERMINE COPYING.  AND

2    THAT'S OUR BURDEN AND THAT'S WHY WE WANT THE TIME.

3         ONE ISSUE ON THE HASH FUNCTION, YOUR HONOR, IN TERMS OF

4    THE INTELLICAD AND I WANT TO RAISE THIS IN OPEN COURT.  I DON'T

5    THINK THEY EVER APPRECIATED THAT THOSE HASH ERRORS HAVE BEEN

6    VERY SPECIFIC INPUT FILES THAT OUR CUSTOMER GAVE US.  THEY JUST

7    CAN'T DRAW A CLOVER AND MAKE THOSE ERRORS APPEAR.  THAT'S THE

8    ISSUE HERE, YOUR HONOR, THE SPECIAL FILES THAT ONLY CREATE THIS

9    ERROR.

10        SO IF THIS IS A COST SHIFTING ISSUE, YOUR HONOR, WE'RE

11   HAPPY TO DISCUSS THAT BUT WE WANT OUR TIME WITH THE CODE AND

12   WITH FIVE MINUTES -- FIVE YEARS LEFT -- FIVE MONTHS LEFT, WE

13   WOULD JUST LOVE TO GET IT.

14             THE COURT:  I'M SURE JUDGE DAVILA DOESN'T WANT TO

15   TAKE FIVE YEARS.

16             MR. HUNG:  I WISH IT WAS FIVE MINUTES.  AND JUST ONE

17   LAST POINT ON THE TOOLS, YOUR HONOR.

18             THE COURT:  SURE.

19             MR. HUNG:  WE WILL PAY FOR OUR TOOLS.  WE WANT TO

20   PUT 24 TOOLS ON.  AND WE DID IDENTIFY A LARGE LIST.  THAT'S

21   WHAT OUR EXPERT NEEDS, AND WE'LL PAY FOR IT.  WE WILL PAY FOR

22   THE SOURCE CODE FOR THE SOFTWARE LICENSES.

23             THE COURT:  OKAY.  LET ME TAKE THE MOTION ON THE

24   NEUTRAL EXPERT OR IN THE ALTERNATIVE PROTECTIVE ORDER UNDER

25   SUBMISSION.  I WANT TO THINK A LITTLE BIT FURTHER ABOUT THAT

1    ONE.  I'LL GET YOU AN ORDER QUICKLY BECAUSE TIME IS WASTING,

2    BUT THAT'S AN INTERESTING AND CHALLENGING ISSUE.

3         THERE IS ONE FURTHER ISSUE, MR. HUNG, YOUR MOTION TO

4    COMPEL.

5              MR. HUNG:  YOUR HONOR, WITH YOUR AGREEMENT I'D LIKE

6    MY COLLEAGUE, MS. BARATH, TO ARGUE THIS.

7              THE COURT:  ABSOLUTELY.  GOOD MORNING AND WELCOME.

8              MS. BARATH:  GOOD MORNING, YOUR HONOR.  AS YOU KNOW,

9    THIS MOTION IS ABOUT MR. X AS WE CALLED HIM, BUT I GUESS ZWCAD

10   IS COMFORTABLE REVEALING HIS NAME AS MR. ZHOU.  IT'S PLAINLY

11   CLEAR THAT THE EVIDENCE THAT MR. ZHOU HAS IS RELEVANT.  HE'S

12   TOLD US THAT HE HAS EVIDENCE OF COPYING.

13             THE COURT:  CAN I JUST STOP YOU, MS. BARATH, AND ASK

14   YOU A PRELIMINARY QUESTION.  HOW DID YOU COME TO KNOW ABOUT

15   MR. X?

16             MS. BARATH:  SO BASICALLY HE SENT ONE OF OUR I.T.

17   PEOPLE A CHAT MESSAGE, AND SO THERE'S BASICALLY AN

18   ADMINISTRATOR WHOSE CONTACT IS WE CHAT, AND HE SENT A MESSAGE

19   SAYING THAT I HAVE INFORMATION ABOUT ZWCAD COPYING.

20             THE COURT:  THERE WAS NO DARK GARAGE IN WASHINGTON,

21   D.C.?

22             MS. BARATH:  NO, NO.

23             THE COURT:  MEN IN HATS AND ALL OF THAT?

24             MS. BARATH:  NO, NO.

25             THE COURT:  OKAY.  I GET IT.

1          MS. BARATH:  AND, IN FACT, ZWCAD ITSELF ADMITS THAT

2     MR. ZHOU WAS INVOLVED IN THE DEVELOPMENT OF THE CODA ISSUE AND

3     HAS PERTINENT INFORMATION.

4          IN FACT, THEY ADMIT THAT THE DOCUMENTS THAT THEY HAVE

5     SHOULD BE PRODUCED.  SO ON THAT POINT, BECAUSE WE HAD A MOTION

6     TO COMPEL THE DOCUMENTS, THE ISSUE WAS JUST THAT THEY HAVEN'T

7     PRODUCED THE DOCUMENTS YET PARTLY BECAUSE THEY WERE TRYING TO

8     PRODUCE THEM FOR INSPECTION IN CHINA.  BUT AS YOUR HONOR HAS

9     ALREADY HELD, THEY SHOULD BE PRODUCED IN THE U.S. AND THAT

10    SHOULD NOT BE DELAYED BECAUSE, AS MR. HUNG HAS POINTED OUT,

11    DISCOVERY IS DRAWING TO AN END.

12         SO REALLY THE ONLY ISSUE THAT REMAINS IS WHAT HAPPENS WITH

13    MR. ZHOU AND HIS ABILITY TO TALK TO US.  AND SO WE WANT TO BE

14    ABLE TO TALK TO HIM ON A VOLUNTARY BASIS.

15         THE COURT:  HE'S A FORMER EMPLOYEE?

16         MS. BARATH:  HE'S A FORMER EMPLOYEE OF ZWCAD, YES.

17         THE COURT:  SO WHAT RESTRICTIONS DO YOU FACE OF

18    PICKING UP THE PHONE OR MEETING WITH HIM IN PERSON?

19         MS. BARATH:  WELL, SO WE ARE ABLE TO CALL HIM, BUT

20    WE WANT TO MAKE SURE WE'RE NOT RUNNING AFOUL OF ANY

21    CONFIDENTIALITY AGREEMENTS THAT HE MIGHT HAVE WITH ZWCAD OR

22    PROTECTIVE ORDERS.

23         THE COURT:  YOU DON'T WANT TO FACE A TORTUOUS

24    INTERFERENCE CLAIM DOWN THE ROAD?

25         MS. BARATH:  EXACTLY.  SO WE WANT TO MAKE SURE THAT

1    THE COURT AGREES THAT MR. ZHOU CAN SPEAK WITH US.

2         THE COURT:  SO YOU WANT ME TO BLESS YOUR POTENTIAL

3    TORTUOUS INTERFERENCE CLAIM?

4         MS. BARATH:  WELL, THERE HAVE BEEN CASES IN THE

5    NORTHERN DISTRICT THAT SAY THAT THE WHISTLEBLOWER SHOULD BE

6    PERMITTED TO TALK TO PLAINTIFFS LIKE US ABOUT ANY POTENTIAL

7    ILLEGAL ACTIVITY THAT HAS HAPPENED.  FOR EXAMPLE, THE IN RE

8    JDSU CASE THAT JUDGE LAPORTE SAID THAT THE DISCUSSIONS WOULD

9    NOT VIOLATE THE CONFIDENTIALITY AGREEMENTS THAT THOSE FORMER

10   EMPLOYEES HAD AND SIMILARLY JUDGE LAPORTE SAID THAT JDSU

11   ATTORNEYS COULD NOT BE PRESENT AT THOSE CONVERSATIONS.

12        SO WHAT WE'RE BASICALLY ASKING THE COURT TO DO IS

13   SOMETHING THAT HAS HAPPENED BEFORE IS ENJOIN ZWCAD FROM

14   BASICALLY PURSUING MR. ZHOU FOR TALKING TO OUR ATTORNEYS,

15   AUTODESK ATTORNEYS.

16        THE COURT:  HERE'S THE QUESTION I HAVE.  SO "ENJOIN"

17   IS THE RIGHT WORD AND ISN'T THERE A FIRST AMENDMENT ISSUE HERE?

18   BECAUSE IT SEEMS TO ME THAT IF THEY HAVE A RIGHT OF REDRESS IN

19   THE COURTS FOR VIOLATIONS OF THEIR CONFIDENTIALITY AGREEMENTS,

20   WHAT YOU'RE ASKING ME ESSENTIALLY IS TO ISSUE A PRIOR RESTRAINT

21   ON THEIR ABILITY THAT GOES TO RELIEF FOR THAT VIOLATION.

22        MS. BARATH:  WELL, SOMETHING WE DO WANT TO MAKE

23   CLEAR IS WE DON'T WANT TO PROHIBIT THEM FROM SEEKING REDRESS

24   FOR ANY TRADE SECRET MISAPPROPRIATION IF MR. ZHOU GIVES ANY

25   TRADE SECRETS TO AUTODESK EMPLOYEES.

1            THE COURT:  SO DISCLOSING CONFIDENTIAL INFORMATION

2     IS OKAY BUT YOU JUST -- BUT TRADE SECRETS ARE OFF THE TABLE?

3            MS. BARATH:  WELL, SO WHAT WE'RE TALKING ABOUT IS

4     ILLEGAL ACTIVITY.  SO HE HAS EVIDENCE OF ZWCAD COPYING.  SO

5     WE'RE ALREADY GETTING THE SOURCE CODE INDEPENDENTLY OF

6     MR. ZHOU.  SO HIM SENDING PICTURES OF ZWCAD SOURCE CODE IS NOT

7     REALLY THE ISSUE HERE.

8         THE ISSUE IS WHETHER HE CAN TALK TO US.

9            THE COURT:  I SUSPECT IT'S NOT YOUR ISSUE, BUT I'M

10    GUESSING IT'S MR. ANDARA'S CLIENT'S ISSUE, RIGHT?  I'M JUST

11    TRYING TO FIGURE OUT HOW I CAN CRAFT THE INJUNCTION THAT YOU'VE

12    SUGGESTED WITHOUT BEING LABELED A RUNAWAY JUDGE ISSUING PRIOR

13    RESTRAINTS WITHOUT ANY CONSIDERATION OF THE FIRST AMENDMENT.

14    HELP ME WORK THROUGH THAT PROBLEM.

15            MS. BARATH:  MAYBE SOMETHING LIKE THE COURT DID IN

16    JDSU WHERE THE COURT SIMPLY SAID THAT CONVERSATIONS THAT

17    WHISTLEBLOWERS HAD WITH PLAINTIFF'S ATTORNEYS WERE NOT IN

18    VIOLATION OF THE CONFIDENTIALITY AGREEMENTS AT ISSUE THERE.

19         SO SOMETHING SIMILAR WHERE BASICALLY THE COURT

20    ACKNOWLEDGES THAT MR. ZHOU CAN SPEAK WITH AUTODESK OUTSIDE

21    COUNSEL UNDER THE PROTECTIVE ORDER.

22         SO WE'RE NOT TALKING ABOUT, YOU KNOW, SENDING SOURCE CODE

23    DIRECTLY TO AUTODESK ENGINEERS AS ZWCAD IMPLIES.  THAT'S NOT AT

24    ALL SOMETHING THAT WE WOULD PROPOSE.  AND IT'S, IN FACT,

25    SOMETHING THAT WE HAVE TOLD MR. ZHOU THAT WE RESPECT HIS

```
1      CONFIDENTIALITY AGREEMENTS, AND THAT'S EXACTLY WHY WE'RE HERE

2      TODAY.

3              THE COURT:  WELL, WHAT YOU'RE ACTUALLY ASKING ME TO

4      DO IS TO BLESS A VIOLATION OF A CONFIDENTIALITY AGREEMENT.

5      THAT IS WHY YOU ARE HERE, RIGHT?

6              MS. BARATH:  WELL -- SO, FIRST OF ALL, MOST OF THE

7      THINGS THAT ARE AT ISSUE ARE FACTS.

8              THE COURT:  YOU DON'T NEED ME TO HELP YOU WITH

9      THOSE.

10             MS. BARATH:  WELL, IT SEEMS LIKE ZWCAD PLANS TO

11     PURSUE --

12             THE COURT:  PART OF MY RELUCTANCE IS THAT NORMALLY

13     COURTS ARE NOT IN THE BUSINESS OF GETTING INTO ADVISORY

14     OPINIONS OR EX ANTE EVALUATIONS OF CONTRACTUAL RESTRICTIONS FOR

15     THIS VERY REASON.  I DON'T KNOW WHAT THIS GUY IS GOING TO SAY

16     AND WHO THIS GUY IS.  UNTIL I READ THE OPPOSITION, I THOUGHT

17     THE GUY'S NAME WAS X.

18         SO IT WOULD SEEM TO ME THAT ALTHOUGH THERE IS SOME

19     PRECEDENT FOR THIS TYPE OF ORDER UP IN SAN FRANCISCO, THERE ARE

20     BIGGER CONSTRAINTS HERE THAT PERHAPS WEREN'T EVEN PRESENTED TO

21     THE COURT.  I DON'T KNOW IF JUDGE LAPORTE WAS GIVEN ANY

22     BRIEFING OR ARGUMENT ON THE FIRST AMENDMENT ISSUE, OR DID THE

23     OPINION ADDRESS THAT AT ALL?

24             MS. BARATH:  I'M NOT AWARE OF ANY FIRST AMENDMENT

25     ISSUES BEING ADDRESSED.
```

1          THE COURT:  OKAY.  SO AS A PRACTICAL MATTER THEN

2    LET'S ASSUME THAT I WORK THROUGH ALL OF THAT, YOU'RE SAYING

3    WHAT YOU WOULD LIKE TO BE ABLE TO DO IS SIT DOWN WITH THIS

4    GENTLEMAN.  AND HE'S LOCATED WHERE?  DO WE KNOW?

5          MS. BARATH:  HE'S IN CHINA SO WE WERE CONTEMPLATING

6    SKYPE OR SOME OTHER COMMUNICATION.

7          THE COURT:  DO I EVEN HAVE THE AUTHORITY TO BAR

8    ZWCAD FROM BRINGING AN ACTION IN CHINA BECAUSE THE SCOPE OF

9    YOUR INJUNCTION WOULD SEEM TO PRECLUDE THAT?

10         MS. BARATH:  SO THE INJUNCTION -- I DON'T THINK THAT

11   YOU CAN CONTROL WHAT COURTS IN CHINA DO BUT TO THE EXTENT THAT

12   THERE ARE ANY CASES BROUGHT IN THE U.S., YOUR ORDER WOULD

13   ADDRESS THAT.

14         THE COURT:  OKAY.  SO NOW WE'RE NOT TALKING ABOUT EX

15   U.S. REDRESS, WE'RE TALKING ABOUT A RESTRAINT ON THEIR ABILITY

16   TO COME TO AMERICAN COURTS AND SEEK RELIEF FOR ANY VIOLATION OF

17   THE CONFIDENTIALITY RESTRICTIONS THAT MR. X OR MR. ZHOU IS

18   BOUND BY.

19         MS. BARATH:  YES.  BUT WE WOULD ALSO APPRECIATE IF

20   YOUR HONOR WOULD SAY THAT HIS TALKING TO US IS NOT A VIOLATION

21   OF HIS CONFIDENTIALITY AGREEMENT AND SO THAT ORDER COULD BE

22   USED IN CHINA AS WELL IF THAT BECOMES NECESSARY.

23         THE COURT:  ALL RIGHT.  I THINK I HAVE IT.  THANK

24   YOU.

25         MR. ANDARA:  YOUR HONOR, IF I COULD, MS. SOBIESKI

```
1     WOULD ARGUE THIS.

2              THE COURT:  ABSOLUTELY.  GOOD MORNING.

3              MS. SOBIESKI:  GOOD MORNING, YOUR HONOR.  GOOD

4     MORNING.  THIS IS MY FIRST TIME IN FEDERAL COURT MAKING AN

5     APPEARANCE.

6              THE COURT:  IT FEELS LIKE MY FIRST TIME, TOO.  SO GO

7     AHEAD, MS. SOBIESKI.

8              MS. SOBIESKI:  AS YOU HAVE ACCURATELY POINTED OUT

9     MANY OF THE CONCERNS THAT WE HAVE WITH THE PLAINTIFF'S MOTION

10    IS PREDOMINANTLY THAT, AS WE HAVE DISCUSSED ALREADY TODAY, WE

11    WILL BE ORDERED TO PRODUCE THE DOCUMENTS.

12       WE HAVE NOT PRODUCED THEM YET SO FAR ONLY BECAUSE WE

13    INTENDED TO MAKE THEM AVAILABLE FOR INSPECTION AND ALSO BECAUSE

14    WE SPOKE TO COUNSEL ABOUT THE ISSUES LITERALLY THE MORNING

15    AFTER WE LEARNED.  WE LEARNED AT APPROXIMATELY 8:00 P.M. THAT

16    NIGHT, AND WE SPOKE TO COUNSEL THE NEXT MORNING AND CONFIRMED

17    WHAT THEY ASKED US ON THE PHONE REGARDING THIS MATTER.

18       SO WE WILL WITHIN REASON MAKE THE DOCUMENTS AVAILABLE

19    FOR -- WELL, NOW WE ARE PRODUCING THEM.

20              THE COURT:  RIGHT.

21              MS. SOBIESKI:  WE DON'T FEEL THAT IS GREATLY AN

22    ISSUE.

23       HOWEVER, WE ARE VERY CONCERNED WITH THE FACT THAT SO FAR

24    AUTODESK HAS ALREADY CIRCUMVENTED THE PROTECTIVE ORDER.

25    COUNSEL DISCUSSES THE CASE WHERE COUNSEL SPOKE TO A POTENTIAL
```

1     WHISTLEBLOWER AND THAT CASE SPECIFICALLY DEALS WITH COUNSEL.

2          HERE WE ALREADY HAVE IN THE DECLARATION SUBMITTED BY THE

3     PLAINTIFF THAT THEY HAVE HAD PRODUCTION OF -- THAT MR. ZHOU HAS

4     ACTUALLY SENT WHAT HE PURPORTS TO BE SOURCE CODE INFORMATION

5     DIRECTLY TO AUTODESK'S ENGINEER.

6          IN HIS DOCUMENTS AS SUBMITTED BY AUTODESK IN THE

7     TRANSLATION YOU CAN SEE THAT HE BASICALLY HAS REFUSED TO WORK

8     WITH COUNSEL SO FAR AND WISHES TO ONLY WORK THROUGH ONLY THEIR

9     ACTUAL ENGINEERS.

10          AND THAT CREATES A CONCERN FOR US BECAUSE THAT IS DONE

11     OUTSIDE OF THE PROTECTIVE ORDER THAT HAS -- THERE'S NO ABILITY

12     FOR US TO DETERMINE WHETHER OR NOT AUTODESK'S NONCOUNSEL

13     EMPLOYEES ARE VIEWING THIS INFORMATION, ACCESSING THIS

14     INFORMATION, AND, FURTHER, WE HAVE NO ABILITY TO AUTHENTICATE

15     ANY DOCUMENTS THAT MAY OR MAY NOT BE PRODUCED.

16          AND ACCORDING TO THE SAME E-MAILS THAT WE'VE PRESENTED IN

17     THE -- ALL OF THE PAPERS THAT HAVE GONE BACK AND FORTH, WE

18     DON'T BELIEVE THERE'S ANY INFORMATION THAT HE'S OFFERING SO FAR

19     OTHER THAN THE SOURCE CODE INFORMATION, WHICH YOU HAVE ALREADY

20     ORDERED.

21          THE COURT:  PART OF YOUR PROBLEM, MS. SOBIESKI, THAT

22     HAS BEEN RAISED, YOU'RE NOT IN MUCH OF A BETTER SPOT THAN I AM

23     IS THAT YOU DON'T KNOW WHAT THIS GUY IS GOING TO SAY OR DO OR

24     DISCLOSE, RIGHT?  WE'RE ALL KIND OF PAWING OUR WAY THROUGH THE

25     DARK HERE, RIGHT?

1           MS. SOBIESKI:  CORRECT.  AND IN THIS WAY WE WILL

2      REMAIN IN THE DARK.  AND ZWSOFT HAS NO ABILITY TO QUESTION THE

3      WITNESS AND UNDERSTAND WHAT THE WITNESS IS TELLING AND ALSO IT

4      APPEARS TO BE THAT HE'S ATTEMPTING TO PROVIDE THEM WITH

5      INFORMATION, TRADE SECRET CONFIDENTIAL INFORMATION OUTSIDE OF

6      THE SCOPE OF THE PROTECTIVE ORDER.

7           THE COURT:  I THINK I HAVE IT.

8           MS. SOBIESKI:  THANK YOU.

9           THE COURT:  MS. BARATH, ANY BRIEF REBUTTAL ACTUALLY

10     ON THIS ONE?

11          MS. BARATH:  VERY BRIEFLY, YOUR HONOR, ON

12     CIRCUMVENTING THE PROTECTIVE ORDER.  THE WHOLE REASON WE'RE

13     HERE IS THAT WE WANT TO MAKE SURE THAT WE'RE DOING EVERYTHING

14     CORRECTLY BOTH UNDER MR. ZHOU'S CONFIDENTIALITY AGREEMENT AND

15     THE PROTECTIVE ORDER.

16        THE ONLY REASON THAT AUTODESK ENGINEERS EVER SPOKE WITH

17     MR. ZHOU WAS TO DETERMINE WHETHER HE HAD ANY RELEVANT

18     INFORMATION.  AND AS SOON AS WE DETERMINED THAT HE DID, WE

19     REFERRED HIM TO OUR ATTORNEYS.

20        AND THE FACT THAT, YOU KNOW, HE SENT PICTURES OR SOURCE

21     CODE TO ONE OF OUR ENGINEERS WITHOUT US ASKING HIM TO IS, YOU

22     KNOW, NOT SOMETHING THAT WE'RE TRYING TO DO.  WE NEVER OPENED

23     ANY OF THOSE FILES.  TO THIS DATE NO ONE HAS LOOKED AT ANY OF

24     THOSE FILES.

25          SO WE'RE DEFINITELY PROCEEDING UNDER THE PROTECTIVE ORDER

1    AND INTEND TO DO SO GOING FORWARD AS WELL.

2              THE COURT:  ALL RIGHT.  THANK YOU.  I'M GOING TO

3    TAKE THIS UNDER SUBMISSION.  IN MY BRIEF ORDER THAT I WILL

4    ISSUE, I WILL ADDRESS THIS MOTION AS WELL AS THE EARLIER MOTION

5    UNDER SUBMISSION.  IT'S A VERY INTERESTING ISSUE, AND I

6    APPRECIATE THE ARGUMENTS THIS MORNING.  HAVE A GOOD DAY.

7              MR. HUNG:  THANK YOU, YOUR HONOR.

8         (COURT CONCLUDED AT 11:37 A.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16       _____
         IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8076
17

18       DATED:  MAY 21, 2015
19

20

21

22

23

24

25